# Exhibit A

**LUCAS COUNTY COMMON PLEAS COURT**
**CASE DESIGNATION**

EFILED LUCAS COUNTY
08/25/2022 01:26 PM
COMMON PLEAS COURT
BERNIE QUILTER, CLEI
efile id 105141

**TO:   Bernie Quilter, Clerk of Courts**

CASE NO._____

JU_____  **G-4801-CI-0202203522-000**
**Judge**
**DEAN P. MANDROS**

**The following type of case is being filed:**

**Professional Malpractice**
☐  Legal Malpractice (L)
☐  Medical Malpractice (M)
☐ **Product Liability (B)**
☐ **Other Tort (C)**

**Workers' Compensation**
☐ State Funded (D)
☐ Self Insured (K)

☐ **Administrative Appeal (F)**

☐ **Commercial Docket**

By submitting the complaint, with the signature of the Attorney, the Attorney affirms that the name of person with settlement authority and his/her direct phone number will be provided upon request to a party or counsel in this matter

**Other Civil**
☐ Consumer Fraud (N)  ☐ Forfeiture
☐ Appropriation (P)  ☐ Court Ordered
☑ Other Civil (H)  ☐ Certificate of Title
☐ Copyright Infringement (W)

This case was previously dismissed pursuant to CIVIL RULE 41 and is to be assigned to Judge _____, the original Judge at the time of dismissal. The previously filed case number was CI_____.

This case is a civil forfeiture case related to a criminal case currently pending on the docket of Judge _____. The pending case number is _____.

This case is a Declaratory Judgment case with a personal injury or related case currently pending. The pending case number is_____, assigned to Judge _____

This case is to be reviewed for consolidation in accordance with Local Rule 5.02 as a companion or related case. This designation sheet will be sent by the Clerk of Courts to the newly assigned Judge for review with the Judge who has the companion or related case with the lowest case number. The Judge who would receive the consolidated case may accept or deny consolidation of the case. Both Judges will sign this designation sheet to indicate the action taken. If the Judge with the lowest case number agrees to accept, the reassignment of the case by the Administration Judge shall be processed. If there is a disagreement between the Judges regarding consolidation, the matter may be referred to the Administrative Judge.

Related/companion case number_____ Assigned Judge_____

_____  _____
Approve/Deny              Date    Approve/Deny              Date

**Attorney**     Thomas D. Pigott 0062919
**Address**      P.O. Box 8813
                Toledo, Ohio 43623
**Telephone**    419-776-4567

EFILED LUCAS COUNTY
08/25/2022 01:26 PM
COMMON PLEAS COURT
BERNIE QUILTER, CLEI
efile id 105141

## IN THE COMMON PLEAS COURT
## LUCAS COUNTY, OHIO
## CIVIL DIVISION
\* \* \* \* \* \* \* \*

G-4801-CI-0202203522-000
Judge
**DEAN P. MANDROS**

**TYRONE ARMSTRONG**
2729 116th Street
Toledo, Ohio 43611

      Plaintiff,

v.

**POWER HOME SOLAR, LLC**
c/o Corporation Service Company
Ohio Statutory Agent
3366 Riverside Drive, Suite 103Upper
Arlington, OH 43221

and

**GOODLEAP, LLC**
(f/k/a Loanpal)
c/o CT Corporation System, statutory
4400 Easton Commons Way, Ste 125
Columbus, OH 43219

and

**AHMAD NAFISA**
Address currently unknown

and

**JOHN DOE DEFENDANTS, ONE
THROUGH TEN**
Addresses currently unknown

      Defendants.

\*  Case Number:

\*  JUDGE:

\*

\*  **COMPLAINT WITH JURY DEMAND**
\*  **ENDORSED HEREON**

\*

\*  Thomas D. Pigott (0062919)
\*  Attorney for Plaintiff
    Pigott, Ltd.
\*  P.O. Box 8813
    Toledo, Ohio 43623-0813
\*  Phone: (419) 776-4567
    Facsimile: (419) 754-2507
\*  Email: tpigott@pigottlaw.com

\*  *Attorney for Plaintiff*

\*

\*

\*

\*

\*

\*

\*

\*

\*

1

Pleas also serve:                                          *

**POWER HOME SOLAR, LLC**                    *
919 North Main Street
Mooresville, NC 28115                             *

                                              *  *  *  *  *  *  *

      Now comes Plaintiff Tyrone Armstrong by and through counsel, as and for his complaint against Power Home Solar, LLC, Goodleap, LLC, Ahmad Nafsia and John Doe Defendants One through Ten hereby states as follows:

      1.     This action is brought, in part, pursuant to the Ohio Consumer Sales Practices Act R.C. 1345.01, et seq. its Substantive Rules, Ohio Administrative Code 109:4-3-01 et seq., the Home Solicitation Sales Act R.C. 1345.21, et seq., the Ohio Deceptive Trades Practices Act 4165.01, et seq. and Preservation of Consumers' Claims and Defenses 16 CFR 433.1, et al.

      2.     Pursuant to Ohio law some of the claims and counts set forth, and relief requested herein, are made "in the alternative" form of pleading.

**PARTIES**

      3.     Plaintiff Tyrone Armstrong is an individual of legal age who at all times relevant hereto resided at the address set forth in the caption above ("Plaintiff" or "Tyrone Armstrong").

      4.     Tyrone Armstrong has been the owner of the real property commonly known as 2729 116th Street, Toledo, Ohio since 2018 (the "Home").

      5.     The Home is located within the City of Toledo, Lucas County, State of Ohio.

      6.     Upon information and belief, Defendant Power Home Solar, LLC is a Delaware limited liability company registered as a foreign entity with the Ohio Secretary of State's Office ("Defendant Power Home Solar").

      7.     Defendant Power Home Solar's Ohio statutory agent as on file with the Ohio Secretary of State's Office is as set forth in the caption above.

      8.     Defendant Power Home Solar regularly conducts business within the State of Ohio.

      9.     Defendant Power Home Solar now does business as "Pink Energy".

      10.     Under information and belief, Defendant Power Home Solar holds itself out to the public as providing design, construction and installation of residential solar power systems to consumers.

      11.     Under information and belief, and at times pertinent herein, Defendant Power Home Solar maintained no permanent place of business, main office, permanent branch office, retail office or show

room location from which they sold or displayed solar power systems or related equipment within the State of Ohio.

12. Upon information and belief, Goodleap, LLC is a California limited liability company registered as a foreign entity with the Ohio Secretary of State's Office ("Defendant Goodleap").

13. Defendant Goodleap's Ohio statutory agent as on file with the Ohio Secretary of State's Office is as set forth in the caption above.

14. Defendant Goodleap regularly conducts business within the State of Ohio.

15. Upon information and belief, Defendant Goodleap, was formerly known as Loanpal, LLC and Loanpal.

16. Under information and belief, Defendant Goodleap holds itself out to the public as a residential mortgage and consumer loan lender.

17. Under information and belief, Defendant Goodleap is registered with the Ohio Department of Commerce Division of Financial Institutions as a consumer installment loan act lender, a general loan law lender and as a residential mortgage act lender.

18. Under information and belief, and at times pertinent herein, Defendant Power Home Solar maintained no permanent place of business, main office, permanent branch office or retail office within the State of Ohio.

19. Defendant Ahmad Nafisa is an individual of legal age whose residence address is currently unknown (hereinafter referred to as "Power Home Solar's Agent"). Once Defendant Ahmad Nafisa's address is known, Tyrone Armstrong will direct service of summons and complaint upon him.

20. John Doe Defendants, One through Ten are currently unknown individuals who may be liable to Tyrone Armstrong pursuant to certain of the acts, omissions and claims set forth herein, whose identities and residence addresses is known, Tyrone Armstrong will seek to amend this Complaint and direct service of summons and complaint upon him.

**JURISDICTION**

21. Plaintiff states that pursuant to RC 2305.01 the Lucas County Common Pleas Court has original jurisdiction of this civil lawsuit and further states that this action has a matter in controversy exceeding the sum of Ten Thousand Dollars ($10,000.00).

22. Plaintiff states that the real property at issue herein is located within the City of Toledo, County of Lucas, State of Ohio.

23. Plaintiff states that all negotiations, contracting, solicitations and sales transactions occurred within the City of Toledo, County of Lucas, State of Ohio.

24.     Plaintiff states that all work of Defendant Power Home Solar occurred within the City of Toledo, County of Lucas, State of Ohio.

25.     This case is proper before this court pursuant to R.C. 1345.04; and

26.     Defendant Power Home Solar regularly does business in the State of Ohio and within the City of Toledo, Lucas County, Ohio.

27.     Defendant Goodleap regularly does business in the State of Ohio and within the City of Toledo, Lucas County, Ohio.

28.     The Initial Contract, Contract and the Settlement Agreement state that Ohio law shall apply.

## BACKGROUND

29.     For a period of years Tyrone Armstrong had been looking for a solar power system to install on his Home that would provide enough energy to operate all of his Home's electrical systems, appliances and utilities without the requirement to purchase electricity from a utility service provider.

30.     In or about early August 2020, Tyrone Armstrong began discussions with Defendant Power Home Solar.

31.     Tyrone Armstrong spoke with a representative(s) of Defendant Power Home Solar on different occasions.

32.     Defendant Power Home Solar sent a salesperson, Defendant Ahmad Nafisa, Power Home Solar's Agent, to the Home to speak with Tyrone Armstrong.

33.     Upon information and belief, the individual appearing at the Home may not have actually been Defendant Ahmad Nafisa but some other person who is considered a John Defendant hereunder.

34.     Tyrone Armstrong only ever met with Power Home Solar's Agent at his Home.

35.     Power Home Solar's Agent held himself out to Tyrone Armstrong as an employee and agent of Defendant Power Home Solar.

36.     At all times Tyrone Armstrong believed that Power Home Solar's Agent was an employee of Defendant Power Home Solar.

37.     Upon information and belief, Power Home Solar's Agent was an employee of Defendant Power Home Solar.

38.     Upon information and belief, Power Home Solar's Agent was an agent of Defendant Power Home Solar.

4

39.     Tyrone Armstrong explained that he was seeking to purchase a solar power system to save money on energy purchases and that would provide enough energy to operate all of his Home's electrical systems, appliances and utilities without the requirement to purchase electricity.

40.     In response, Power Home Solar's Agent represented that Defendant Power Home Solar could design, sell and install an operational system to accomplish Tyrone Armstrong's requirements.

41.     Power Home Solar's Agent represented that Defendant Power Home Solar was expert in the design, construction and installation of residential solar systems.

42.     At the time of this representation the Home was heated by a gas furnace and hot water was provided by a gas water heater.

43.     Tyrone Armstrong inquired of Power Home Solar's Agent whether or not Defendant Power Home Solar could provide a solar system that would allow the Home to be energy self-sufficient if he converted his Home's heating and hot water systems to electric units.

44.     In response, Power Home Solar's Agent represented that Defendant Power Home Solar could design, sell and install a solar system to accomplish Tyrone Armstrong's requirements including the additional energy needed to power the Home's heating and hot water systems after their conversion to electric units.

45.     In reliance upon the representations of Defendant Power Home Solar's Agent, Tyrone Armstrong purchased and installed an electric powered heating unit/furnace and an electric powered hot water system in his Home both at a significant cost and expense.

46.     Prior to entering into a contract with Defendant Power Home Solar, Power Home Solar's Agent represented to Tyrone Armstrong that if he purchased their system, he would receive a federal tax credit/refund in the approximate amount of twenty-two thousand dollars ($22,000.00).

47.     Prior to entering into a contract with Defendant Power Home Solar, Power Home Solar's Agent represented to Tyrone Armstrong that this tax credit/refund meant that Tyrone Armstrong would receive a check from the Internal Revenue Service in the approximate amount of twenty-two thousand dollars ($22,000.00) after the system was installed.

48.     Tyrone Armstrong only recently learned that the twenty-two thousand dollars ($22,000.00) tax credit/refund Power Home Solar's Agent had spoken about was a credit that would reduce his tax obligations over a period of years, not an automatic cash return/refund as Power Home Solar's Agent represented.

49.     Prior to entering into a contract with Defendant Power Home Solar, Power Home Solar's Agent represented to Tyrone Armstrong that if he purchased their system, Defendant Power Home Solar would provide constant monitoring of his solar system to ensure it was working efficiently.

50. Prior to entering into a contract with Defendant Power Home Solar, Power Home Solar's Agent represented to Tyrone Armstrong that if he purchased their system, he would not only produce enough energy to be energy self-sufficient, but he would produce excess electricity that he could sell to Toledo Edison and earn income.

51. Prior to entering into a contract with Defendant Power Home Solar, Power Home Solar's Agent represented to Tyrone Armstrong that if he purchased their system, Defendant Power Home Solar would repair the system for twenty (20) plus years into the future.

52. In reliance upon the representations of Defendant Power Home Solar's Agent, Tyrone Armstrong purportedly entered into a Solar Energy Purchase and Installation Agreement with Defendant Power Home Solar dated August 26, 2020 (the "Initial Contract")(a true, complete and accurate copy of the Initial Contract provided to Tyrone Armstrong is attached hereto and incorporated fully herein as "Exhibit A").

53. The total contract price of the Initial Contract was Seventy-two Thousand Four Hundred Forty Dollars ($72,440.00).

54. The Initial Contract specified that Defendant Power Home Solar would install a quantity of forty-seven (47) 330 watt solar panels manufactured by Silfab.

55. The Initial Contract specified the size of the system to be installed at 15.04 kilowatts.

56. Per the terms of the Initial Contract Defendant Power Home Solar was to design and install the system, provide all equipment, hardware, supplies, labor, permits and inspections in the construction of Tyrone Armstrong's solar system.

57. Immediately after entering into the Initial Contract, Power Home Solar's Agent represented to Tyrone Armstrong that they could not provide the exact solar panel specified as a "330 w" Model but that they could provide a 320 watt model from the same manufacturer.

58. Power Home Solar's Agent represented to Tyrone Armstrong that even with the change in wattage the number of panels would not need to be increased to make his Home energy self-sufficient.

59. In reliance upon the representations of Defendant Power Home Solar's Agent, Tyrone Armstrong purportedly entered into an amendment to the Initial Contract on August 28, 2020 (the "Initial Contract Amendment")(a true, complete and accurate copy of the Initial Contract Amendment as provided to Tyrone Armstrong is attached hereto and incorporated fully herein as "Exhibit B").

60. Immediately after entering into the Initial Contract Amendment, Power Home Solar's Agent represented to Tyrone Armstrong that the system purchased would not meet his requirement of self-sufficiency.

6

61.     Power Home Solar's Agent then represented to Tyrone Armstrong that to meet his requirement of self-sufficiency he would need to purchase and install a battery system at an additional cost of approximately $20,000.00.

62.     In reliance upon the representations of Defendant Power Home Solar's Agent, Tyrone Armstrong agreed to purchase a battery system.

63.     In reliance upon the representations of Power Home Solar's Agent, Tyrone Armstrong purportedly entered into a second Solar Energy Purchase and Installation Agreement with Defendant Power Home Solar dated August 31, 2020 (the "Contract")(a true, complete and accurate copy of the Contract as provided to Tyrone Armstrong is attached hereto and incorporated fully herein as "Exhibit C").

64.     The total contract price of the Contract was Eighty-six Thousand Nine Hundred Thirty-six Dollars ($86,936.00).

65.     The Contract specified that Defendant Power Home Solar would install a quantity of forty-seven (47) 320 watt solar panels manufactured by Silfab.

66.     The Contract specified the size of the system to be installed at 15.04 kilowatts.

67.     Per the terms of the Contract Defendant Power Home Solar was to design and install the system, provide all equipment, hardware, supplies, labor, permits and inspections in the construction of the Tyrone Armstrong's solar system.

68.     Per the terms of the Contract Defendant Power Home Solar was to commence construction of the system on approximately September 2, 2020.

69.     Per the terms of the Contract Defendant Power Home Solar was to complete construction of the system on approximately November 2, 2020.

70.     Per the terms of the Contract Defendant Power Home Solar provided Tyrone Armstrong a warranty upon the solar power system.

**Overpriced System**

71.     Upon information and belief, Defendant Power Home Solar was selling its solar panels and equipment to customers at an extremely high markup price.

72.     The National Renewable Energy Laboratory (NREL), a branch of the U.S. Department of Energy, estimates that the average cost for the purchase and installation of a residential solar system was approximately $2.71 per watt for the calendar year 2020.[1]

---

[1] *Solar Installed System Cost Analysis*, NREL.gov, https:// https://www.nrel.gov/solar/market-research-analysis/solar-installed-system-cost.html (last visited August 21, 2022).

73. As set forth in the Contract, Tyrone Armstrong's system was to produce 15.4-kilowatts of electricity.

74. USING NREL's average of $2.71 per watt, Tyrone Armstrong should have paid approximately $41,734.00 for his 15.4-kilowatt solar system.

75. Defendant Power Home Solar charged Tyrone Armstrong $66,936.00, ($86,936.00 less the $20,000 Generac Battery) or ($4.35 per watt) for his solar system, a mark-up of approximately 60%, that is an additional $25,202.00, over the national average in 2020.

**Contract Execution**

76. Upon information and belief, Defendant Power Home Solar trained its employees to engage in high pressured, hard-sell sales tactics.

77. Power Home Solar's Agent used various hard sell techniques including as set forth elsewhere herein, making false, fraudulent, and misleading representations in order to induce Tyrone Armstrong to enter into the Initial Contract, the Initial Contract Amendment and the Contract.

78. To consummate the initial purchase transaction with Tyrone Armstrong, Power Home Solar's Agent was present at the Home on August 26, 2020.

79. At that time Power Home Solar's Agent produced the Initial Contract for Tyrone Armstrong to execute on a tablet device.

80. After August 26, 2020, Power Home Solar's Agent never appeared at the Home or met with Tyrone Armstrong.

81. After August 26, 2020, no employee or agent of Defendant Power Home Solar ever appeared at the Home or met with Tyrone Armstrong relative to the Initial Contract Addendum or the Contract's execution.

82. Prior to his execution of the Initial Contract on August 26, 2020, Defendant Power Home Solar never provided a copy, or draft copy, of the Initial Contract in hard copy or electronic format.

83. Defendant Power Home Solar never produced for, or provided to, Tyrone Armstrong a physical original or copy of the Initial Contract for Tyrone Armstrong at the time of his execution of the Initial Contract.

84. Defendant Power Home Solar never produced for, or provided to, Tyrone Armstrong any contract documents or any notices on August 26, 2020.

85. As presented by Power Home Solar's Agent, the Initial Contract was not readily observable or reviewable by Tyrone Armstrong.

86.     Power Home Solar's Agent knowing that the pace of review of the Initial Contract as on his tablet was within his control, knowingly scrolled through the contract provisions at a rapid pace while knowingly providing erroneous and false interpretation and representations of certain sections of the contract.

87.     Power Home Solar's Agent never asked Tyrone Armstrong if he wished to review the Initial Contract on his tablet.

88.     Power Home Solar's Agent never provided the tablet to Tyrone Armstrong for his review of the Initial Contract.

89.     Power Home Solar's Agent purposefully concealed the Initial Contract from Tyrone Armstrong during the contract review and execution process.

90.     Upon information and belief, the contract review and execution process was conducted by Power Home Solar's Agent per his training and direction of Defendant Power Home Solar.

91.     Defendant Power Home Solar utilizes an electronic signature application known as "DocuSign" to electronically execute its contracts.

92.     Power Home Solar's Agent instructed Tyrone Armstrong where, and how, to electronically sign and initial the Initial Contract upon the tablet.

93.     Per the instructions of Power Home Solar's Agent, Tyrone Armstrong executed his signature and initials upon the tablet.

94.     No facsimile of Tyrone Armstrong's actual signature or initials, as entered on the tablet, appear on the Initial Contract.

95.     Though physically signed and initialed on the Power Home Solar's Agent's tablet, Tyrone Armstrong's signature and initials were then placed, in several different places, on the hard copy of the Initial Contract in a typewritten italicized font most likely by the DocuSign application.

96.     Sometime after its execution on August 26, 2020, Defendant Power Home Solar provided Tyrone Armstrong a copy of the Initial Contract.

97.     Under each of Tyrone Armstrong's DocuSign "signatures" on the Initial Contract is the reference number AFCEF4BAF24224D9… ("Tyrone Armstrong's Initial Contract Signature Reference #").

98.     Upon information and belief, the DocuSign application provides a unique signature identification number to each signer based on the email address provided by the signer.

99.     Upon information and belief, the DocuSign application's unique signature identification number is utilized again by that specific signer when signing a different document using the DocuSign application.

100.    Power Home Solar's Agent's signature also appears on the Initial Contract provided to Tyrone Armstrong on five distinct pages, and it also has a unique reference number appearing as 6146CE632FB6437… ("Power Home Solar's Agent's Contract Signature Reference #").

101.    Tyrone Armstrong executed his signature only once during this process.

102.    Tyrone Armstrong's signature appears eight (8) times in places and on seven (7) different pages within Initial Contract, at the following locations:

   a.  As "Buyer" under the "Three Day Right to Cancel" language;

   b.  Under "Agency Agreement", authorizing Defendant Power Home Solar to take actions on his behalf;

   c.  On "Exhibit E: Arbitration Agreement", purportedly agreeing that all claims against Defendant Power Home Solar could only be presented in arbitration;

   d.  On the "Memorandum of Understanding – Home Owner Association" addendum;

   e.  On the "Understanding Solar Rebates Offered By My Utility Company" addendum;

   f.  On the "Memo of Understanding - Solar Tax Credits" addendum;

   g.  On the "Energy Efficient Package Ticket" addendum; and

   h.  On the "Customer Reimbursement Form" addendum.

103.    Power Home Solar's Agent did not allow Tyrone Armstrong the opportunity to view any of foregoing language, exhibits or addendum during the review and execution process of the Initial Contract on the tablet.

104.    Power Home Solar's Agent's never discussed, explained, presented or provided any information relative to the sections of the Initial Contract where his digital signature now appears, specifically including "Exhibit E: Arbitration Agreement".

105.    Tyrone Armstrong executed his initials only once during this process.

106.    Tyrone Armstrong's initial appear six (6) times in different places and on four (4) different pages within Initial Contract, at the following locations:

   i.  Next to "Disclaimer" purportedly disclaiming Power Home Solar's Agent's representations of energy savings and system production only as estimates and projections;

   j.  Next to a legal notice titled "For Wisconsin Residents Only:";

   k.  On the Scope of Work page, next to Tyrone Armstrong's estimated monthly and yearly electricity usage representations;

   l.  On the Scope of Work page, next to "Proposed Estimated System Savings Breakdown:"

   m. At the bottom of the In the Scope of Work page; and

   n. Above Section 13 titled "Arbitration Disputes", purportedly agreeing that all claims against Defendant Power Home Solar could only be presented in arbitration.

  107. Power Home Solar's Agent did not allow Tyrone Armstrong the opportunity to view any of foregoing language, exhibits or addendum during the review and execution process of the Initial Contract on the tablet.

  108. Power Home Solar's Agent's never discussed, explained, presented or provided any information relative to the sections of the Initial Contract where his digital initials now appear, specifically including next to "Disclaimer" and at Section 13 "Arbitration Disputes".

  109. Power Home Solar's Agent's never discussed, explained, presented or provided any information relative to the estimates section of the Initial Contract stating his system would produce only eighty percent (80%) of his electricity needs and that he would be required to purchase the other twenty percent (20%) (the "Estimated Savings").

  110. The copy of the Initial Contract provided to Tyrone Armstrong states that all signatures occurred on August 26, 2020, at 8:07 PM EDT (Eastern Daylight Time).

  111. It is impossible that Tyrone Armstrong could have read, or have had explained to him by Power Home Solar's Agent all, of the foregoing sections, exhibits and addendums in one minute's time.

  112. The Initial Contract, as well as the Contract, contains a number of restrictive provisions including arbitration clauses (the "Arbitration Provision"), limitation of liability clause and the waiver of constitutional rights, none of which were discussed by Power Home Solar's Agent.

  113. Had Tyrone Armstrong been aware of the Arbitration Provision, limitation of liability clause and the waiver of constitutional rights he would not have executed the tablet or the Initial Contract.

  114. Had Tyrone Armstrong been aware of the Estimated Savings clause he would not have executed the tablet or the Initial Contract.

  115. To his detriment, Tyrone Armstrong relied upon the representations of Power Home Solar's Agent as to the contents and interpretation of the terms and conditions of the Initial Contract.

  116. As stated herein, after the Initial Contract, Power Home Solar's Agent represented that the specified panels were no longer available and then that the system would require a battery to meet Tyrone Armstrong's specifications.

  117. Power Home Solar's Agent never provided a draft or copy of the Initial Contract Addendum or Contract to Tyrone Armstrong prior to, or at the time, they were purportedly executed by him.

118.    Power Home Solar's Agent, or any other person, ever appeared at the Home at the time of Tyrone Armstrong's purported execution of the Initial Contract Addendum or Contract.

119.    Tyrone Armstrong only received copies of the Initial Contract Addendum and Contract sometime after his purported execution of same.

120.    Tyrone Armstrong purportedly executed the Initial Contract Addendum on August 28, 2022 at 3:45 PM PDT (Pacific Daylight Time).

121.    Tyrone Armstrong purportedly executed the Initial Contract Addendum on August 31, 2022 at 5:05 PM PDT (Pacific Daylight Time).

122.    Tyrone Armstrong's signature and initials are placed on the hard copy of the Initial Contract Addendum and Contract in a typewritten non-italicized font most likely by the DocuSign application.

123.    No facsimile of Tyrone Armstrong's actual signature or initials appear on the Initial Contract Addendum or the Contract.

124.    Under each of Tyrone Armstrong's DocuSign "signatures" on the Initial Contract Addendum and the Contract is the reference number 7D4B7A0A75F6450... ("Tyrone Armstrong's Second Signature Reference #").

125.    Tyrone Armstrong's Initial Contract Signature Reference # and Tyrone Armstrong's Second Signature Reference # are different, while Power Home Solar's Agent's Contract Signature Reference # is the same on all three documents.

126.    Tyrone Armstrong never provided Defendant Power Home Solar authority, permission or consent to execute or place his signature and initials, electronically or otherwise, upon the Initial Contract Addendum or the Contract.

127.    Tyrone Armstrong never executed or initialed the Initial Contract Addendum or the Contract.

128.    Defendants fraudulently surreptitiously acquired, placed, forged or  Tyrone Armstrong's signature and initials, and/or fraudulently obtained his consent to place same, on the Initial Contract, the Initial Contract Addendum and/or the Contract, including the Arbitration Provision, without Tyrone Armstrong's knowledge and consent by having him sign the Initial Contract, the Initial Contract Amendment and Contract electronically without giving him the chance to review the agreements and instead summarizing the terms for him.

**Goodleap**

129.    Power Home Solar's Agent represented that Tyrone Armstrong could receive financing to pay the full contract price.

124.    Power Home Solar's Agent proposed that Tyrone Armstrong should finance the purchase of the solar system through Defendant Goodleap which he stated specialized in financing residential solar power systems.

125.    Power Home Solar's Agent represented to Tyrone Armstrong that he had financed many solar system purchases through Defendant Goodleap, that they were a good company and would also actively monitor his system.

126.    Defendant Goodleap was selected exclusively by Power Home Solar's Agent as the financing entity for the solar system.

127.    Power Home Solar's Agent included Defendant Goodleap within the Initial Contract and the Contract as the method of financing the solar system.

128.    To Tyrone Armstrong's knowledge, Power Home Solar's Agent never contacted Defendant Goodleap prior to Tyrone Armstrong entering into the Initial Contract or the Contract.

129.    Tyrone Armstrong never contacted Defendant Goodleap prior to entering into the Initial Contract or the Contract.

130.    Tyrone Armstrong never completed any application related to Defendant Goodleap's financing of the solar system.

131.    Tyrone Armstrong never completed or provided any financial or employment information related to Defendant Goodleap's financing of the solar system.

132.    Tyrone Armstrong never provided any person authority to obtain his personal credit or financial information related to Defendant Goodleap's financing of the solar system.

133.    Power Home Solar's Agent represented to Tyrone Armstrong that Defendant Goodleap would not begin to collect payments from him until the solar system was fully operational and producing electricity.

134.    Upon information and belief, Defendant Goodleap financed most of Defendant Power Home Solar's systems.

135.    Tyrone Armstrong does not recall reviewing with Power Home Solar's Agent any application or contract related to Defendant Goodleap's financing of the solar system.

136.    Tyrone Armstrong does not recall executing, electronically or otherwise, any contract related to Defendant Goodleap's financing of the solar system.

137.    Tyrone Armstrong does not recall being told, or being provided, any documentation related to Defendant Goodleap's financing of the solar system as to an interest rate to be charged.

138. Tyrone Armstrong does not recall being told, or being provided, any documentation related to Defendant Goodleap's financing of the solar system as to the total amount of monies to be paid over the term including principal and interest.

139. Tyrone Armstrong does not recall entering into any contract or agreement with Defendant Goodleap related to Defendant Goodleap's purported financing of the solar system.

140. If Power Home Solar's Agent requested, applied for or completed financing with Defendant Goodleap in Tyrone Armstrong's name, it was without his knowledge, consent, authorization or permission.

141. Power Home Solar's Agent failed to disclose to Tyrone Armstrong the financing transaction with Defendant Goodleap.

142. Tyrone Armstrong has never been provided a copy, in electronic format or otherwise, of any Defendant Goodleap contract.

143. Defendant Goodleap has represented that they paid Defendant Power Home Solar the contract price for the system of Eighty-six Thousand Nine Hundred Thirty-six Dollars ($86,936.00).

144. Defendant Goodleap has represented that Tyrone Armstrong is obligated to it for repayment of the contract price for the system in the original amount of Eighty-six Thousand Nine Hundred Thirty-six Dollars ($86,936.00).

145. Defendant Goodleap filed a UCC Financing Statement in the Office of the Ohio Secretary of State on November 2, 2020, encumbering the Home, the solar system and equipment installed by Power Home Solar on the Home.

146. Defendant Goodleap filed a UCC Financing Statement in the Office of the Recorder, Lucas County, Ohio, on November 9, 2020, encumbering the Home, the solar system and equipment installed by Power Home Solar on the Home.

147. Defendant Goodleap, filed another UCC Financing Statement in the Office of the Recorder, Lucas County, Ohio, on February 22, 2022, encumbering the Home, the solar system and equipment installed by Power Home Solar on the Home.

148. Since a short period of time from after August 2020, Defendant Goodleap has received monthly payments of principal and interest from Tyrone Armstrong via electronic automatic withdraw from his checking account.

149. Defendant Goodleap has been receiving monthly financing payments though the solar system has never been operational and has never produced electricity.

150.   Recently Defendant Goodleap without prior notice, authorization, consent or approval, significantly increased the monthly payments it is withdrawing from Tyrone Armstrong's checking account.

151.   During the period Defendant Goodleap has been receiving payments from Tyrone Armstrong it has been fully aware that the solar system has never been functional or operational.

152.   Upon information and belief, Defendant Goodleap never completed any underwriting of any loan or financing provided to Tyrone Armstrong.

153.   Pursuant to 16 CFR 433.1, et al., (the "Holder in Due Course Rule") Tyrone Armstrong is a "Consumer", Defendant Goodleap is a "Creditor" and Defendant Power Home Solar is a "Seller".

154.   Upon information and belief, Defendant Goodleap claims to hold a "Consumer Credit Contract" pursuant to the Holder in Due Course Rule as to Tyrone Armstrong.

155.   Upon information and belief, Defendant Goodleap had a "Business Arrangement" as that term is defined under the Holder in Due Course Rule with Defendant Power Home Solar at the time Tyrone Armstrong purportedly executed the Initial Contract and the Contract.

156.   Upon information and belief, Defendant Goodleap had a "Contract" as that term is defined under the Holder in Due Course Rule with Defendant Power Home Solar at the time Tyrone Armstrong purportedly executed the Initial Contract and the Contract.

157.   As the holder of a Consumer Credit Contract with Tyrone Armstrong, Defendant Goodleap is subject to all claims and defenses which Tyrone Armstrong could assert against Defendant Power Home Solar relative to the goods and services obtained with the proceeds of the financing received from Defendant Goodleap.

158.   Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the same claims and defenses Tyrone Armstrong may assert against Defendant Power Home Solar.

159.   Tyrone Armstrong demands that Defendant Goodleap return all interest, principal and fees paid by him.

160.   Tyrone Armstrong demands that Defendant Goodleap terminate and disclaim any and all obligations it claims Tyrone Armstrong owes to it for any reason.

161.   Tyrone Armstrong demands that Defendant Goodleap remove all liens and encumbrances against him, the Home or his property.

162.   Tyrone Armstrong demands that Defendant Goodleap rescind any contract it claims to have with him.

163.    Tyrone Armstrong seeks from this Court, rescission of any contract(s) he may have with Defendant Goodleap along with return of all monies paid by him pursuant to said contract(s) or obligation.

164.    Tyrone Armstrong reserves the right to seek permission to amend this Complaint upon the discovery of any evidence of a contract purportedly between him and Defendant Goodleap including for claims under the Fair Credit Billing Act, the Fair Credit Act, the Fair Credit Reporting Act, the Home Equity Loan Consumer Protection Act, and/or the Truth in Lending Act, or any such other act or law.

**Conspiracy**

165.    Upon information and belief, Defendant Power Home Solar and Defendant Goodleap acted in concert and combination in the commission of the unlawful and/or wrongful acts committed against Tyrone Armstrong as set forth herein.

166.    Upon information and belief, Defendant Power Home Solar and Defendant Goodleap committed the unlawful and/or wrongful acts against Tyrone Armstrong as set forth herein in completion of the agreement between them.

167.    Due to Defendant Power Home Solar and Defendant Goodleap's commission of the unlawful and/or wrongful acts as set forth herein, Tyrone Armstrong has been injured and suffered economic loss.

168.    Defendant Power Home Solar and Defendant Goodleap's unlawful and/or wrongful acts against Tyrone Armstrong as set forth herein were malicious.

169.    Tyrone Armstrong was never provided an opportunity to determine the method of financing the solar system sold by Defendant Power Home Solar.

170.    Tyrone Armstrong was never provided an opportunity to determine the financial institution from which he would obtain financing for the solar system sold by Defendant Power Home Solar.

171.    Tyrone Armstrong was never provided the terms and conditions for financing the solar system sold by Defendant Power Home Solar.

172.    In addition to paying the financing payments, Tyrone Armstrong has also had to continue pay electric bills every month since the solar system has never been operational.

173.    In addition to paying the financing payments, Tyrone Armstrong has also had to pay higher electric bills every month since he converted his Home to all electric utilities.

174.    Tyrone Armstrong fully paid Power Home Solar the contract price.

**The Solar System has Never Worked**

175. Defendant Power Home Solar began construction/installation of the solar system in 2020.

176. Defendant Power Home Solar's construction/installation continued for a period of months.

177. Over a period of months, Defendant Power Home Solar made several appointments to come to the Home and continue installation or complete repairs.

178. On Several occasions, though appointments were made in advance, Defendant Power Home Solar never appeared on the date of the appointment.

179. On Several occasions, Tyrone Armstrong took off work to provide Defendant Power Home Solar access to the Home when they did not appear for prescheduled appointments.

180. Due to Defendant Power Home Solar missing appointments, Tyrone Armstrong lost income.

181. After a period of months Defendant Power Home Solar abandoned its construction/installation and Tyrone Armstrong was required to complain to Defendant Power Home Solar in order to get them to continue work.

182. During the period of Defendant Power Home Solar's construction/installation of the solar system they damaged the Home and never repaired the damage they caused.

183. Defendant Power Home Solar has had several excuses, without legal justification, for their failure to timely complete their work.

184. After many months and upon Defendant Power Home Solar's representation that their work was completed the solar system did not work.

185. Defendant Power Home Solar was aware at the time of their purported completion of work that the solar system did not work.

186. Tyrone Armstrong timely notified Defendant Power Home Solar that the system they designed, constructed and installed did not work, that is, it produced no electrical energy.

187. Tyrone Armstrong has made several attempts to have Power Home Solar repair the installed system.

188. Over a period of many months, Defendant Power Home Solar appeared at the Home on a few occasions to attempt to repair the installed system.

189. At no time since executing the Contract in August of 2020, has the solar power system sold, designed, constructed and installed by Defendant Power Home Solar ever even partially operated.

190. On more than one occasion Tyrone Armstrong informed Defendant Power Home Solar to remove the system from the Home.

191.    The solar system, including the equipment, as constructed/installed by Defendant Power Home Solar upon the Home has little or no value.

192.    Removal of the solar system, including the equipment, as constructed/installed by Defendant Power Home Solar upon the Home will cost Tyrone Armstrong significant monies.

193.    Removal of the solar system, including the equipment, as constructed/installed by Defendant Power Home Solar upon the Home will cause damage to the Home and to Tyrone Armstrong.

**Settlement Agreement**

194.    After several complaints and phone calls to Defendant Power Home Solar by Tyrone Armstrong in attempts to have them complete the installation and/or repair the system to a working order, Defendant Power Home Solar stopped returning his calls.

195.    In March of 2021, Tyrone Armstrong was required to retain legal counsel to address the fact that the installed system was not working, had never worked and Defendant Power Home Solar was refusing to return calls to Mr. Armstrong or repair the system.

196.    On March 18, 2021, counsel for Tyrone Armstrong sent a Litigation Hold letter to Defendant Power Home Solar.

197.    After negotiations with counsel, Tyrone Armstrong and Defendant Power Home Solar entered into a Settlement Agreement and Release dated October 12, 2021 (the "Settlement Agreement") (a true, complete and accurate copy of the Settlement Agreement is attached hereto and incorporated fully herein as "Exhibit D").

198.    Prior to entering into the Settlement Agreement, Defendant Power Home Solar represented that it would complete construction/installation and repair of the solar system upon the Home.

199.    Defendant Power Home Solar's completion of the solar system was a material term and condition for Tyrone Armstrong to enter into the Settlement Agreement.

200.    Prior to entering into the Settlement Agreement, Defendant Power Home Solar represented that its completion of the construction/installation and repair of the solar system would take only three (3) working days.

201.    Prior to entering into the Settlement Agreement, Defendant Power Home Solar represented that once it started its work in completion of the construction/installation and repair of the solar system it would man the work in consecutive days until complete.

202.    As a term and condition of the Settlement Agreement, Defendant Power Home Solar was to complete construction/installation and repair of the solar system upon the Home.

203. As a term and condition of the Settlement Agreement, Defendant Power Home Solar was to complete its construction/installation and repair of the solar system upon the Home in three (3) working days.

204. As a term and condition of the Settlement Agreement, Defendant Power Home Solar represented that once it started its work in completion of the construction/installation and repair of the solar system it would man the work in consecutive days until complete.

205. There exists within, or as a part of, a warranty(s) within the Settlement Agreement.

206. After entering into the Settlement Agreement, Defendant Power Home Solar did send technicians to the Home who conducted some work but never made the solar system operational.

207. After entering into the Settlement Agreement, Defendant Power Home Solar never completed the installation and repair of the solar system upon the Home.

208. Tyrone Armstrong timely provided notice to Defendant Power Home Solar that the solar system was not repaired per the terms of the Settlement Agreement.

209. Tyrone Armstrong has made several attempts to contact Defendant Power Home Solar in an effort to have them complete the installation and repair of the solar system.

210. Again, after several complaints and phone calls to Defendant Power Home Solar by Tyrone Armstrong in attempts to have them complete the installation and/or repair the system to a working order, Defendant Power Home Solar stopped returning his calls.

211. Defendant Power Home Solar has again abandoned its installation and repair of the solar system.

212. After entering into the Settlement Agreement, Defendant Power Home Solar is aware that the solar system upon the Home is not working.

213. After entering into the Settlement Agreement, has failed to complete the installation and repair of the solar system.

214. Defendant Power Home Solar breached the Settlement Agreement.

215. Defendant Power Home Solar committed fraud by inducing Tyrone Armstrong to enter into the Settlement Agreement, giving up certain rights, and failing to complete installation of the solar system.

216. Tyrone Armstrong seeks specific performance of the Settlement Agreement.

217. Due to Power Home Solar's acts and omissions, the solar system sold, designed and installed by Defendant Power Home Solar has never produced electricity.

218. Due to Defendant Power Home Solar's acts and omissions, Tyrone Armstrong has never received any electrical power generated by the solar system upon his Home.

219. Due to Defendant Power Home Solar's failure to complete the installation and repair of the solar system, Defendant Power Home Solar has breached the Contract.

220. Due to Defendant Power Home Solar's failure to complete the installation and repair of the solar system, Defendant Power Home Solar has breached its warranties.

221. Due to Defendant Power Home Solar's failure to complete the installation and repair of the solar system, Defendant Power Home Solar has breached the Settlement Agreement.

222. As a term and condition of the Settlement Agreement, Defendant Power Home Solar paid certain sums of money to Tyrone Armstrong, and Tyrone Armstrong stands ready to return said funds upon an appropriate order of this court.

223. Defendant Power Home Solar committed unfair and deceptive acts against Tyrone Armstrong by increasing the prices of the goods and services marketed and sold to Tyrone Armstrong to a level much higher than is considered normal, reasonable or fair and charging a price much higher than Tyrone Armstrong could have purchase the goods and services elsewhere.

224. Defendant Power Home Solar represented that its installation and repair crews, agents and/or employees were skilled and trained in the installation and repair of residential solar power generation systems.

225. Upon information and belief, the foregoing representations were false.

226. The solar power generation system designed, built, installed and constructed at the Home was below, and non-conforming to, industry standards.

227. Defendant Power Home Solar's work at and upon the Home has caused damage to the Home and to Tyrone Armstrong.

228. Defendant Power Home Solar never completed its work as represented.

229. Defendant Power Home Solar never completed its work as contracted.

230. Defendant Power Home Solar never completed its work as warranted.

231. Defendant Power Home Solar has failed to honor its warranty.

232. Defendant Power Home Solar's failure to complete its work specified in the Contract and the Settlement Agreement has been without legal excuse or justification.

233. Tyrone Armstrong demanded return of all sums paid Defendant Power Home Solar.

234. To the date of the filing of this complaint, Defendant Power Home Solar has not returned the monies paid it by Tyrone Armstrong.

235. Defendant Power Home Solar has no legal right or justification to retain the monies paid it by Tyrone Armstrong.

236. Tyrone Armstrong demanded that Defendant Power Home Solar remove the solar system from the Home.

237. To the date of the filing of this complaint, Defendant Power Home Solar has refused to remove the solar system from the Home.

238. Defendant Power Home Solar's work completed and materials provided pursuant to the Contract are far less in value than the Eighty-six Thousand Nine Hundred Thirty-six Dollars ($86,936.00) paid by Tyrone Armstrong.

239. Defendant Power Home Solar knew or should have known, that its failure to complete the work and the Contract would cause additional damage to the Home and Tyrone Armstrong.

240. Tyrone Armstrong has demanded the return of the Eighty-six Thousand Nine Hundred Thirty-six Dollars ($86,936.00) previously paid to Defendant Power Home Solar.

241. Defendant Power Home Solar has refused to return Tyrone Armstrong's Eighty-six Thousand Nine Hundred Thirty-six Dollars ($86,936.00).

242. Defendant Power Home Solar's refusal to refund or return Tyrone Armstrong's Eighty-six Thousand Nine Hundred Thirty-six Dollars ($86,936.00) is without legal excuse or justification.

243. Tyrone Armstrong has completed all conditions precedent pursuant to the Initial Contract, Contract, the Settlement Agreement or otherwise.

244. The acts and omissions of Defendants as plead herein were done intentionally.

245. The acts and omissions of Defendants as plead herein were done without justification.

246. The acts and omissions of Defendants as plead herein were done maliciously.

247. Defendants should have foreseen under the circumstances that the likely result of their acts, failure to act, and omissions as plead herein would cause harm, damage, and loss to the Home and Tyrone Armstrong.

248. Tyrone Armstrong will be required to incur and expend time and additional monies to remediate the unworkmanlike construction of Defendant Power Home Solar.

249. Defendants' acts and omissions as plead herein have caused and will continue to cause, injury, harm, damage, and loss to the Home and Tyrone Armstrong.

250. Defendants' acts and omissions as plead herein have caused the loss of use of the facility of the Home and Tyrone Armstrong's property, or a portion thereof.

251. Defendants' acts and omissions as plead herein were done or permitted as to create a potential and unreasonable risk of harm which has resulted in injury to Tyrone Armstrong.

252. Defendants' acts as plead herein were completed maliciously, wantonly, willfully, and/or recklessly.

21

253.    Defendants' acts and omissions as plead herein have resulted in a diminution, or depreciation of value, to the Home and Tyrone Armstrong's property.

## COUNT ONE

### Negligence

254.    Plaintiff realleges their foregoing allegations as if fully set forth herein.

255.    Defendants knew or should have known that their acts and omissions would cause harm, damage and loss to Tyrone Armstrong's property, both real and personal.

256.    Defendants had actual knowledge of the potential harm, damage, and loss that their acts and omissions would cause harm, damage, and loss to Tyrone Armstrong's property.

257.    Defendants owed a duty to Tyrone Armstrong to exercise the care an ordinary prudent person in a like position would carry out under similar circumstances.

258.    Defendants failed in their duty(s) by among other things:

a.  Failing to take reasonable and economically feasible action to limit the damage and potential damage caused by their acts and omissions;

b.  Failing to complete the work pursuant to the Contract and the Settlement Agreement; and

c.  Failing to complete the work in a workmanlike manner; and

d.  Failing to complete the work pursuant to applicable building codes.

259.    As a direct and proximate result of Defendants' negligence, Tyrone Armstrong has suffered substantial losses and injuries, which losses and injuries exceed Twenty-five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

260.    Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT TWO

### Gross Negligence

261.    Plaintiff realleges their foregoing allegations as if fully set forth herein.

262.    Defendants failed to use even slight care relative to their acts and omissions as plead herein.

263.    Defendants' acts and omissions as plead were done knowingly.

264.    Defendants' acts and omissions as plead were completed purposefully.

265.    Defendants' acts and omissions as plead were done willfully, wantonly and recklessly.

266.    Defendants' acts and omissions as plead herein were so careless as to show complete disregard for the rights and safety of Tyrone Armstrong and his property.

267.    Defendants' acts and omissions as plead herein constitute reckless disregard for the rights and safety of Tyrone Armstrong and his property.

268.    Defendants' acts and omissions as plead were done maliciously.

269.    Defendants' acts and omissions as plead were done fraudulently.

270.    As a direct and proximate result of Defendants' gross negligence, Tyrone Armstrong has suffered substantial losses and injuries, which losses and injuries exceed Twenty-five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

271.    As a direct and proximate result of Defendants' gross negligence, Tyrone Armstrong is entitled to punitive damages in an amount in excess of Twenty-five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

272.    Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT THREE

### Fraud/Misrepresentation

273.    Plaintiff realleges their foregoing allegations as if fully set forth herein.

274.    Defendants represented to Tyrone Armstrong that it would complete its work pursuant to their representations, the Contract and the Settlement Agreement.

275.    Defendants represented to Tyrone Armstrong that the solar power system he was purchasing would satisfy his requirements as set forth herein.

276.    Defendants represented to Tyrone Armstrong that the solar power system he was purchasing would provide more than enough electrical energy for the Home's requirements and that the system would produce excess electricity which he could sell to the local electrical utility company.

277.    Defendants represented to Tyrone Armstrong that he would not have to pay any amounts to Defendant Goodleap until the system was operational and producing electricity.

278.    Defendants represented to Tyrone Armstrong that they would honor their warranty to him.

279.    Defendants represented to Tyrone Armstrong that they would complete the installation of the solar system.

280.    Defendants represented to Tyrone Armstrong that they would repair the solar system.

281.    The foregoing representations were made fraudulently by Defendants.

282. The foregoing representations were made fraudulently by Defendants with the intent to induce Tyrone Armstrong to enter into the Initial Contract and the agreement(s) with Defendant Goodleap.

283. The foregoing representations made by Defendants were false and untrue.

284. The facts misrepresented by Defendants were material to the transaction.

285. Defendants' representations were made with knowledge of their falsity or with such utter disregard and recklessness as to whether such representations were true or false that knowledge may be inferred.

286. Defendants' representations were made with the intent of misleading Tyrone Armstrong into relying upon them.

287. Tyrone Armstrong justifiably relied upon the fraudulent representations made by Defendants and entered into the Initial Contract and the Settlement Agreement, and paid Eighty-six Thousand Nine Hundred Thirty-six Dollars ($86,936.00).

288. Tyrone Armstrong justifiably relied upon the fraudulent representations made by Defendant Power Home Solar and refrained from filing legal action(s), or taking other action, against it and instead entered into the Settlement Agreement.

289. As a direct and proximate result of Defendants' fraudulent representations, Tyrone Armstrong has suffered substantial losses and injuries, which losses and injuries exceed Twenty-five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

290. As a direct and proximate result of Defendants' fraudulent representations, Tyrone Armstrong is entitled to punitive damages in an amount in excess of Twenty-five Thousand Dollars ($25,000.00).

291. Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT FOUR

### Negligent Misrepresentation

292. Plaintiff realleges their foregoing allegations as if fully set forth herein.

293. As set forth herein Defendants communicated false information to Tyrone Armstrong relative to the transaction(s) between them including information related to Defendant Goodleap.

294. Defendants failed to use reasonable care or competence in acquiring or communicating the false information to Tyrone Armstrong.

295.    Tyrone Armstrong justifiably relied upon the information communicated to him by Defendants.

296.    As a direct and proximate result of Defendants' negligent misrepresentation, Tyrone Armstrong has suffered substantial losses and injuries, which losses and injuries exceed Twenty-five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

297.    Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT FIVE

### Failure to Perform in a Workmanlike Manner

298.    Plaintiff realleges their foregoing allegations as if fully set forth herein.

299.    Defendant Power Home Solar had a duty to complete their work in a good and workmanlike manner and in accordance with industry standards.

300.    Defendant Power Home Solar breached these duties as set forth herein.

301.    As a direct and proximate result of Defendant Power Home Solar's breaches, Tyrone Armstrong has been injured in an amount in excess of Twenty-five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

302.    Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT SIX

### Breach of Contract

303.    Plaintiff realleges their foregoing allegations as if fully set forth herein.

304.    Certain contracts existed between Tyrone Armstrong and Defendant Power Home Solar, which may include the Initial Contract and the Settlement Agreement.

305.    Tyrone Armstrong completed and fulfilled his obligations per these contracts.

306.    Tyrone Armstrong performed all conditions precedent pursuant to the contracts and otherwise.

307.    Defendant Power Home Solar breached its contracts with Tyrone Armstrong by, among other things, completing their work negligently and in an unworkmanlike manner that was not in conformity with industry standards.

308. Defendant Power Home Solar breached its contracts with Tyrone Armstrong by, among other things, abandoning its work and leaving the system in a nonoperational state.

309. Defendant Power Home Solar breached its obligations pursuant to the contracts without legal excuse.

310. Due to Defendant Power Home Solar's breach, Tyrone Armstrong has been damaged in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

311. Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT SEVEN
### Anticipatory Breach of Contract

312. Plaintiff realleges their foregoing allegations as if fully set forth herein.

313. Certain binding contracts existed between Tyrone Armstrong and Defendant Power Home Solar, which may include the Initial Contract and the Settlement Agreement.

314. Tyrone Armstrong completed and fulfilled its obligations per the contracts.

315. Tyrone Armstrong performed all conditions precedent pursuant to the contracts and otherwise.

316. Within the contracts is a duty of performance by Defendant Power Home Solar containing a duty of performance which is not yet due.

317. Defendant Power Home Solar by word and deed has refused to complete their required future performance pursuant to the contracts.

318. Defendant Power Home Solar's refusal has caused a breach of the contracts.

319. Due to Defendant Power Home Solar's refusal and resulting breach, Tyrone Armstrong has been damaged in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

320. Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT EIGHT
### Unjust Enrichment

321. Plaintiff realleges their foregoing allegations as if fully set forth herein.

322. Pursuant to the Contract, Tyrone Armstrong paid Defendant Power Home Solar the amount of Eighty-six Thousand Nine Hundred Thirty-six Dollars ($86,936.00).

323. Defendant Power Home Solar has received the benefit of Tyrone Armstrong's funds without adequate consideration for the same.

324. Defendant Power Home Solar has retained the benefit received from Tyrone Armstrong under circumstances where it is unjust to do so.

325. Defendant Power Home Solar has been unjustly enriched in the amount of Eighty-six Thousand Nine Hundred Thirty-six Dollars ($86,936.00) as they have received Tyrone Armstrong's funds but have failed to provide services and materials or pay the reasonable value of same.

326. Due to Defendant Power Home Solar's failure to provide services and materials or pay the reasonable value of the funds, Tyrone Armstrong has been damaged in the amount of Eighty-six Thousand Nine Hundred Thirty-six Dollars ($86,936.00).

327. Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT NINE

### Breach of Implied Covenant of Good Faith and Fair Dealing

328. Plaintiff realleges their foregoing allegations as if fully set forth herein.

329. Tyrone Armstrong had a contract(s) with Defendant Power Home Solar.

330. The contract(s) contained an implied covenant of good faith and fair dealing with each other, and to act reasonably to fulfill the intent of the parties to the contract(s).

331. Defendant Power Home Solar breached the implied covenant of good faith and fair dealing in the contract(s) by, among other things, breaching the Initial Contract, breaching the Settlement Agreement, failing to complete the work pursuant to the Initial Contract and Settlement Agreement, and failing to return the Eighty-six Thousand Nine Hundred Thirty-six Dollars ($86,936.00).

332. Due to Defendant Power Home Solar's breach, Tyrone Armstrong has been damaged in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

333. Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT TEN

## Violations of the Ohio Consumer Sales Practices Act

334. Plaintiff realleges their foregoing allegations as if fully set forth herein.

335. The transactions between the parties hereto constitute a "consumer transaction" as that term is defined within R.C. 1345.01.

336. Defendant Power Home Solar is a "supplier" as that term is defined within R.C. 1345.01.

337. Tyrone Armstrong is a "consumer" as that term is defined within R.C. 1345.01.

338. Defendant Power Home Solar committed unfair or deceptive acts or practices in their dealings and transactions with Tyrone Armstrong.

339. Defendant Power Home Solar committed unfair or deceptive acts or practices in violation of R.C. 1345.02, *et seq.*

340. Defendant Power Home Solar committed unconscionable consumer sales acts and practices in their dealings and transactions with Tyrone Armstrong.

341. Defendant Power Home Solar's unconscionable consumer sales acts and practices are in violation of R.C. 1345.03, *et seq.*

342. Defendant Power Home Solar's violations of R.C. 1345.01, *et seq.* as plead herein were committed knowingly.

343. Defendant Power Home Solar' acts and practices as plead herein constitute unconscionable acts or practices in violation of R.C. 1345.02.

344. Defendant Power Home Solar' acts and practices as plead herein constitute unconscionable acts or practices, including but not limited to, the fact that Defendants knew at the time the consumer transaction was entered into:

    a. that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers per R.C. 1345.03(B)(2);

    b. of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction per R.C. 1345.03(B)(3); and

    c. that Defendant Power Home Solar required Tyrone Armstrong to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier per R.C. 1345.03(B)(5).

345. Pursuant to R.C. 1345.09(A) of the Revised Code Defendant Power Home Solar's violations as plead herein constitute acts prohibited by R.C. 1345.02 and/or R.C. 1345.03 and as such Tyrone Armstrong is entitled to recover his actual economic damages plus an amount, not exceeding five thousand dollars in noneconomic damages.

346. The transactions between the parties hereto constitute a "home solicitation sale" as that term is defined within R.C. 1345.21.

347. Pursuant to R.C. 1345.09(B) Defendant Power Home Solar's violations as plead herein constitute acts or practices declared to be deceptive or unconscionable by rule adopted under division (B)(2) of R.C. 1345.05 before the consumer transaction on which this action is based, or an act or practice determined by a court of this state to violate R.C. 1345.02 , 1345.03, or 1345.031 and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of R.C. 1345.05, and as such Tyrone Armstrong is entitled to recover three times the amount of his actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages.

348. The acts of Defendant Power Home Solar act were committed after decisions were available for public inspection under R.C. 1345.05(A)(3), thus entitling Tyrone Armstrong to the imposition of additional civil penalties pursuant to R.C. 1345.09(B).

349. Since Defendant Power Home Solar knowingly, as that term is defined in R.C. 1345.01(E) and section 109:4-3-01 of the Administrative Code, committed acts and practices violating Chapter 1345, *et seq.* as set forth herein, Tyrone Armstrong is entitled to his reasonable attorneys' fees pursuant to R.C. 1345.09(F).

350. Defendant Power Home Solar committed unfair and deceptive acts and practices in violation of R.C. 1345.02(B)(1) by representing their work would be completed in a competent and workmanlike manner when such was not the case.

351. Defendant Power Home Solar failed to perform their services in a competent and workmanlike manner thereby violating R.C. 1345.01 *et seq.*

352. Defendant Power Home Solar failed to take steps necessary to remedy and correct their defective work thereby violating R.C. 1345.01 *et seq.*

353. Defendant Power Home Solar committed unfair and deceptive acts and practices in violation of R.C. 1345.02(A) by failing to perform home improvement services in a competent and workmanlike manner and then failing to take steps necessary to correct such defective work. *Celebreze v. Mary Gabel, dba Solar Resources of America, Mary Gabel Water Conditioning, and Gabel Water Conditioning*, Slip Op. Case No. 86cCV-12-7458 (C.P. Franklin Co., 7/18/88). *State Ex Rel. Montgomery v. Turner dba Tuner's Blacktop*, CP Hamilton County, Ohio Case Number A9707556, PIF Number 10001693. *State Ex Rel. Brown v. The American Carpet Center, Inc.*, CP Franklin County, Ohio, Case Number 76CV-07-2932, PIF Number 10000173.

354. Defendant Power Home Solar committed unfair and deceptive acts and practices in violation of R.C. 1345.02(A) by entering into a contract with Tyrone Armstrong that they knew was substantially one-sided in their favor. *State Ex Rel. Celebrese v. Ferraro, Allied Pest Control*, Court of Appeals, Montgomery County, Ohio, Case Number 11248, PIF Number 10000371. *State ex rel. Montgomery v. Therma Seal, Inc. et al.*, CP Franklin County, Ohio, Case Number 00CVH07 06254, PIF Number 10002011.

355. Defendant Power Home Solar committed unfair and deceptive acts and practices in violation of R.C. 1345.02 by including within their contract a "limitation of liability" provision which is against public policy and unconscionable. *DeVito v. Autos Direct Online, Inc.*, 2015-Ohio-3336, 37 N.E.3d 194, ¶ 11 (8th Dist.) PIF Number 10003225.

356. Pursuant to R.C. 1345.21, 22 and 23 Defendant Power Home Solar was required to provide a statutory "Notice of Cancellation" to Tyrone Armstrong at the time of contracting, and Defendant Power Home Solar's failure to correctly provide such notice constitutes a violation of R.C. 1345.23 of the Revised Code and thereby further constitutes a deceptive act or practice pursuant to R.C. 1345.28 of the Revised Code.

357. Pursuant to R.C. 1345.28, 1345.02(A), 1345.23(B) and/or O.A.C. 109:4-3-11(5) Defendant Power Home Solar's failure to comply with the provisions of R.C. 1345.21, 22 and 23, the "Right of Cancellation Notice", constitutes a deceptive act or practice in connection with a consumer transaction in violation of R.C. 1345.02. *State ex rel. Montgomery v. Shumate dba Thomasville Furniture Carriers*, Case Number AS973334, C P Hamilton County, PIF Number 10001692. *In Re: Fine Line Distributors*, State of Ohio, Office of the Attorney General, Consumer Protection Section, Investigative File No. CI 93 0195, PIF Number 10001418. *Cartwright v. Beverly Hills Floors, Inc., et al.*, Court of Appeals, Seventh District, Mahoning County, Ohio Case No. 11 MA 109, 2013-Ohio-2266, PIF Number 10003088.

358. Defendant Power Home Solar failed to orally inform Tyrone Armstrong at the time of contracting of his right to cancel said contract violating R.C. 1342.23. *State ex rel. Petro v. Craftmatic Organization, Inc.* 05-CVH-06-06060 C.P. Franklin Cty, PIF Number 10002347.

359. Defendant Power Home Solar committed unfair and deceptive acts and practices in violation of R.C. 1345.02(A) and 1345.23(A) by failing to sign and leave a copy of the contract or agreement with Tyrone Armstrong at the time of contracting. *Appling v. Quality Security Door Company, Inc.*, Cleveland Municipal Court, Case Number 2003 CVI 03279, PIF Number 10002220, 10002223.

360.    Defendant Power Home Solar's failure in permitting eight weeks to elapse without making a full refund to Tyrone Armstrong is prohibited by O.A.C. 109:4-3-09(A)(2)(b) and is therefore a deceptive act in violation of R.C. 1345.02(B). See *State ex rel. Montgomery v. Slasinksi dba A-Top Roofing & Siding*, 00CV0392 CP Marion County, Ohio PIF Number 10002005 (published in PIF 8/28/2001). *Jackson v. Durabilt*, 04-CV-25817 Hamilton County, Ohio Municipal Court, PIF Number 10002660 (published in PIF 5/7/2008), *State ex rel. Calabrese v. Capital Basement Waterproofing, Inc, et al.* 86 CV 10 6776 C.P. Franklin Cty. PIF Number 10001096 (published in PIF 6/8/1990) and *Fisher v. Buckeye Home Improvements II, Inc.* 92 CVH02 1079 C.P. Franklin Cty. PIF Number 10001352 (published in PIF 6/1/1993). *State Ex Rel. Brown v. The American Carpet Center, Inc.*, CP Franklin County, Ohio, Case Number 76CV-07-2932, PIF Number 10000173.

361.    Defendant Power Home Solar's representations as to its warranty is a deceptive act or practice in violation of R.C. 1345.02(B)(10).

362.    Defendant Power Home Solar's failure to honor its warranty is a failure to deliver an essential part of the transaction between the parties, is prohibited by O.A.C. 109:4-3-09(A) and is therefore a deceptive act in violation of R.C. 1345.02(B). See *State ex rel. Calabrese v. Capital Basement Waterproofing, Inc, et al.* 86 CV 10 6776 C.P. Franklin Cty. PIF Number 10001096 (published in PIF 6/8/1990) and *Fisher v. Buckeye Home Improvements II, Inc.* 92 CVH02 1079 C.P. Franklin Cty. PIF Number 10001352 (published in PIF 6/1/1993). *State Ex Rel. Brown v. The American Carpet Center, Inc.*, CP Franklin County, Ohio, Case Number 76CV-07-2932, PIF Number 10000173.

363.    Defendant Power Home Solar committed unfair and deceptive acts and practices in violation of R.C. 1345.02 by violating the Act. *Carpet One Mentor, Inc. v. William Bridge, et al.*, Court of Appeals, Eleventh Appellate District, Lake County, Ohio Case Number 2006-L-005. PIF Number 10002569. *State ex rel. Petro v. Craftmatic Organization, Inc.* 05-CVH-06-06060 C.P. Franklin Cty, PIF Number 10002347.

364.    Defendant Power Home Solar committed unfair and deceptive acts and practices in violation of R.C. 1345.02 by violating the Ohio Deceptive Trades Practices Act R.C. 1345.01, et seq. *Perry v. Tokie,; Towne & Country Roofing & Spouting, Co.*, Court of Common Pleas, Summit County, Ohio Case Number CV-87-11-3869 PIF Number 10001107. *Rhoades v. Swartzmiller; Diversified Builders*, Court of Common Pleas, Summit County, Ohio Case Number CV-87-70-3656 PIF Number 10001087.

365.    Defendant Power Home Solar committed unfair and deceptive acts and practices in violation of R.C. 1345.02 by violating the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301. *Carpet One Mentor, Inc. v. Bridge* 2007-Ohio-3028 PIF Number 10002569.

366.   Defendant Power Home Solar committed deceptive acts and practices in violation of R.C. 1345.02 by violating Ohio Adm.Code 109:4-3-10 as it made representations, claims, or assertions of fact, orally and in writing, which would cause a reasonable consumer to believe such statements are true, where at the time such representations, claims, or assertions were made, Defendant Power Home Solar did not possess or rely upon a reasonable basis in fact which could substantiate such representations, claims, or assertions of fact.

367.   Defendant Power Home Solar committed unfair and deceptive acts and practices in violation of R.C. 1345.01, 1345.02 and 1345.03 by increasing the prices of the goods and services marketed and sold to Tyrone Armstrong to a level much higher than is considered normal, reasonable or fair and charging a price much higher than Tyrone Armstrong could have purchase the goods and services elsewhere.

368.   Defendant Power Home Solar committed unfair and deceptive acts and practices in violation of R.C. 1345.01, 1345.02 and 1345.03 by failing to complete the construction and installation of the solar power generation system in a timely manner. *Brown v. American Custom Homes, Inc.* 1984 WL 561977 (Ohio C.P. 1984). *Coleman v. Rodgers, et al.,* Columbiana County, Ohio, Case Number 2018 CV 191. PIF Number 3535. May 15, 2020.

369.   Defendant Power Home Solar committed unfair and deceptive acts and practices in violation of R.C. 1345.01, 1345.02 and 1345.03 by failing to remediate their defective construction and installation of the solar power generation system in a timely manner. *Brown v. American Custom Homes, Inc.* 1984 WL 561977 (Ohio C.P. 1984). *Coleman v. Rodgers, et al.,* Columbiana County, Ohio, Case Number 2018 CV 191. PIF Number 3535. May 15, 2020.

370.   Defendant Power Home Solar committed unfair and deceptive acts and practices in violation of R.C. 1345.01, et seq., by knowingly breaching a contract with a consumer. *Zimmerman v. U.S. Diamond & Gold Jewelers, Inc.* PIF #10001596, included in PIF June 10, 1998: *Brown v. Spears,* PIF #10000403, Included in PIF May 1, 1981. *Coleman v. Rodgers, et al.,* Columbiana County, Ohio, Case Number 2018 CV 191. PIF Number 3535. May 15, 2020.

371.   Defendant Power Home Solar committed unfair and deceptive acts and practices in violation of R.C. 1345.01, et seq., by maintaining a pattern of inefficient incompetence or continually stalls and evades their legal obligations to Tyrone Armstrong. *Brown, et. al., v. Lyons, et. al.,* Hamilton County, Ohio, Case Number A-742156. PIF No. 10000304. November 5, 1979. *Coleman v. Rodgers, et al.,* Columbiana County, Ohio, Case Number 2018 CV 191. PIF Number 3535. May 15, 2020.

372.   Defendant Power Home Solar committed unfair and deceptive acts and practices in violation of R.C. 1345.01, et seq., by its abandonment, without legal justification, of the project prior to

final completion of the contracted-for work and leaving a home improvement project in an unfinished and potentially dangerous condition. *Coffman v. Kings Concrete and More, et al.,* Cuyahoga County, Ohio, Case Number CV-18-904812. PIF Number 3484. May 3, 2019.

373.   Defendant Power Home Solar committed unfair and deceptive acts and practices in violation of R.C. 1345.01, et seq., by altering the payment terms of the contract. *Coffman v. Kings Concrete and More, et al.,* Cuyahoga County, Ohio, Case Number CV-18-904812. PIF Number 3484. May 3, 2019.

374.   Defendant Power Home Solar committed unfair and deceptive acts and practices in violation of R.C. 1345.01, et seq., by making misleading statements to Tyrone Armstrong which Tyrone Armstrong relied upon to his detriment. *Capponi v. Champion Window Company of Toledo, LLC, et al.,* Hancock County, Ohio, Case Number 2021 CV 197. PIF Number 3610. October 22, 2021. *State ex rel. Montgomery vs. Marcum,* PIF#10002049, included in PIF January 22, 2002. *Coleman v. Rodgers, et al.,* Columbiana County, Ohio, Case Number 2018 CV 191. PIF Number 3535. May 15, 2020.

375.   Defendant Power Home Solar committed unfair and deceptive acts and practices in violation of R.C. 1345.01, 1345.02 and 1345.03 by furnishing substitute goods with a lesser cost without any accompanying reduction in the total price of the Contract.

376.   Defendant Power Home Solar violated R.C. 1345.02(B)(5) by failing to supply the subject of the consumer transaction in accordance with its previous representation.

377.   Defendant Power Home Solar committed unfair and deceptive acts and practices in violation of R.C. 1345.01, et seq., by failing to provide a refund to Tyrone Armstrong within two weeks of his request. *In re: Sanderson Professional Services, LLC and Alexia Sanderson,* State of Ohio, Office of the Attorney General, Consumer Protection Section, Docket No. 581760, March 4, 2021, PIF Number 3573.

378.   Defendant Power Home Solar violated R.C. 1345.02(A) and R.C. 1345.03(A) by:

   a.   Failing to respond to Tyrone Armstrong's inquiries;

   b.   Failing to give Tyrone Armstrong accurate information related to delivery and service dates;

   c.   Failing to give Tyrone Armstrong accurate information related to the completion of work;

   d.   Failing to monitor the solar system;

   e.   Failure to report failure of the solar system based upon their monitoring; and

   f.   Failing to return multiple customer service inquiries from Tyrone Armstrong concerning the goods and services. *In re: Sanderson Professional Services, LLC and*

33

*Alexia Sanderson,* State of Ohio, Office of the Attorney General, Consumer Protection Section, Docket No. 581760, March 4, 2021, PIF Number 3573. *Coleman v. Rodgers, et al.,* Columbiana County, Ohio, Case Number 2018 CV 191. PIF Number 3535. May 15, 2020.

379.    Defendant Power Home Solar committed unfair and deceptive acts against Tyrone Armstrong by increasing the prices of the goods and services marketed and sold to Tyrone Armstrong to a level much higher than is considered normal, reasonable or fair and charging a price much higher than Tyrone Armstrong could have purchase the goods and services elsewhere a violation of R.C. 1345.01, et seq.

380.    Defendant Power Home Solar represented that its installation and repair crews, agents and/or employees were skilled and trained in the installation and repair of residential solar power generation systems which was untrue a violation of R.C. 1345.01, et seq.

381.    Defendant Power Home Solar's work at and upon the Home caused damage to the Home which Defendant Power Home Solar has failed to repair or remediate in violation of R.C. 1345.01, et seq.

382.    Defendant Power Home Solar's refusal to refund or return Tyrone Armstrong's Eighty-six Thousand Nine Hundred Thirty-six Dollars ($86,936.00), without legal excuse or justification, is a violation of R.C. 1345.01, et seq.

383.    As a direct and proximate result of Defendant Power Home Solar's violations of the Act and as set forth, Tyrone Armstrong has been injured in an amount in excess of Twenty-five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

384.    Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT ELEVEN

### Breach of Warranty

385.    Plaintiff realleges their foregoing allegations as if fully set forth herein.

386.    Defendant Power Home Solar provided a warranty to Tyrone Armstrong.

387.    Defendant Power Home Solar provided a warranty as to their workmanship to Tyrone Armstrong.

388. Even if not explicit, an implied term of the contract and agreement between the parties was that Defendant Power Home Solar would complete their services in a good and workmanlike manner.

389. Any and all warranties, implied or express, provided by Defendant Power Home Solar were in violation of the Ohio Consumer Sales Practices Act.

390. Any and all warranties, implied or express, provided by Defendant Power Home Solar were breached by them.

391. Tyrone Armstrong provided timely notice of the defects related to the goods and services provided by Defendant Power Home Solar.

392. Defendant Power Home Solar has had ample time and opportunity to cure the issues raised by Tyrone Armstrong but has failed to do so.

393. Defendant Power Home Solar failed to honor their warranty after Tyrone Armstrong made claim upon it.

394. The conduct of Defendant Power Home Solar constituted a breach of an express warranty because it failed to honor the warranty and promptly repair, replace, or remediate the issues described by Tyrone Armstrong.

395. Tyrone Armstrong justifiably relied upon Defendant Power Home Solar's express warranty in his purchase of the solar power generation system.

396. As a result of Defendant Power Home Solar's acts and omissions, the limitations, if any, of Defendant Power Home Solar warranty are void and unenforceable.

397. As a direct and proximate result of Defendant Power Home Solar's breach of their warranty and violations of the Ohio Consumer Sales Practices Act, Tyrone Armstrong has been injured in an amount in excess of Twenty-five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

398. Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT TWELVE

### Breach of Implied Warranty of Merchantability

399. Plaintiff realleges their foregoing allegations as if fully set forth herein

400. In connection with the subject transaction, an implied warranty that the goods sold by Defendant Power Home Solar would be reasonable, merchantable, and free of defects.

401.    Defendant Power Home Solar breached the implied warranty of merchantability in that the goods sold were not in merchantable condition when sold or any time thereafter and were not fit for the ordinary purposes for which such goods are used, as set forth above.

402.    Tyrone Armstrong timely notified Defendant Power Home Solar of the defects in the goods.

403.    Defendant Power Home Solar has had ample time and opportunity to cure the issues raised by Tyrone Armstrong but has failed to do so.

404.    As a direct and proximate result of Defendant Power Home Solar's breach of warranty, Tyrone Armstrong has been injured in an amount in excess of Twenty-five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

405.    Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT THIRTEEN

### Breach of Implied Warranty of Fitness for a Particular Purpose

406.    Plaintiff reasserts his previous allegations as if fully set forth herein.

407.    Tyrone Armstrong entered an agreement and/or contract for the purchase of a solar power system for his Home from Defendant Power Home Solar.

408.    Tyrone Armstrong informed Defendant Power Home Solar that he wished to purchase a solar power system and equipment that would provide all of his electric energy requirements.

409.    At the time of entering the agreement, Tyrone Armstrong provided Defendant Power Home Solar with certain general specifications the system and equipment were to meet and the particular purpose for which he would utilize the purchased system and equipment.

410.    As a result of the circumstances, an implied warranty arose that the system and equipment furnished by Defendant Power Home Solar to Tyrone Armstrong were fit for his expressed purpose.

411.    The system and equipment furnished by Defendant Power Home Solar were not fit for Tyrone Armstrong's purpose(s) in that they have never worked and have never produced any electrical power.

412.    Tyrone Armstrong timely notified Defendant Power Home Solar of the defects in the system and equipment.

413.    Defendant Power Home Solar has had ample time and opportunity to cure the issues raised by Tyrone Armstrong but failed to do so.

414. As a direct and proximate result of Defendant Power Home Solar's breach of warranty, Tyrone Armstrong has been injured in an amount in excess of Twenty-five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

415. Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT FOURTEEN

### Breach of R.C. 1302.01 et seq.

416. Plaintiff reasserts his previous allegations as if fully set forth herein .

417. As plead herein, Defendant Power Home Solar's acts and omissions constitute a violation of R.C. 1302.01, et seq.

418. Tyrone Armstrong timely and rightfully rejected and/or justifiably revoked acceptance of the solar power system and equipment as non-conforming.

419. Tyrone Armstrong timely rescinded the contract.

420. Since the solar power system and equipment is non-conforming, Tyrone Armstrong is entitled to recover all losses resulting in the ordinary course of events.

421. Since the solar power system and equipment is non-conforming as to the warranty provided by Defendant Power Home Solar, Tyrone Armstrong is entitled to all proximate damages resulting to him.

422. Since the solar power system and equipment is non-conforming, Tyrone Armstrong is entitled to recover all incidental and consequential damages resulting to him.

423. Tyrone Armstrong demands specific performance.

424. Tyrone Armstrong seeks rescission of the Initial Contract, the Initial Contract Addendum, Contract and the Settlement Agreement.

425. Tyrone Armstrong seeks rescission of any agreement with Defendant Goodleap.

426. As a direct and proximate result of Defendant Power Home Solar's violation of R.C. 1302.01, et seq., Tyrone Armstrong has been injured in an amount in excess of Twenty-five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

427. Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT FIFTEEN

## Violation of the Ohio Deceptive Trades Practices Act

428.    Plaintiff realleges their foregoing allegations as if fully set forth herein.

429.    Defendant Power Home Solar is a "Person" as that term is defined in the Ohio Deceptive Trades Practices Act R.C. 4165.01, et. seq. (the "ODTPA").

430.    Defendant Power Home Solar engaged in a deceptive trade practice, when in the course of their business, they represented that their services and goods are of a particular standard, quality, or grade, though they are of another.

431.    Specifically, Defendant Power Home Solar represented that they design, build, install and construct solar power generation systems, of professional or expert standard, quality or grade.

432.    Specifically, Defendant Power Home Solar represented that they would design, build, install and construct Tyrone Armstrong's solar power generation system in a workmanlike manner.

433.    Defendant Power Home Solar's acts constitute deceptive trade practices under the common law and the ODTPA.

434.    Defendant Power Home Solar's commission of deceptive trade practices have, and/or are likely to, cause damage to Tyrone Armstrong.

435.    Defendant Power Home Solar's commission of deceptive trade practices were willful.

436.    As a direct and proximate result of Defendant Power Home Solar's violations of the ODTPA, Tyrone Armstrong has been injured in an amount in excess of Twenty-five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein..

437.    Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT SIXTEEN

## Violation of the Magnuson-Moss Warranty Act

438.    Plaintiff realleges their foregoing allegations as if fully set forth herein

439.    Tyrone Armstrong contracted with Defendant Power Home Solar for the purchase of the solar power generation system to be installed at Tyrone Armstrong's Home.

440.    The contract between the parties is a consumer contract.

441.    The contract between the parties is not a new home construction contract.

442.    Defendant Power Home Solar marketed their expertise, design capabilities, construction and assembly of the solar power generation system to Tyrone Armstrong.

443. The contract between the parties calls for the purchase of design services, materials, goods, equipment, construction and assembly of the solar power generation system for the improvement, repair or renovation of Tyrone Armstrong's Home and personal residence.

444. The items purchased pursuant to the contract, or contract(s), between the parties constitute consumer products within the definition of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 (the "Act") and is a covered transaction thereunder.

445. Tyrone Armstrong is a "consumer" under the Act.

446. Defendant Power Home Solar is a "supplier" and "warrantor" under the Act.

447. The filing of the instant action constitutes a "product liability claim" under the Act.

448. The solar power generation system was non-conforming.

449. The solar power generation system was non-conforming as represented by Defendant Power Home Solar.

450. Defendant Power Home Solar was non-conforming to the warranty provided.

451. Defendant Power Home Solar failed to fully and conspicuously disclose the terms and conditions of the warranty provided to Tyrone Armstrong as well as provide other required content.

452. The warranty provided by Defendant Power Home Solar is a "defective warranty" under the Act.

453. Defendant Power Home Solar has failed to comply with its obligations under the Act, its warranty and/or its implied warranty and has therefore violated the Act.

454. Defendant Power Home Solar violated its implied warranty of merchantability pursuant to the Act.

455. Defendant Power Home Solar violated Section 2308(a) of the Act by attempting to disclaim or modify an implied warranty.

456. As a direct and proximate result of Defendant Power Home Solar's violations of the Act, Tyrone Armstrong has been injured in an amount in excess of Twenty-five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

457. Due to Defendant Power Home Solar's violations of the Act, Tyrone Armstrong is entitled to recover as part of his judgment his costs and expenses, including attorneys' fees, in connection with the commencement and prosecution of this action.

458. Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

**COUNT SEVENTEEN**

**Promissory Estoppel**

459.   Plaintiff realleges their foregoing allegations as if fully set forth herein.

460.   Defendant Power Home Solar is estopped from denying a contract exists between it and Tyrone Armstrong based upon promissory estoppel.

461.   Defendant Power Home Solar promised Tyrone Armstrong, among other things, that:

    a.   Defendant Power Home Solar would design, construct and install a solar power generation system that would work;

    b.   Defendant Power Home Solar would design, construct and install a solar power generation system that would provide all of his electricity requirements at his Home;

    c.   The solar power generation system designed, constructed and installed by Defendant Power Home Solar would save Tyrone Armstrong money on utility costs;

    d.   The solar power generation system designed, constructed and installed by Defendant Power Home Solar would generate more electricity than required to power the Home and the excess could be sold to the local electrical utility;

    e.   Tyrone Armstrong would receive a tax credit or refund in the approximate amount of twenty-two thousand dollars ($22,000.00);

    f.   Defendant Power Home Solar would complete construction of the solar system; and

    g.   Defendant Power Home Solar would repair the solar system.

462.   Defendant Power Home Solar should have reasonably and foreseeably expected Tyrone Armstrong to rely upon its promises.

463.   Tyrone Armstrong justifiably relied upon Defendant Power Home Solar's promises and paid it Eighty-six Thousand Nine Hundred Thirty-six Dollars ($86,936.00).

464.   As a direct and proximate result of Defendant Power Home Solar's promises and Tyrone Armstrong's justifiable reliance thereupon, Tyrone Armstrong has been injured in an amount in excess of Twenty-five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

465.   Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT EIGHTEEN

### Common Law Product Liability

466.   Plaintiff reasserts his previous allegations as if fully set forth herein.

467. Defendant Power Home Solar designed, constructed, installed and/or assembled the solar power generation system at Tyrone Armstrong's home.

468. The solar power generation system designed, constructed, installed and/or assembled by Defendant Power Home Solar was, and is, defective.

469. The solar power generation system designed, constructed, installed and/or assembled by Defendant Power Home Solar was, and is, defective, in that, it does not work and has never worked.

470. As a direct and proximate result of Defendant Power Home Solar's defective design, construction, installation and/or assembly of the solar power generation system at Tyrone Armstrong's Home, Tyrone Armstrong has been injured in an amount in excess of Twenty-five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

471. Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

### COUNT NINETEEN

### <u>Violations of the Ohio Product Liability Act</u>

472. Plaintiff reasserts his previous allegations as if fully set forth herein.

473. Pursuant to R.C. 2307.71, Tyrone Armstrong is a "Claimant" who have suffered an "Economic Loss" and is asserting a "Product Liability Claim".

474. Pursuant to R.C. 2307.71, Defendant Power Home Solar is a "Manufacturer".

475. Pursuant to R.C. 2307.71, Defendant Power Home Solar is a "Supplier".

476. Defendant Power Home Solar's supplied product was defective and therefore in violation of R.C. 2307.77 as it did not conform, when it left the control of the supplier in question, to a representation made by that supplier, and that representation and the failure to conform to it were a proximate cause of harm for which Tyrone Armstrong seeks to recover compensatory damages.

477. Due to Defendant Power Home Solar's violations of the Ohio Product Liability Act Tyrone Armstrong is entitled to compensatory damages for any economic loss that proximately resulted from the negligence of Defendant Power Home Solar or from the representation made by Defendant Power Home Solar and the failure of the product in question to conform to that representation.

478. Defendant Power Home Solar was negligent and that, negligence was a proximate cause of harm for which Tyrone Armstrong seeks to recover compensatory damages due to its violation of R.C. 2307.78.

41

479. Due to Defendant Power Home Solar's violations of the Ohio Product Liability Act, Tyrone Armstrong seeks compensatory, punitive and exemplary damages from Defendant Power Home Solar.

480. As a direct and proximate result of Defendant Power Home Solar's violations of the Ohio Product Liability Act, Tyrone Armstrong has been injured in an amount in excess of Twenty-five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

481. Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT TWENTY

### Respondeat Superior

482. Plaintiff realleges their foregoing allegations as if fully set forth herein.

483. Any and all acts and omissions of Defendant Power Home Solar's and Defendant Goodleap's officers, agents, salespersons and employees were completed in furtherance of their normal employment duties and within the scope of their employment and agency.

484. Defendant Power Home Solar and Defendant Goodleap at all times had control, or a right of control, over its officers, agents and employees.

485. Defendant Power Home Solar and Defendant Goodleap are liable for the torts and negligent acts or omissions of their officers, agents and employees committed within the scope of their employment and agency.

486. Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT TWENTY-ONE

### Rescission

487. Plaintiff realleges their foregoing allegations as if fully set forth herein.

488. Defendant Power Home Solar materially breached its contract with Tyrone Armstrong.

489. Defendant Power Home Solar materially breached the Settlement Agreement.

490. As set forth herein Defendant Power Home Solar has misrepresented material facts relative to the transactions between it and Tyrone Armstrong.

491. As set forth herein Defendant Power Home Solar has committed fraud relative to the transactions between it and Tyrone Armstrong.

42

492. Tyrone Armstrong is not in default of any contract or the Settlement Agreement.

493. Tyrone Armstrong stands ready to return all monies paid to him by Defendant Power Home Solar.

494. Tyrone Armstrong stands ready to return all equipment purchased by him from Defendant Power Home Solar.

495. Tyrone Armstrong hereby tenders a return of all monies paid to him by Defendant Power Home Solar.

496. Tyrone Armstrong hereby tenders a return of all equipment purchased by him from Defendant Power Home Solar.

497. Tyrone Armstrong demands return from Defendant Power Home Solar all monies paid by him.

498. Due to Defendant Power Home Solar's acts and omissions, Tyrone Armstrong requests a decree of rescission of the Initial Contract, the Initial Contract Addendum, the Contract and the Settlement Agreement or any other contract between him and Defendant Power Home Solar.

499. Due to Defendants' acts and omissions as set forth herein, Tyrone Armstrong requests a decree of rescission of any contract or agreement between him and Defendant Goodleap.

## COUNT TWENTY-TWO

### Negligent Hiring, Supervision or Retention

500. Plaintiff realleges their foregoing allegations as if fully set forth herein.

501. Defendant Power Home Solar represented that its installation and repair crews, agents and/or employees were skilled and trained in the installation and repair of residential solar power generation systems.

502. Upon information and belief, the foregoing representations were false.

503. Defendant Power Home Solar had an employment relationship with its installation and repair crews, agents and/or employees involved with the solar system installed at the Home.

504. Defendant Power Home Solar's installation and repair crews, agents and/or employees involved with the solar system installed at the Home were incompetent.

505. Defendant Power Home Solar had an employment relationship with its customer service representatives and managers involved in addressing Tyrone Armstrong's concerns with the solar system installed at the Home.

506. Defendant Power Home Solar's customer service representatives and managers have failed to adequately address Tyrone Armstrong's reasonable concerns to have the solar system repaired.

507. Defendant Power Home Solar's customer service representatives and managers failed to actively monitor the solar system and report failure(s) or other issues to Tyrone Armstrong.

508. Defendant Power Home Solar's customer service representatives and managers have actively ignored Tyrone Armstrong's reasonable concerns to have the solar system repaired.

509. Defendant Power Home Solar's customer service representatives and managers have actively ignored Tyrone Armstrong's requests to have the solar system removed.

510. Defendant Power Home Solar's customer service representatives and managers have actively ignored Tyrone Armstrong's requests to refund the contract price.

511. Defendant Power Home Solar had actual or constructive knowledge of such incompetence.

512. Tyrone Armstrong states that Defendant Power Home Solar owed a duty of exercising reasonable care in hiring and training its sales agents, installation and repair crews, agents, customer service representative, managers and/or employees to design, sell, construct, install, repair, activate, monitor and maintain the solar systems installed at the Home.

513. Tyrone Armstrong states that Defendant Power Home Solar owed a duty of exercising reasonable care in hiring and training its agents, customer service representative, managers and/or employees to adequately address its contractual obligations.

514. Tyrone Armstrong states that Defendant Power Home Solar breached its duty to him in failing to exercise reasonable care in hiring and failing to properly train the sales agents, installation and repair crews, agents, customer service representative, managers and/or employees responsible for designing, selling, constructing, installing, repairing, activating, monitoring and maintaining the solar systems installed at the Home and in adequately addressing its contractual obligations.

515. As a direct and proximate result of Defendant Power Home Solar's negligence in hiring, training or retaining the employees, Tyrone Armstrong has been injured in an amount in excess of Twenty-five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

516. Pursuant to the Holder in Due Course Rule, Defendant Goodleap is subject to the foregoing claim(s) asserted against Defendant Power Home Solar as if asserted directly against Defendant Goodleap.

## COUNT TWENTY-THREE
### Declaratory Judgment as to Defendant Power Home Solar

517. Plaintiff realleges their foregoing allegations as if fully set forth herein.

518. There exists a contract or contracts between Tyrone Armstrong and Defendant Power Home Solar.

519. Tyrone Armstrong states that Defendant Power Home Solar has breached and failed to honor the contract(s) between them.

520. Power Home Solar's Agent surreptitiously acquired Tyrone Armstrong's signature on the Initial Contract, including the Arbitration Provision, without Tyrone Armstrong's knowledge and consent by having him sign the Initial Contract electronically without giving him the chance to review the agreement and instead summarizing the terms for him.

521. The Arbitration Provision found in the Initial Contract is void as a matter of law as it fails to provide Tyrone Armstrong with a meaningful remedy.

522. The Initial Contract including, but not limited to, the Arbitration Provision and the limitation of liabilities clause as a whole is manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties.

523. The Initial Contract is not consistent with the intention of the Parties that damages in the amount stated should follow the breach.

524. As more fully set forth herein, the Initial Contract was provided on Power Home Solar's Agent's personal electronic device and controlled by him as trained and instructed by Defendant Power Home Solar.

525. Based upon Power Home Solar's Agent's manipulation and concealment of the Initial Contract, and its provisions, Tyrone Armstrong was kept from any meaningful review of the Contract including the Arbitration Provision.

526. Pursuant to Civ.R. 57 and R.C. 2721.01 through 2721.16, Tyrone Armstrong requests that this Court set forth an Order declaring the rights and obligations of the Parties as to the contract(s), both written and verbal, between them.

527. Tyrone Armstrong requests this Court enter a declaration that there was no meeting of the minds between the parties as to the Arbitration Provision and thus, there was no agreement from Tyrone Armstrong to the Arbitration Provision.

528. Tyrone Armstrong requests this Court enter a declaration that the limitation of liability and the Arbitration Provision in the Initial Contract are void as a matter of law.

529. Defendant Power Home Solar fraudulently induced Tyrone Armstrong to enter into the Settlement Agreement.

530. The Settlement Agreement is void as a matter of law as it fails to provide Tyrone Armstrong with a meaningful remedy.

531. The Settlement Agreement is not consistent with the intention of the Parties.

532. Pursuant to Civ.R. 57 and R.C. 2721.01 through 2721.16, Tyrone Armstrong requests that this Court set forth an Order declaring the rights and obligations of the Parties as to the Settlement Agreement, both written and verbal, between them.

533. Tyrone Armstrong requests this Court enter a declaration that there was no meeting of the minds between the parties as to the Settlement Agreement rendering and rescinding same.

## COUNT TWENTY-FOUR

### Declaratory Judgment as to Defendant Goodleap

534. Plaintiff realleges their foregoing allegations as if fully set forth herein.

535. There exists, or may exist, a contract or contracts between Tyrone Armstrong and Defendant Goodleap.

536. Tyrone Armstrong states that Defendant Goodleap has breached and failed to honor any contract(s) between them.

537. Pursuant to Civ.R. 57 and R.C. 2721.01 through 2721.16, Tyrone Armstrong requests that this Court set forth an Order declaring the rights and obligations of the Parties as to the contract(s), both written and verbal, between them.

## COUNT TWENTY-FIVE

### Civil Conspiracy

538. Plaintiff realleges their foregoing allegations as if fully set forth herein.

539. The cost of purchase and installation of Defendant Power Home Solar's solar system was greatly overpriced as compared to the average cost for a similar solar system in 2020.

540. Knowing that having easily available credit extended to the potential purchaser of the system would further promote the sale of the solar system, Defendant Power Home Solar and Defendant Goodleap conspired together to facilitate the sale of the solar system to Tyrone Armstrong.

541. Tyrone Armstrong was not provided any lender other than Defendant Goodleap at the time of the execution of the Contract.

542. Defendant Power Home Solar automatically included Defendant Goodleap in the Contract as the lender.

543.  Defendant Goodleap knew, or should have known, that Defendant Power Home Solar secured the signing of the Contract with Tyrone Armstrong through fraudulent, false, and misleading representations at the time of the sale.

544.  Upon information and belief, Defendant Goodleap had specific employees and/or departments dedicated to "Partner Relations", specifically for and intimately familiar with Defendant Power Home Solar and its sales practices.

545.  Upon information and belief, Defendant Goodleap has been contacted by numerous residents throughout Ohio and the United States regarding their issues with the Solar System and was uniquely aware of the growing dissatisfaction with Defendant Power Home Solar's business practices.

546.  Even with such knowledge, Defendant Goodleap acted in concert with Defendant Power Home Solar in facilitating the fraudulent conduct by agreeing to be one of the very few financial institutions provided to customers, including Tyrone Armstrong.

547.  The acts and omissions of the Defendants as set forth herein were illegal.

548.  Having entered into this conspiratorial relationship, Defendant Power Home Solar agents acted in concert with Defendant Goodleap's agents to secure the Initial Contract and ultimately for Defendant Goodleap to secure the financing of said system.

549.  Defendant Goodleap benefited from this conspiracy by securing Tyrone Armstrong as a payor and ensuring that independent of whether Defendant Power Home Solar actually performed all duties under the Sales Agreement, Tyrone Armstrong would be obligated to satisfy the loan.

550.  Defendants' conduct was knowing, intentional, reckless, and malicious.

551.  As a direct and proximate result of Defendants' conspiracy, Tyrone Armstrong has been injured in an amount in excess of Twenty-five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

## COUNT TWENTY-SIX

### Civil Recovery for Criminal Act

552.  Plaintiff realleges their foregoing allegations as if fully set forth herein.

553.  The act(s) of Defendants as set forth herein constitute violations of R.C. 2913.02 Theft and R.C. 2913.43 Securing Writings by Deception.

554.  Defendants acts of theft and securing writings by deception, would, if prosecuted constitute a felony crime(s) under Ohio law.

555.  The conduct of Defendants as set forth herein was the proximate cause of loss to the Tyrone Armstrong.

556. Tyrone Armstrong has claimed relief for his loss herein.

557. Due to Defendants' act(s) as set forth herein, Tyrone Armstrong has been damaged in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

558. Due to Defendants' act(s), pursuant to R.C. 2307.60 and/or 2307.61, Tyrone Armstrong should be awarded punitive damages.

559. Due to Defendants' act(s), pursuant to R.C. 2307.60 and/or 2307.61, Tyrone Armstrong should be awarded his costs and expenses, including actual and reasonable attorneys' fees, in maintaining and prosecuting this matter.

560. Due to Defendants' act(s), pursuant to R.C. 2307.61, Tyrone Armstrong should be awarded liquidated damages in the amount of three (3) times the value of the amount of funds taken by Defendants pursuant to R.C. 2307.61(A)(1)(b)(ii).

## COUNT TWENTY-SEVEN

### Specific Performance

561. Plaintiff realleges their foregoing allegations as if fully set forth herein.

562. As the full measure of money damages due P may be incalculable or inadequate to compensate Tyrone Armstrong, Tyrone Armstrong is entitled to an Order of Specific Performance requiring that Defendants complete the act(s) set forth in the Initial Contract, Contract and Settlement Agreement.

563. Tyrone Armstrong requests that this Court enter an Order of Specific Performance requiring that Defendants complete the act(s) set forth in the Initial Contract, Contract and Settlement Agreement.

## COUNT TWENTY-EIGHT

### Recovery Under Holder In Due Course Rule

123. Plaintiff realleges their foregoing allegations as if fully set forth herein.

124. Defendant Goodleap is liable to Tyrone Armstrong pursuant to 16 C.F.R. pt. 433, the Holder in Due Course Rule.

125. Tyrone Armstrong seeks an Order from this Court rescinding any contract between him and Defendant Goodleap pursuant to the Holder in Due Course Rule.

126. Tyrone Armstrong seeks an award from this Court from Defendant Goodleap for all of his damages, including consequential, statutory, treble, and punitive along with his costs and expense in maintaining this litigation including his attorneys' fees, pursuant to the Holder in Due Course Rule.

127. Tyrone Armstrong seeks an Order from this Court rescinding the original sale between him and Defendant Power Home Solar pursuant to the Holder in Due Course Rule.

564. Due to the acts and omissions of Defendant Goodleap pursuant to the Holder in Due Course Rule, Tyrone Armstrong has been damaged in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), and the precise amount of which will be shown at trial herein.

**WHEREFORE**, Plaintiff Tyrone Armstrong prays for judgment in its favor and against Defendants Power Home Solar, LLC, Goodleap, LLC, Ahmad Nafisa and John Doe Defendants One through Ten, jointly and severally, as follows:

(A) That this Court award Tyrone Armstrong from Defendants compensatory damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00);

(B) That this Court award Tyrone Armstrong from Defendants incidental and consequential damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00);

(C) That this Court award Tyrone Armstrong from Defendants punitive and exemplary damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00);

(D) That this Court award Tyrone Armstrong from Defendants treble damages pursuant to R.C. § 1345.09(B);

(E) That this Court award Tyrone Armstrong from Defendants noneconomic damages in an amount not to exceed Five Thousand Dollars ($5,000.00) pursuant to R.C. § 1345.09(B);

(F) That this Court award Tyrone Armstrong from Defendants his attorneys' fees pursuant to R.C. § 1345.09(F);

(G) That this Court award Tyrone Armstrong from Defendants his attorneys' fees pursuant to R.C. § 4165.03(B);

(H) That this Court award Tyrone Armstrong from Defendants his attorneys' fees pursuant to the Settlement Agreement;

(I) That this Court award Tyrone Armstrong from Defendants pursuant to R.C. 2307.61(A)(1)(b)(ii) the amount of Two Hundred Sixty Thousand Eight Hundred Eight Dollars ($260,808.00) representing three times Tyrone Armstrong's economic damages;

(J) That this Court award Tyrone Armstrong from Defendants pursuant to R.C. 2307.60(A)(1) and/or 2307.61(B), the costs and expenses, including actual and reasonable attorneys' fees, in maintaining and prosecuting this matter;

(K) That this Court award Tyrone Armstrong from Defendants his cost and expenses, including attorneys' fees, pursuant to 15 U.S.C. § 2310(d)(2);

(L)     That this Court award rescission of the sale of the solar system, Initial Contract, the Initial Contract Addendum and the Contract pursuant to R.C. 1302.01, et seq.;

(M)     That this Court award rescission of the sale of the solar system, the Initial Contract, the Initial Contract Addendum and the Contract, the Settlement Agreement and any agreement between Tyrone Armstrong and Defendant Goodleap;

(N)     That this Court award rescission of the sale of the solar system, the Initial Contract, the Initial Contract Addendum, the Contract and any agreement between Tyrone Armstrong and Defendant Goodleap pursuant to R.C. 1345.01, et seq.;

(O)     That this Court award rescission of the sale of the solar system, the Initial Contract, the Initial Contract Addendum, the Contract and any agreement between Tyrone Armstrong and Defendant Goodleap pursuant to R.C. 4165.01, et seq.;

(P)     That this Court award Tyrone Armstrong from Defendants a return of all monies paid by him relative to the solar power system, the sale of the solar system and its financing, including principal, interest, fees and costs along with cancellation of any payments remaining upon any loan or financing agreement;

(Q)     That this Court enter an Order of Specific Performance requiring that Defendants complete the act(s) set forth in the Initial Contract, Contract and the Settlement Agreement;

(R)     That this Court award rescission of any contract between Tyrone Armstrong and Defendant Goodleap pursuant to the Holder in Due Course Rule;

(S)     That this Court award from Defendant Goodleap all of Tyrone Armstrong's damages, including consequential, statutory, treble, and punitive along with his costs and expense in maintaining this litigation including his attorneys' fees, pursuant to the Holder in Due Course Rule;

(T)     That this Court award rescission of the original sale between Tyrone Armstrong and Defendant Power Home Solar pursuant to the Holder in Due Course Rule;

(U)     That this Court award Tyrone Armstrong from Defendants all costs and expenses of this action, including actual and reasonable attorneys' fees;

(V)     That this Court award Tyrone Armstrong from Defendants all costs and expenses for the collection of any award or judgment of this action, including actual and reasonable attorneys' fees; and

(W)     That this Court grant Tyrone Armstrong such other relief as may be just and equitable.

Respectfully Submitted:
Pigott, Ltd.

*Thomas D. Pigott*
Thomas D. Pigott
Attorney for Tyrone Armstrong

## JURY DEMAND

Tyrone Armstrong demands a trial by jury of all issues so triable within.

*Thomas D. Pigott*
Thomas D. Pigott

PRAECIPE TO THE CLERK:

In accordance with the Ohio Rules of Civil Procedure please mail summons and copy of the Complaint by certified U.S. mail, return receipt requested to the names and addresses of the parties as listed in the caption hereto.

Respectfully:

*Thomas D. Pigott*
Thomas D. Pigott

# EXHIBIT A

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC

 **POWERHOME.**

Metal Roof

Flat Roof

Ground Mount

## Solar Energy System Purchase & Installation Agreement

### PARTIES

This SOLAR ENERGY SYSTEM PURCHASE & INSTALLATION AGREEMENT (this "Agreement") must be signed and delivered by both Buyer and Contractor before any work may be performed.

Date: August 26, 2020 | 7:32 PM EDT

**Contractor (*Seller*)**
Power Home Solar LLC
919 North Main Street
Mooresville, NC 28115
1-800-765-2715
Email: customerservice@powerhome.com
www.PowerHome.com
FEIN ▢▢▢ TaxID ▢▢▢
NC License: NCGC 60946/EL 26074-U
SC License: SCGC G119763/EL M113628
MI License: Residential Builder #2102214053
VA License: VAGC 2705165346
OH License: 48524
PA HIC Registration No.: PA143619
TN Contractor License: 74358 (Unlimited; CE)

**Buyer (*Owner or Customer*):**
Tyrone Armstrong

Primary Phone #: (419) 578-8495
Secondary Phone #: (419) 578-8495
Email address: tyrone613@dex.net

Project Site: 2729 116th Street, Toledo, OH 43611          (the "Property")

### ENCLOSURES

1. Scope of Work
2. Price and Payment Schedule
3. Terms and Conditions
4. Signatures
5. Exhibit A: Commercial General Liability Insurance (CGL) and Other Insurance Notification
6. Exhibit B: Worker's Compensation Insurance Notification
7. Exhibit C: Mechanics' Lien Warning
8. Exhibit D: Notice of Cancellation
9. Exhibit E: Arbitration Agreement

DISCLAIMER: AS PART OF THE INFORMATION PROVIDED TO BUYER AT (OR BEFORE) THE TIME OF SALE, CONTRACTOR MAY PROVIDE *PROJECTIONS* OF ENERGY PRODUCTION FROM BUYER'S SOLAR ENERGY SYSTEM AND *ESTIMATES* OF BUYER'S PROJECTED ENERGY CONSUMPTION AND COST SAVINGS (COLLECTIVELY, THE "PROJECTIONS"). THE ENERGY PRODUCTION PROJECTIONS THAT ARE INCLUDED IN THE PROJECTIONS ARE BASED, IN PART, ON FACTORS THAT ARE INHERENTLY VARIABLE, LIKE WEATHER CONDITIONS. SIMILARLY, THE ESTIMATES OF BUYER'S PROJECTED ENERGY CONSUMPTION AND COST SAVINGS THAT ARE INCLUDED IN THE PROJECTIONS ARE ALSO BASED ON FACTORS WHICH ARE INHERENTLY VARIABLE AND BEYOND THE CONTROL OF CONTRACTOR, LIKE BUYER'S USAGE AND THE APPLICABLE MARKET COST OF ENERGY. EVEN SMALL VARIATIONS IN BUYER'S USAGE AND MINOR CHANGES IN ENERGY UNIT

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC

 **POWERHOME.**

COSTS FROM BUYER'S APPLICABLE ENERGY PROVIDER WILL IMPACT BUYER'S ENERGY COST SAVINGS. AS A RESULT, THOUGH CONTRACTOR MAKES AN EFFORT TO REASONABLY PROJECT BOTH ENERGY PRODUCTION AND AN _ESTIMATE_ OF ENERGY COST SAVINGS IN REGARD TO BUYER'S NEW SYSTEM, THE AMOUNTS PROVIDED FOR ENERGY PRODUCTION, USAGE AND SAVINGS ARE ILLUSTRATIVE AND HYPOTHETICAL ONLY AND ARE _NOT_, AND SHALL _NOT_ BE IN ANY WAY INTERPRETED TO BE, GUARANTEES, REPRESENTATIONS OR WARRANTIES OF ANY KIND, SHAPE OR FASHION. THE ESTIMATES, PROJECTIONS AND ASSUMPTIONS CONTAINED IN THE PROJECTIONS WERE COMPILED BASED ON INFORMATION SUPPLIED BY YOU AND OTHER THIRD PARTY SOURCES, AND HAVE NOT BEEN INDEPENDENTLY VERIFIED BY CONTRACTOR. NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, ORAL OR WRITTEN, IS MADE AS TO THE ACCURACY OR COMPLETENESS OF THE INFORMATION, ESTIMATES, PROJECTIONS OR ASSUMPTIONS CONTAINED THEREIN, AND NOTHING CONTAINED HEREIN OR THEREIN IS, OR SHALL BE RELIED UPON AS, A PROMISE, REPRESENTATION, WARRANTY OR GUARANTEE, WHETHER IN THE PAST OR THE FUTURE WITH RESPECT TO SUCH PROJECTIONS (WHETHER RELATING TO ENERGY PRODUCTION, USAGE OR SAVINGS). CONTRACTOR EXPRESSLY DISCLAIMS ANY SUCH PROMISE, REPRESENTATION, WARRANTY OR GUARANTEE (WHETHER ORAL, WRITTEN OR OTHERWISE). ULTIMATELY, THE ENERGY PRODUCTION, CONSUMPTION AND SAVINGS WITH RESPECT TO ANY GIVEN SYSTEM MAY VARY MATERIALLY FROM THOSE SET FORTH IN THE PROJECTIONS BASED, IN PART, WITHOUT LIMITATION, ON VARIOUS FACTORS THAT ARE INHERENTLY VARIABLE, LIKE WEATHER CONDITIONS, MAN-MADE OBSTRUCTIONS, NATURAL OBSTRUCTIONS (LIKE TREES AND OTHER SHADING ISSUES), AND OTHER FORCES OUTSIDE OF CONTRACTOR'S CONTROL. BUYER IS FURTHER ADVISED THAT TREES AND/OR OTHER OBJECTS CAUSING ANY SHADING ISSUES THAT ARE ADVERSE TO THE PROPER CONTRACTOR RECOMMENDED OPERATION OF BUYER'S SYSTEM MAY NEED TO BE REMOVED BY BUYER AT BUYER'S SOLE COST AND EXPENSE. CONTRACTOR SHALL NOT BE RESPONSIBLE FOR SERVICES RENDERED BY SUBCONTRACTORS UNRELATED OR UNAFFILIATED WITH CONTRACTOR.

FOR PENNSYLVANIA RESIDENTS ONLY: The official registration number of Power Home Solar LLC can be obtained from the Pennsylvania Office of Attorney General's Bureau of Consumer Protection by calling toll-free within Pennsylvania 1-888-520-6680. Registration does not imply endorsement.

FOR VIRGINIA RESIDENTS ONLY: Consumer is hereby notified of the existence of the Virginia Contractor Transaction Recovery Fund. The Virginia Contractor Transaction Recovery Fund provides relief to eligible consumers who have incurred losses through the improper and dishonest conduct of a licensed contractor. More information on the Fund or filing a claim can be obtained by visiting http://www.dpor.virginia.gov/Boards/Contractors_Recovery_Fund/ or by contacting the Board for claim information at the following address: Recovery Fund Office | DPOR, 9960 Mayland Drive, Suite 400, Richmond, VA 23233, (804) 367-1559, email: RecoveryFund@dpor.virginia.gov.

FOR ILLINOIS RESIDENTS ONLY: Buyer acknowledges that Contractor has provided to Buyer a copy of the "Home Repair: Know Your Consumer Rights" pamphlet prior to the execution of this Agreement (a copy of the pamphlet can be found at http://illinoisattorneygeneral.gov/consumers/homerep0505c.pdf).

FOR WISCONSIN RESIDENTS ONLY: NOTICE CONCERNING CONSTRUCTIONS DEFECT. Wisconsin law contains important requirements you must follow before you may file a lawsuit for defective construction against the contractor who constructed your dwelling or completed your remodeling project or against a window or door supplier or manufacturer. Section 895.07 (2)

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC

 **POWERHOME.**

and (3) of the Wisconsin statutes requires you to deliver to the contractor a written notice of any construction conditions you allege are defective before you file your lawsuit, and you must provide your contractor or window or door supplier the opportunity to make an offer to repair or remedy the alleged construction defects. You are not obligated to accept any offer made by the contractor or window or door supplier. All parties are bound by applicable warranty provisions. Buyer acknowledges that Contractor has provided to Buyer a copy of the "Wisconsin 'Right to Cure Law'" brochure (found at https://www.housingalliance.us/wp-content/uploads/RightToCure_SinglePage.pdf).

<u>FOR TENNESSEE RESIDENTS ONLY:</u> All home improvement contractors must be licensed by the Tennessee Home Improvement Commission. Any inquiries about a contractor should be transmitted to the Commissions office.

<u>FOR OHIO RESIDENTS ONLY:</u> EXCESS COSTS. IF AT ANY TIME A HOME CONSTRUCTION SERVICE REQUIRES EXTRA COSTS ABOVE THE COST SPECIFIED OR ESTIMATED IN THE CONTRACT THAT WERE REASONABLY UNFORESEEN, BUT NECESSARY, AND THE TOTAL OF ALL EXTRA COSTS TO DATE EXCEEDS FIVE THOUSAND DOLLARS OVER THE COURSE OF THE ENTIRE HOME CONSTRUCTION CONTRACT, YOU HAVE A RIGHT TO AN ESTIMATE OF THOSE EXCESS COSTS BEFORE THE HOME CONSTRUCTION SERVICE SUPPLIER BEGINS WORK RELATED TO THOSE COSTS.  INITIAL YOUR CHOICE OF THE TYPE OF ESTIMATE YOU REQUIRE:

_____ written estimate _____ oral estimate

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC

 **POWERHOME.**

## SCOPE OF WORK

In accordance with the terms of this Agreement, Contractor agrees to perform the following project on Buyer's behalf (the "Project") and the Project shall consist of Contractor providing all materials (equipment, hardware, and supplies), labor (design, administration, work and supervision), and all building permits / inspections required to complete and put into service the Solar Energy System as specified below (collectively, the "System").

**Approximate Start Date:** 08/29/2020 _____     **Approximate Completion Date:** 11/29/2020 _____

### Modules

| QTY | Manufacturer | Model | Mounting Structure | Inverter Size | | |
|-----|-------------|-------|--------------------|--------------|---|---|
| 47 | silfab | 330w | roof | Generac | | |
| | | | | | | |

Size of the System:  15.04 kW

| Cust 12 mth Est | Yearly Solar | |
|-----------------|--------------|---|
| 2,217 | 14,542 |  DS |

**Proposed _Estimated_ System Savings Breakdown:**

80  % Solar & EEP Production

20  % On Demand Power W/ Utility

\* The above are _estimates_ of power production vs power consumption and are based on the previous 12 months utility usage provided by Buyer. The above _estimates_ will vary according to, among other things, changes in consumption, weather conditions and/or climate changes. Contractor _does not_ guarantee these percentages.

### Additional Work

| na |
|----|
| |
| |
| |
| |
| |

### NOTES:

**ROOF NOTES:**
- ROOF TYPE:  shingle          - AGE OF ROOF:  10

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC



## PRICE AND PAYMENT SCHEDULE

In exchange for the materials and labor provided by Contractor in the faithful performance of this Agreement, Buyer agrees to pay Contractor:

    A. The Total Contract Price as set forth below.

    B. Any additional charges necessitated by any Change Order(s) (as defined in and discussed in Section 6 of the Terms and Conditions set forth below).

**TOTAL CONTRACT PRICE\*** (*materials, labor and tax*): $ 72,440.00
Less Projected Incentives (*to be collected by Contractor*): $ 0

**Net Contract Price:** $    72,440.00

    A. The pricing in this Agreement assumes that the Project will be started within 90 days of the date of this Agreement. In the case of Project delays beyond 90 days from the date of this Agreement, at the request of Buyer (*i.e.* for Buyer to obtain financing, or for Buyer to coordinate the performance of the Project with a re-roof or other construction projects), Contractor reserves the right to adjust the Total Contract Price to reflect the actual cost of materials at the time of commencement of such delayed construction. Any such adjustments shall be in a Change Order executed and delivered by Contractor and Buyer.

    B. The Total Contract Price does not reflect Federal or State tax credits.

### PAYMENT SCHEDULE

**Payment of Total Contract Price** (*check one*):    **Buyer Financing\*** \_\_\_\_   **Cash Payment** _____

\* Buyer Financed Payment of Total Contract Price: The payment terms of Buyer financing the Total Contract Price of the System shall be determined by, and in accordance with, the specific lender associated with this Agreement that elects to finance Buyer's purchase and installation of the System.

**Cash Payment:** The following schedule will be used if Buyer is electing to pay in cash for the System:

    A. **Deposit** – \_\_\_\_0\_\_\_\_% of the Total Contract Price shall be paid by Buyer to Contractor upon the execution and delivery of this Agreement; and

    B. **Remaining Balance of Total Contract Price** – the remaining \_\_\_\_0\_\_\_\_% balance of the Total Contract Price shall be paid by Buyer to Contractor upon the Substantial Completion of Installation (as defined herein). For purposes hereof, "Substantial Completion of Installation" shall mean that all System equipment has been installed and all System electrical connections have been made in accordance with the terms of this Agreement and are ready for permit inspection by applicable governmental authorities.

| Payment Made | Amount Due | Date Due | Description |
|---|---|---|---|
| 100% Financed Thru Loan | Loanpal | | |
| | | | |

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC

 **POWERHOME.**

## TERMS AND CONDITIONS

1. **General Provisions**

   Upon verbal or written notice from Buyer to proceed, Contractor shall commence work on the Project and shall  continue diligently in its performance to completion. Contractor will perform all work in a professional and  workmanlike manner and in compliance with applicable building codes and other applicable laws.

   At Contractor's sole discretion, Contractor may employ or engage subcontractors including roofers or electricians to  perform specialized portions of the Project as required. To the extent required under applicable law, Contractor will provide Buyer with information, such as names, addresses and telephone numbers, of any subcontractors engaged or employed to perform any work on the Project.

   To the extent required by applicable law, all work on the Project shall be performed by individuals duly licensed and authorized by applicable law to  perform said work on the Project.

   Contractor shall comply with all local requirements for building permits, inspections and zoning, and shall be responsible for applying for and obtaining any building permits, licenses, interconnection applications or other regulatory  approvals required for the completion of the Project. Buyer warrants and represents to Contractor that Buyer is the sole legal owner of the Property, and that he/she/they have the authority to enter into this Agreement.

2. **Scheduling; Buyer Cooperation**

   Contractor will commence work on the Project ("Project Work") as soon as practical after the date on which this Agreement is executed. "Project Work" is defined as any work necessary to prepare for construction of the Project, including submitting any applicable documents to the utility or rebate authority for the Project, preparing documents necessary for a building permit for the Project, or ordering materials for the Project. Contractor will diligently pursue all aspects of preparation and construction of the Project until Substantial Completion of Installation is complete, and Buyer hereby agrees and acknowledges that the period of time for Substantial Completion of the Project shall vary with the complexity, scope, and size of the Project.

   Contractor is not responsible for any delays that are outside of the control of the Contractor, including, without limitation, delays caused by government agencies in approving rebates, building jurisdictions in approving building permits, or by utility companies in approving interconnection applications.

   **Buyer acknowledges and agrees that Buyer shall timely cooperate with Contractor in connection with the Project Work and the performance of Contractor's obligations under this Agreement (whether before, during or after the installation of the System), including, but not limited to, providing any documents or other information reasonably requested by Contractor in Buyer's possession, custody or control relating to the System and/or the Project and any claims, deficiencies or defects Buyer alleges with respect thereto (such as, by way of example only, and without limitation, up to 12 months of Buyer's utility bills in order for Contractor to adequately analyze post-installation consumption, savings and Buyer-alleged claims, deficiencies or defects in the System).**

3. **Payment Terms**

   All payments are due and payable immediately upon presentation of the invoice relevant to the associated Project milestone as detailed in the Payment Schedule. A failure by Buyer to make payment to Contractor for a period in excess of ten (10) days from the due date of the payment shall be deemed a material breach of this Agreement by Buyer. Buyer shall be given a ten (10) day period after written notice of any such payment default to cure any such payment default. Buyer authorizes Contractor to apply (and to the extent applicable, charge) any amount(s) due and owing under this Agreement to the applicable payment method designated and/or provided by Buyer (i.e., credit card, debit card, check, or other form of payment delivered by Buyer and accepted by Contractor).

   If Buyer fails to cure the payment default within ten (10) days of written notice, Buyer will pay to Contractor interest on all amounts due in the amount of the *lesser* of (i) eighteen percent (18%) per annum, or (ii) the maximum rate allowed by applicable law, plus, to the extent not otherwise prohibited by applicable law, reasonable attorneys' fees and/or collection charges incurred by Contractor in connection with the collection of such non-payment by Buyer. If Buyer fails to make any payment within thirty (30) calendar days of notice of default, the full Total Contract Price will become immediately due and payable without further demand from Contractor, and no further work on the Project will be undertaken by Contractor unless and until any such unpaid amount is paid in full. Acceptance of a payment after a Buyer default shall not be deemed a waiver by Contractor of any action or right it may have by reason of such default. In the event of default, Contractor may also pursue remedies available under Sections 4 and 9 below. Title of the System does not transfer to Buyer until payment in full of the Total Contract Price for the System is paid to, and received by, Contractor.

   Buyer shall be responsible for paying any applicable sales, use, excise, value added, withholding or similar taxes, duties or assessments imposed in connection with this Agreement for the products (including without limitation, all of the equipment and components of the System) and services provided hereunder by any federal, state, local or foreign government authority, exclusive of any taxes based upon Contractor's income or payroll.

v. 08.24.20

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC



**4.  Security Interest**

Buyer grants to Contractor a continuing security interest in the entire System and in all of the equipment and components of the System installed at the Project including, but not limited to, all equipment identified herein and any additional items installed. In the event Buyer defaults on the payment of any amounts associated with this installation or repayment of any amounts advanced by Contractor for the benefit of Buyer and such default is not cured in full within ten (10) days of written notice of default from Contractor, Contractor may, in addition to its remedies set forth in Section 3 above and to the extent permitted by applicable law, remove the entire System, including without limitation, any and all equipment and components covered by the security interest granted by Buyer to Contractor under this Agreement. Contractor shall be permitted to file, and is hereby authorized to file without further notice, a Form UCC-1 financing statement in the real estate records of the jurisdiction in which the Project is located.   Upon payment in full of the Total Contract Price, the security interest provided for in this Section shall terminate and Contractor shall take all steps necessary to terminate any such Form UCC-1 financing statement filed by Contractor.

**5.  Rebate Approval**

Buyer assumes sole responsibility for all rebates, tax credits, power rate negotiations and all other matters outside the installation of the System. Buyer may authorize Contractor (either verbally or in writing) to proceed with installation prior to rebate approval, but Contractor does not guarantee Buyer's eligibility for, or the actual dollar amount of, any such rebate. In the event that (a) Buyer requests that Contractor commence work on the Project prior to receiving actual notice of rebate approval from the applicable Incentive Authority to which Buyer has applied for a rebate, and (b) Contractor actually commences work on the Project, and (c) the applicable Incentive Authority subsequently determines that Buyer may not be eligible for a rebate or that the rebate is less than the initial estimated rebate amount, then Buyer agrees to pay (at a minimum) all out-of-pocket costs for both labor and materials incurred by Contractor up to the date of such notice. Any rebates for the installation of the System are estimates only and may change without notice. Moreover, Buyer hereby acknowledges and agrees that there is no guarantee that Buyer will receive any specific rebate or credit figure because taxing entities occasionally adjust the rebate or credit amounts. If an adjustment is greater than $50, Buyer will either be charged or refunded the appropriate amount. Additionally, rebate amounts may be periodically adjusted down as incentive programs reach preset milestones. Therefore, any amount Buyer may receive is based upon the rebate level at the time that Buyer's request is accepted, not at the time that this Agreement is signed.

**6.  Change Orders**

The material, quantities, and amounts listed in this Agreement are Contractor's good faith estimates of the Project cost based on all factors known to Contractor at the time of such estimate. Changes to the original Project scope of work may become necessary after work on the Project has been commenced (and each such change shall be referred to as a "Change Order" and, collectively, the "Change Orders"). For purposes of this Agreement, a Change Order may occur for one of three reasons:

  a.  Unavailability of quoted materials;
  b.  Contractor discovers something previously unknown that must be corrected to properly complete the Project; and/or
  c.  Buyer request changes to the Project after construction of the Project has already proceeded.

Contractor has the right to substitute similar, functionally equivalent materials should the originally quoted materials not be available.

Contractor may initiate a Change Order when circumstances exist or are discovered that require additional work to be done to complete the Project properly. Such circumstances may include, without limitation, the need to modify existing wiring, reinforce rafters or support joists, repair existing roofing, or any such task that may be required to successfully build the Project and assure that it conforms to local building codes. In certain circumstances, the permitting jurisdiction or other organizations (such as an HOA) may require additional engineering work beyond the scope of a typical installation be performed. Examples of this include, without limitation, requirements for a structural analysis of the building that will be holding the Systems' roof-mounted solar array; or soil analysis, environmental impact reports or archeological studies for ground mounted solar arrays. If Contractor determines that these costs will exceed $1,000 (or such lesser amount that may be required by applicable law), Contractor will stop permitting work to discuss the additional costs with Buyer. If Buyer agrees to the additional costs they will be incorporated into this Agreement via a signed Change Order. If Buyer does not agree, the Project will be terminated.

Buyer may initiate a Change Order when requesting changes to the Project following the date hereof (*but prior to completion of the Project*) that require additional work to be done. Such circumstance may include requests to move the System's solar arrays from one roof area to another area of the same roof at the Property, requests to install equipment different than as illustrated on the approved building plans, requests to remove or relocate existing fixtures such as antennas, or any additional work or task outside the original Project scope of work.

Notwithstanding the foregoing, or anything contained herein to the contrary, Contractor shall not be obligated or required to relocate, remove and/or re-install the System (or any part thereof) to another location or property, except as otherwise may be expressly agreed in a written contract signed by Contractor and Buyer.  Contractor does not make (and hereby disclaims any) representations or warranties (oral or written) as to the costs, suitability, ability, interconnection, approvals (including homeowners associations), and energy production, usage or savings relating to, or in connection with, any relocation, removal and/or re-installation of the Buyer's existing System from one location or property to another location or property.  Each location or property is different, and as such, results, requirements, approvals, costs, savings, etc. will vary (often substantially) depending on location or property.

Should Change Orders become necessary for the proper completion of the Project, regardless of whether they are initiated by Contractor

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC

 **POWERHOME.**

or Buyer, any materials, quantities, and amounts listed in the Project scope of work are subject to revision, and the Total Contract Price may increase or decrease accordingly. The Change Order will describe the scope of the extra work or change, the cost to be added or subtracted from the Total Contract Price, and the effect the Change Order will have on the schedule of progress payments and estimated date of Substantial Completion of Installation.

Change Orders become part of this Agreement once the Charge Order is prepared in writing and signed and delivered by both Contractor and Buyer prior to the commencement of any work covered by the Change Order. Buyer may not require Contractor to perform extra work without written authorization. A Change Order is not enforceable against Buyer unless the Change Order complies with this provision. However, Contractor's failure to execute and deliver a Change Order shall not preclude Contractor's recovery based on legal or equitable remedies designed to prevent unjust enrichment.

Notwithstanding the requirement under this Agreement that all Change Orders be in writing, if there are any contemplated changes to the Project requested by Buyer or required by Contractor for the successful installation of the Project and which contemplated changes Contractor discusses with Buyer and to which contemplated changes Buyer gives Contractor its verbal assent, such verbal assent by Buyer to such contemplated changes will have the same legality and full force and effect as a written Change Order once Contractor has commenced performance of any construction in any of the Change Orders that were so discussed verbally between Contractor and Buyer. Contractor and Buyer shall negotiate any Change Order and associated additional costs in good faith. Buyer shall be bound by any changes or alterations requested by Buyer to this Agreement or to plans for the Project, whether given verbally or in writing. Contractor shall be entitled to reasonable overhead and profit on any Change Order requested or required. Any required Change Orders, including extra labor and/or additional materials, may be incorporated herein without invalidating this Agreement. Buyer will pay to Contractor any net increase to the Total Contract Price within ten (10) days of request or billing by Contractor for any such Change Order.

If Contractor and Buyer cannot agree on the compensation or time extensions for any such Change Order, Contractor may at its discretion nevertheless proceed with such extra work and materials as may be required to successfully complete the Project. In the event of such disagreement, Contractor and Buyer agree to submit the question or entitlement or amount of compensation and/or extensions of time, to arbitration pursuant to this Agreement and Exhibit E attached hereto.

7. **Warranty**

Contractor warrants to Buyer that all of Contractor's work under this Agreement will be:

   a. performed in accordance with the requirements of this Agreement and any required governmental inspections, tests, or approvals; and

   b. be free from material faults and defects in workmanship ("Defects") for a period of five (5) years after the date of completion of the Project.

Contractor warrants that all materials used for the Project will be new, unless otherwise specified, and of good quality. All materials will be installed, connected, and applied in accordance with the instructions and specifications of the applicable manufacturer or supplier. Buyer should note that manufacturers of various materials separately warrant their own products, including solar photovoltaic modules, battery backups, inverters, and solar mounting racks, and Contractor is not responsible for or obligated under any such manufacturer warranties. For additional information, restrictions and exclusions regarding (1) the SolarEdge Manufacturer Inverter Warranty (including the optional 25 year extended warranty), please visit https://www.solaredge.com/sites/default/files/solaredge-warranty-april-2019.pdf and https://www.solaredge.com/sites/default/files/ONLINE_HomeownerExtendedWarranty.pdf; and (2) the Generac Manufacturer Limited Warranty, please visit https://www.generac.com/service-support/product-support-lookup/product-support-details?productid=aa180473-602e-4494-b195-d35dd49feee5&isBaseModel=false and https://soa.generac.com/manuals/X7602-08749/A000416920. Contractor will assign any manufacturer warranties upon completion of the Project and payment in full by Buyer. No other warranties are provided by Contractor except as specifically set forth in this Agreement.

The warranty provided by Contractor to Buyer above does not cover (and expressly excludes) Defects related to or caused by any of the following (as determined in Contractor's reasonable discretion): (a) any modifications to or abuse of the Project or the System by Buyer or persons other than Contractor; (b) trees, new buildings, or other array obstructions which are installed, grow beyond the point of the original array install, or otherwise change after installation of the System; (c) improper use, installation, wiring, handling, removal, storage, maintenance, or cleaning of the System; (d) damage from abuse, alteration, or vandalism, or due to plants, insects, or animals; (e) damage from external stress, impact, foreign objects, or falling rocks or debris; (f) damage or corrosion caused by roofing materials, chemicals, or substrates, including those used for corrosion resistance, thermal expansion and contraction, and moisture barriers and sealing; (g) power or voltage surges or damage caused by the electrical grid for shore power connected products; (h) natural disasters, earthquakes, fires, typhoons, tornadoes, hurricanes, volcanic activity, volcanic clouds, dust storms, dust clouds, floods, tsunamis, lightning, or other acts of God, or other events that are beyond the reasonable control of Contractor; (i) acts of terrorism, criminal acts, riots, wars, civil unrest, nuclear radiation, or manmade disasters; and/or (j) damages attributable to normal weathering or defects or damages caused by vapors or chemical pollutants or air pollution, building settlement or structural failure of roof, walls, foundations or any part of the attached structure, or any other causes beyond Contractor's control. Except for Defects covered by the warranty set forth herein, all maintenance obligations for the System upon acceptance of the System by Buyer shall be the responsibility of Buyer.

Buyer agrees to give prompt notice of any and all Defects to Contractor in writing, and in no event shall Buyer provide such written notice

v. 08.24.20

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC



to Contractor later than three (3) business days after Buyer observes or otherwise becomes aware of any such Defect. Within twenty (20) days from receipt of such notice of Defect by Contractor, Contractor shall have the right to inspect the System and the Project and review any claims by Buyer for warranty work. Warranty work, if necessary, will generally be completed within sixty (60) days of written request by Buyer and subsequent agreement by Contractor that such work is required.

EXCEPT AS PROVIDED IN THIS SECTION 7, CONTRACTOR MAKES NO OTHER REPRESENTATION OR WARRANTY OF ANY KIND, WHETHER EXPRESS OR IMPLIED, FROM A COURSE OF PERFORMANCE OR DEALING OR TRADE USAGE, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE LIMITED WARRANTIES SET FORTH HEREIN ARE MADE FOR THE BENEFIT OF BUYER ONLY AND NOT FOR THE BENEFIT OF ANY THIRD PARTY.

8.  **Limitation of Liability**
    If Contractor shall become liable to Buyer for any matter relating to or arising out of this Agreement or their relationship in connection with Contractor's performance under this Agreement, whether based upon a claim in contract, equity, negligence or otherwise, the amount of damages recoverable against Contactor for any and all events, acts or omissions shall not exceed in the aggregate the actual fees paid to Contactor under this Agreement. Except to the extent otherwise prohibited by applicable law, Contactor shall not be responsible or liable with respect to any subject matter of this Agreement (including with respect to the Project or the System) or the terms and conditions related thereto under any negligence, contract, strict liability or other theory for any special, indirect, incidental, exemplary, punitive or consequential damages, even if Contractor has been advised of the possibility of such damages. Contractor shall not be responsible for any matter beyond its reasonable control or any force majeure event (as described in Section 11 hereof). Buyer's exclusive remedy under this Agreement shall be (at Contractor's discretion), (a) the correction of any material Defects in the Project, (b) the full refund of Buyer's fees paid hereunder, or (c) any other remedy required by applicable law.

9.  **Termination**
    Either party may terminate this Agreement for breach of a material term of this Agreement (including non-payment of fees), upon giving the other party written notice identifying the alleged breach, provided the breaching party does not cure such breach within thirty (30) days of receipt of such notice. Termination of this Agreement shall not relieve Buyer of its accrued payment obligations as of the date of termination. In addition, should the Project be stopped by any public authority for a period of thirty (30) days or more, through no fault of Contractor, or should the Project be stopped through act of neglect of Buyer for a period of thirty (30) days or more, or should Buyer fail to pay Contractor upon ten (10) days after written notice of default, then Contractor may, upon ten (10) days written notice to Buyer, stop work or terminate this Agreement, and recover from Buyer reimbursement for all costs and expenses incurred by Contractor prior to the date of work stoppage.

10. **Assignment**
    This Agreement cannot be assigned by Buyer without the prior written consent of Contractor. Contractor may assign this Agreement, in whole or in part, with or without notice to Buyer (except to the extent required under applicable law) to a successor of Contractor or purchaser of all of Contractor's equity securities or all or substantially all of its assets.

11. **Force Majeure**
    Contractor shall not be liable for any delays in completion of the Project caused by: (i) governmental restrictions on manufacture, sale, distribution, and/or use of necessary materials; (ii) Contractor's inability to obtain necessary materials or perform the work contemplated herein because of strikes, lockouts, fires, floods, earthquakes, epidemics, pandemics or other acts of God, military operations and requirements, national emergencies, etc.; or (iii) any other acts or omissions beyond Contractor's reasonable control, provided, however, delays caused by the foregoing events do not constitute abandonment and are not included in calculating timeframes for payment or performance under this Agreement.

12. **Three Day Right to Cancel**
    Buyer has the right to cancel this Agreement within three (3) business days of the full execution of this Agreement. Buyer may cancel by emailing, mailing, faxing, or delivering a written Notice of Cancellation in substantially the form attached as Exhibit D hereto, or a reasonable facsimile thereof, to Contractor at Contractor's place of business by midnight of the third business day after the date the last signature necessary has been affixed to this Agreement, which notice shall include Buyer's name, Buyer's address, and the date Buyer received the signed copy of this Agreement.

    If Buyer cancels, Contractor shall return to Buyer any payment paid to Contractor by Buyer paid within 10 business days of receiving the Notice of Cancellation. For Buyer's part, Buyer must make available to Contractor at Buyer's residence, in substantially as good condition as Buyer received it, any goods delivered to Buyer under this Agreement, or Buyer may, if Buyer's wishes, comply with Contractor's instruction on how to return the goods at Contractor's expense and risk.

    If Buyer does make the goods available to Contractor and Contractor does not pick them up within 20 days of the date of Buyer's Notice of Cancellation, Buyer may keep them without any further obligation. If Buyer fails to make the goods available to Contractor, or if Buyer agrees to return the goods to Contractor and fails to do so, then Buyer remains liable for performance of all obligations under this Agreement.

    If Buyer cancels this Agreement following the three (3) day right to cancel period, then, except as otherwise prohibited by applicable law,

v. 08.24.20

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC

 **POWERHOME.**

Buyer will be liable for all costs incurred by Contractor up to and including the date of cancellation, including any building permit fees advanced by Contractor, any paperwork processing costs for applying for rebates or other approvals, and any costs for ordered but unused materials. Any initial payment paid by Buyer under this Agreement towards the Total Contract Price will be applied to any such out-of-pocket costs of Contractor, whether or not the Project has been started.

**BUYER'S INITIALS:**

**13.** **Arbitration of Disputes**
BY SIGNING THIS AGREEMENT, CONTRACTOR AND BUYER AGREE TO RESOLVE ANY AND ALL DISPUTES THROUGH BINDING BILATERAL ARBITRATION, AND EACH PARTY WAIVES ANY RIGHT TO PARTICIPATE IN CLASS ACTIONS, ALL AS DETAILED IN, AND SUBJECT TO, THE "ARBITRATION AGREEMENT" ATTACHED HERETO AS EXHIBIT E, WHICH SHALL BE SIGNED BY THE PARTIES AS OF THE DATE HEREOF.

**14.** **Governing Laws**
The interpretation and construction of this Agreement, and all matters related to this Agreement, shall be governed by the laws of the State where the Project and Property are located (without giving effect to any conflict of law provisions thereof).

**15.** **Severability**
If any provision of this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect the validity or enforceability of the remainder of this Agreement in that jurisdiction or the validity or enforceability of any provision of this Agreement in any other jurisdiction.

**16.** **Entire Agreement; Counterparts**
This Agreement and any associated Change Orders constitute the entire agreement between the parties with respect to the subject matter herein. Any changes or alterations in this Agreement shall be valid and effective only if agreed upon in writing executed and delivered between the parties. The parties stipulate that neither of them has made any representations except as are specifically set forth in this Agreement and each of the parties acknowledge that they have relied on their own judgment in entering into this Agreement. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Counterparts may be delivered via facsimile, electronic mail (including .pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, Uniform Electronic Transactions Act or other applicable law) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC

 **POWERHOME.**

## SIGNATURES

This Solar Energy System Purchase & Installation Agreement is made and entered into as of the <u>August 26, 2020 | 8:07</u> day of _____, 20___.

THIS AGREEMENT IS ENTERED INTO AS OF THE DAY AND YEAR WRITTEN ABOVE AND IS EXECUTED IN AT LEAST TWO ORIGINAL COPIES, ONE OF WHICH IS TO BE DELIVERED TO CONTRACTOR AND ONE OF WHICH IS TO BE DELIVERED TO BUYER.

BUYER MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLTATION FORM FOR AN EXPLANATION OF THIS RIGHT.

NOTICE TO OWNER: DO NOT SIGN THIS CONTRACT IF BLANK. YOU ARE ENTITLED TO A COPY OF THE CONTRACT AT THE TIME YOU SIGN.

**Buyer(s)**

Signature: _Tyrone Armstrong_
AFCEF4BAF2424D9...

Printed Name: Tyrone Armstrong

Date: August 26, 2020 | 8:07 PM EDT

Signature: _____

Printed Name: _____

Date: _____

**Contractor (Power Home Solar LLC)\***

Signature: _Ahmad Nafisa_
8ADFA3F90EF...

Printed Name: Ahmad Nafisa

Date: August 26, 2020 | 7:32 PM EDT

\* Power Home Solar LLC maintains State licenses/registrations in the following states (please see the first page for license/registration numbers): NC, SC, MI, VA, OH, PA, and TN.

**AGENCY AGREEMENT:**

We/I duly authorize POWER HOME SOLAR LLC (and its subsidiaries/divisions and their respective employees and agents) to act on our/my behalf as an agent to make submissions, reports, applications and verifications as required by and to regulating authorities in relation to the installation, commissioning, and interconnection of the equipment described in this Agreement.

Signature: _Tyrone Armstrong_
AFCEF4BAF2424D9...

Printed Name: Tyrone Armstrong

Date: August 26, 2020 | 8:07 PM EDT

Signature: _____

Printed Name: _____

Date: _____

v. 08.24.20

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC



**Exhibit A: Commercial General Liability Insurance (CGLI) and Other Insurance Notification**
Contractor maintains liability insurance covering personal injury in the amount of $1,000,000, and insurance covering property damage caused by Contractor's work in the amount of $1,000,000. Contractor also maintains other insurance and a copy of a Certificate of Liability Insurance is available upon request.

**Exhibit B: Workers Compensation Insurance**
Contractor carries worker's compensation insurance for all employees.

**Exhibit C: Mechanics Lien Warning**
Anyone who helps improve your property, but who is not paid, may, depending on the laws of the jurisdiction the property is located, record what is called a mechanic's lien on your property. A mechanics' lien is a claim, like a mortgage or home equity loan, made against your property and recorded in the county where the property is located.

Even if you pay your contractor in full, unpaid subcontractors, suppliers, and laborers who helped to improve you property may record mechanics' liens and sue you in court to foreclose the lien. If a court finds the lien is valid, you could be forced to pay twice or have a court officer sell your home to pay the lien. Liens can also affect your credit.

To protect yourself, have the contractor provide you with documentation showing that your equipment and labor on your job have been paid in full.

<u>For Michigan Residents only</u>: A residential builder or a residential maintenance and alteration contractor is required to be licensed under article 24 of the occupational code, 1980 PA 299, MCL 339.2401 to 339.2412. An electrician is required to be licensed under article 7 of the skilled trades regulation act, MCL 339.5701 to 339.5739. A plumbing contractor is required to be licensed under article 11 of the skilled trades regulation act, MCL 339.6101 to 339.6133. A mechanical contractor is required to be licensed under article 8 of the skilled trades regulation act, MCL 339.5801 to 339.5819. Contractor is licensed in the State of Michigan and Contractor's license number is Residential Builder #2102214053.

<u>For Missouri Residents only</u>: FAILURE OF THIS CONTRACTOR TO PAY THOSE PERSONS SUPPLYING MATERIAL OR SERVICES TO COMPLETE THIS CONTRACT CAN RESULT IN THE FILING OF A MECHANIC'S LIEN ON THE PROPERTY WHICH IS THE SUBJECT OF THIS CONTRACT PURSUANT TO CHAPTER 429, RSMO. TO AVOID THIS RESULT YOU MAY ASK THIS CONTRACTOR FOR "LIEN WAIVERS" FROM ALL PERSONS SUPPLYING MATERIAL OR SERVICES FOR THE WORK DESCRIBED IN THIS CONTRACT. FAILURE TO SECURE LIEN WAIVERS MAY RESULT IN YOUR PAYING FOR LABOR AND MATERIAL TWICE.

<u>For Wisconsin Residents only</u>: As required by the Wisconsin construction lien law, claimant hereby notifies owner that persons or companies performing, furnishing, or procuring labor , services, materials, plans, or specifications for the construction on owner's land may have lien rights on owner's land and buildings if not paid. Those entitled to lien rights, in addition to the undersigned claimant, are those who contract directly with the owner or those who give the owner notice within 60 days after they first perform, furnish, or procure labor, services, materials, plans or specifications for the construction. Accordingly, owner probably will receive notices from those who perform, furnish, or procure labor, services, materials, plans, or specifications for the construction, and should give a copy of each notice received to the mortgage lender, if any. Claimant agrees to cooperate with the owner and the owner's lender, if any, to see that all potential lien claimants are duly paid.

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC

 **POWERHOME.**

**Exhibit D: Notice of Cancellation**

**Date of Transaction:**

_____

Buyer and Contractor are parties to that certain Solar Energy System Purchase & Installation Agreement dated August 26, 2020 20___ (the "Agreement"). 7:32 PM EDT

Buyer may cancel this transaction, without any penalty or obligation, within three business days from the above date (*i.e.*, the date which this Agreement is signed).

If Buyer cancels, any property traded in, any payments made by Buyer under the Agreement, and any negotiable instrument executed by Buyer will be returned within 10 business days following receipt by Contractor of Buyer's cancellation notice, and any security interest arising out of the transaction will be canceled.

If Buyer cancels, Buyer must make available to Contractor at Buyer's residence, in substantially as good condition as when received, any goods delivered to Buyer under this Agreement, or you may, if you wish, comply with the instructions of Contractor regarding the return shipment of the goods at Contractor's expense and risk.

If Buyer does make the goods available to Contractor and Contractor does not pick them up within 20 days of the date of your notice of cancellation, Buyer may retain or dispose of the goods without any further obligation.

If Buyer fail to make the goods available to Contractor, or if Buyer agrees to return the goods to Contractor and, thereafter fails to do so, then Buyer remains liable for performance of all obligations under the Agreement.

To cancel this Agreement, e-mail, mail or deliver a signed and dated copy of this Notice of Cancellation to:

**Power Home Solar LLC**
**919 N Main St.**
**Mooresville, NC 28115**
**customerservice@powerhome.com**

By not later than midnight of: (Date)   08/29/2020   _____

*I hereby cancel the Agreement to purchase the System from Power Home Solar LLC under and in accordance with the terms of the Agreement.*

Signature: _____

Printed Name: _____

Date: _____

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC

 **POWERHOME.**

**Notice of Cancellation (*Duplicate*)**

**Date of Transaction:**

_____

Buyer and Contractor are parties to that certain Solar Energy System Purchase & Installation Agreement dated _____, 20___ (the "Agreement").

Buyer may cancel this transaction, without any penalty or obligation, within three business days from the above date (*i.e.*, the date which this Agreement is signed).

If Buyer cancels, any property traded in, any payments made by Buyer under the Agreement, and any negotiable instrument executed by Buyer will be returned within 10 business days following receipt by Contractor of Buyer's cancellation notice, and any security interest arising out of the transaction will be canceled.

If Buyer cancels, Buyer must make available to Contractor at Buyer's residence, in substantially as good condition as when received, any goods delivered to Buyer under this Agreement, or you may, if you wish, comply with the instructions of Contractor regarding the return shipment of the goods at Contractor's expense and risk.

If Buyer does make the goods available to Contractor and Contractor does not pick them up within 20 days of the date of your notice of cancellation, Buyer may retain or dispose of the goods without any further obligation.

If Buyer fail to make the goods available to Contractor, or if Buyer agrees to return the goods to Contractor and, thereafter fails to do so, then Buyer remains liable for performance of all obligations under the Agreement.

To cancel this Agreement, e-mail, mail or deliver a signed and dated copy of this Notice of Cancellation to:

**Power Home Solar LLC**
**919 N Main St.**
**Mooresville, NC 28115**
**customerservice@powerhome.com**

**By not later than midnight of: (Date)** _____

*I hereby cancel the Agreement to purchase the System from Power Home Solar LLC under and in accordance with the terms of the Agreement.*

Signature: _____

Printed Name: _____

Date: _____

v. 08.24.20

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC

 **POWERHOME.**

**Exhibit E: Arbitration Agreement**

THE UNDERSIGNED PARTIES, AS CONTRACTOR AND BUYER UNDER THE ATTACHED SOLAR ENERGY SYSTEM PURCHASE & INSTALLATION AGREEMENT (THE "AGREEMENT"), ACKNOWLEDGE, COVENANT AND AGREE THAT ANY CLAIM, DISPUTE OR OTHER MATTER IN QUESTION ARISING OUT OF OR RELATED TO THE AGREEMENT, THE PROJECT, AND/OR THE SYSTEM (INCLUDING ANY ALLEGED DEFECT THEREOF) SHALL BE SUBJECT TO BINDING BILATERAL ARBITRATION IN ACCORDANCE WITH THE CONSTRUCTION INDUSTRY ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("AAA") IN EFFECT. EVERY ARBITRATION PURSUANT TO THIS PROVISION SHALL TAKE PLACE IN THE COUNTY WHERE THE PROJECT AND PROPERTY IS LOCATED AND BE FACILITATED BY A SINGLE ARBITRATOR MUTUALLY SELECTED BY THE PARTIES TO THE ARBITRATION; PROVIDED, HOWEVER, IF THE PARTIES ARE UNABLE OR UNWILLING TO MUTUALLY AGREE UPON AN ARBITRATOR WITHIN FIFTEEN (15) BUSINESS DAYS, THEN THE ARBITRATOR SHALL BE APPOINTED BY THE AAA. THE EXPENSES OF ARBITRATION SHALL BE BORNE EQUALLY BY THE PARTIES; PROVIDED, HOWEVER, EACH PARTY SHALL PAY FOR AND BEAR THE COST OF ITS OWN EXPERTS, EVIDENCE AND COUNSEL'S FEES. THE PARTIES AGREE THAT EACH SHALL ONLY BRING CLAIMS AGAINST THE OTHER IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE ACTION. UNLESS BOTH PARTIES AGREE IN WRITING, NO ARBITRATOR OR JUDGE MAY CONSOLIDATE MORE THAN ONE PERSON'S CLAIM OR OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. THE AWARD RENDERED BY THE ARBITRATOR SHALL BE FINAL AND BINDING ON THE PARTIES, AND JUDGMENT MAY BE ENTERED UPON IT IN ACCORDANCE WITH APPLICABLE LAW IN ANY COURT HAVING JURISDICTION. THE ARBITRATION, INCLUDING THE FACTS OF THE DISPUTE, RELATED DOCUMENTS AND DECISION, SHALL BE CONFIDENTIAL, EXCEPT AS OTHERWISE MAY BE NECESSARY IN ORDER TO ENFORCE ANY AWARD RENDERED BY THE ARBITRATOR. NOTWITHSTANDING THE FOREGOING, IF ANY CLAIM, DISPUTE OR MATTER IN QUESTION RELATES TO OR IS THE SUBJECT OF A MECHANIC'S LIEN, CONTRACTOR MAY PROCEED IN ACCORDANCE WITH APPLICABLE LAW TO COMPLY WITH LIEN NOTICE OR FILING REQUIREMENTS.

**Buyer(s)**

Signature: _Tyrone Armstrong_

Printed Name: Tyrone Armstrong

Date: August 26, 2020 | 8:07 PM EDT

**Contractor (Power Home Solar LLC)**

Signature: _Ahmad Nafisa_

Printed Name: Ahmad Nafisa

Date: August 26, 2020 | 7:32 PM EDT

Signature: _____

Printed Name: _____

Date: _____

v. 08.24.20

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC

 **POWERHOME.**

## <u>Memo of Understanding – Home Owner Association</u>

I acknowledge that I have requested, signed a contract for, and directed Power Home Solar LLC (or a division thereof) to do work on my home that may be scrutinized by my Home Owner Association. I accept full responsibility for the placement of items that have been contracted to be installed by this company on the property in question.

In the event that the location of the work being done is cause for removal, or the stopping or delaying of the completion of the work, Power Home Solar LLC or any of its affiliates are not responsible for any cost, damages or repercussion of the work that was contracted to be completed. Power Home Solar will receive the full payment as stated in the in the contract signed as well as any change orders or additions added to the project cost regardless of any bearing the foregoing may have during or after the installation is complete. All terms, conditions and covenants of the original contract are understood and are to remain valid.

     YES - I have an HOA

  X  NO - I do not have an HOA

Date  August 26, 2020 | 8:07 PM EDT

Customer Name (print)  Tyrone Armstrong

Customer Signature  *Tyrone Armstrong*
                AFCEF4BAF2424D9...

Customer Address: _
HOA Name: _
HOA Phone #: _
HOA Email: _
HOA Fax #: _
HOA Contact Person: _

800-POWER-90        www.powerhome.com

v. 08.24.20

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC

 **POWERHOME.**

## <u>Understanding Solar Rebates Offered By My Utility Company</u>

I acknowledge that I am solely responsible for collecting any Solar rebates offered by my utility company. Power Home Solar LLC is not offering this rebate, so I will have to work with my utility company to apply and collect the rebate.

DocuSigned by:

*Ahmad Nafisa*

—8146CE632FB6437...

Sales Rep Signature

August 26, 2020 | 7:32 PM EDT

Date Signed:

DocuSigned by:

*Tyrone Armstrong*

—AFCEF4BAF2424D9...

Customer Signature

August 26, 2020 | 8:07 PM EDT

Date Signed:

v. 08.24.20

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC

 **POWERHOME.**

## <u>Memo of Understanding – Solar Tax Credits</u>

I acknowledge that I have requested, signed a contract for, and directed Power Home Solar LLC (or a division thereof) to install a solar energy system (the "System") on my home that may qualify for Federal and/or State tax credits. I understand that although Power Home Solar LLC may completely install and activate the System, they are not responsible for nor do they guarantee my qualification for any tax credit. I further acknowledge that my basis for tax credit eligibility should be something that is discussed with a tax professional and that Power Home Solar LLC cannot give advice on my personal tax liability nor my eligibility for tax refunds. Power Home Solar LLC has discussed with me the availability of renewable energy related tax credits and the basis for which the solar project in question would qualify for tax credits. Power Home Solar LLC will receive the full payment as stated in the in the Agreement signed as well as any change orders or additions added to the project cost of the System regardless of any bearing the foregoing may have during or after the installation is complete. All terms, conditions and covenants of the original Agreement are understood and are to remain valid.

Date ___August 26, 2020 | 8:07 PM EDT___

Customer Name (print) ___Tyrone Armstrong___

Customer Signature ___Tyrone Armstrong___
AFCEF4BAF2424D9...

800-POWER-90          www.powerhome.com

v. 08.24.20

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC

 **POWERHOME.**

### Energy Efficient Package Ticket

Date: August 26, 2020 | 7:32 PM EDT

Crew Completing: PHS

Customer Name: Tyrone Armstrong

Customer Address: 2729 116th Street

City, State, Zip Code: Toledo, OH 43611

Customer Phone #: (419) 578-8495

County: lucas

**EEP Includes the following if applicable:**

☒ 16 LED Bulbs / 2 LED Flood Lights
☒ Blown Insulation
☒ Hot Water Heater Thermal Blanket
☒ Attic Staircase Cover
☒ Air Sealant Tape
☒ Solar Attic Fan
☒ Shower Head
☒ Sink Aerator

**Work Completed / Additional Notes:** na

Sales Representative Signature: *Ahmad Nafisa*     Date: August 26, 2020 | 7:32 PM EDT
8148CE632FB6437...

Customer Signature: *Tyrone Armstrong*     Date: August 26, 2020 | 8:07 PM EDT
AFCEF4BAF2424D9...

v. 08.24.20

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC

 **POWERHOME.**

## CUSTOMER REIMBURSEMENT FORM

This Customer Reimbursement Form is being delivered and executed by Buyer and Contractor in connection with that certain Solar Energy System Purchase & Installation Agreement (the "Agreement"). All capitalized terms used herein, not otherwise defined herein, shall have the meanings ascribed to such terms in the Agreement.

Contractor has agreed to reimburse Buyer for the item(s) set forth below up to the maximum amount(s) set forth adjacent to each such item.

| Item | Maximum Reimbursement Amount |
|------|------------------------------|
| na   |                              |
|      |                              |
|      |                              |
|      |                              |

Contractor shall only be responsible for reimbursing Buyer for the actual and documented costs for each item above. Contractor shall reimburse up to the maximum reimbursement amount set forth above upon presentation of proof of payment by Buyer (in form acceptable to Contractor, in its discretion). Any reimbursements due and payable hereunder shall be paid to Buyer within seven (7) days of the Substantial Completion of Installation. Contractor may, in its discretion, reduce any amounts due to Contractor under the Agreement in lieu of reimbursing Buyer hereunder.

Buyer understands and agrees that the item(s) set forth above are being performed at the direction of Buyer by third parties unrelated to Contractor and Contractor is not responsible for, and makes no warranties or representations (whether express or implied) with respect to, the quality, workmanship or other matters relating to or arising in connection with the item(s) set forth above.

Dated: _August 26, 2020 | 7:32 PM EDT_ ___, 20___

**Buyer:**

Signature: _Tyrone Armstrong_
AFCEF4BAF2424D9...

Printed Name: _Tyrone Armstrong_

Date: _August 26, 2020 | 8:07 PM EDT_

Signature: _____

Printed Name: _____

Date: _____

**Contractor:**

Signature: _Ahmad Nafisa_
6146CE632FB6437...

Printed Name: _Ahmad Nafisa_

Date: _August 26, 2020 | 7:32 PM EDT_

v. 08.24.20

DocuSign Envelope ID: C88654B7-246B-46C2-BBB1-4D4B014BDAEC

Michigan DTE customer

X    NOT a Michigan DTE customer

 **POWERHOME.**

## NOTICE AND ACKNOWLEDGEMENT FOR MICHIGAN CUSTOMERS
### *(DTE Energy Customers Only)*

This Notice and Acknowledgement for Michigan Customers (DTE Energy Customers Only) (this "Notice") is being delivered and executed by Buyer in connection with that certain Solar Energy System Purchase & Installation Agreement (the "Agreement"). All capitalized terms used herein, not otherwise defined herein, shall have the meanings ascribed to such terms in the Agreement.

Due to changes adopted by the Michigan Public Service Commission relating to DTE Energy customers, residential customers of DTE Energy will receive an outflow credit of 7.477 cents/kWh for the first 17 kWh/day, and an excess outflow credit of 9.11 cents/kWh. These changes in net-metering rules lower solar energy cost offsetting. As such, if Buyer's System is not used in real time (*i.e.*, using the energy generated by the System to power Buyer's residence while it is being generated) and/or Buyer's System overproduces power, then Buyer will need to take into consideration, among other things, the new outflow credit and excess outflow credit in determining solar energy cost savings (including potential cost offsetting).

Contractor makes an effort to reasonably project energy production and energy savings (including potential offsetting), as well as the appropriate System for Buyer (including, number of solar panels), *however*, due to the changes to net-metering rules discussed herein, and other factors and variables outside of Contractor's control (including, but not limited to, future changes in regulations, customer's usage, customer's overproduction, weather conditions, etc.), Contractor does not make, and hereby expressly disclaims, any promise, warranty, representation or guarantee (whether express or implied, oral or written) with respect to energy production, usage or savings (including cost offsetting) relating to the System.

By signing below, Buyer acknowledges and agrees that Buyer has read and understands this Notice.

Dated: _____ ____, 20____

**Buyer:**

Signature: _____     Signature: _____

Printed Name: _____     Printed Name: _____

Date: _____     Date: _____

# EXHIBIT B

DocuSign Envelope ID: 0E3B1580-8316-439C-A59D-F493507C1AFE



**Amendment to**
**Solar Energy System Purchase & Installation Agreement**

***Buyer (Owner or Customer):***

Tyrone Armstrong
_____

Primary Phone #: (419) 578-8495
Secondary Phone #: (419) 578-8495
Email address: tyrone613@bex.net

Amendment No: 1_____

Date: August 28, 2020 | 2:42 PM EDT
_____

Job # Armstrong 1_____

    This AMENDMENT TO SOLAR ENERGY SYSTEM PURCHASE & INSTALLATION AGREEMENT (this "Amendment") is entered into between Buyer (as set forth above) and Power Home Solar LLC ("Contractor") on the date set forth above in connection with that certain Solar Energy System Purchase & Installation Agreement (as may be amended, the "Agreement") entered into between Buyer and Contractor. All capitalized terms used herein, but not otherwise defined herein, shall have the meanings ascribed to them in the Agreement.

    Contractor and Buyer acknowledge and agree that they have each agreed to the following amendments to the Agreement:

| |
|---|
| Solar purchase agreement is based on 320 watt solar panels. |
| 47 panels, 320 watt silfab, for a total system size of 15.04 kw |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |

    Buyer warrants and represents to Contractor that Buyer is the sole legal owner of the Property, and that he/she/they have the authority to enter into this Amendment (and bind all owners of the Property hereto). Except as, and to the extent, expressly amended hereby, the Agreement shall remain unmodified and in full force and effect. In the event of any conflict or inconsistency between the terms of this Amendment and the Agreement, the terms of this Amendment shall prevail and control.

    This Amendment may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

v. 01 (01.15.20)

DocuSign Envelope ID: 0E3B1580-8316-439C-A59D-F493507C1AFE



Counterparts may be delivered via facsimile, electronic mail (including .pdf or any electronic signature) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

**Agreed and Accepted By:**

Buyer(s):

DocuSigned by:

Tyrone Armstrong
(Signature) 6450...

Date: August 28, 2020 | 3:45 PM PDT

_____

_(Signature)_

Date: _____

Contractor:

Power Home Solar LLC

By: DocuSigned by:
Ahmad Nafisa
6146CE632FB6437...

Name: Ahmad Nafisa

Title: mr

Date: August 28, 2020 | 2:42 PM EDT

v. 01 (01.15.20)

# EXHIBIT C

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

## Solar Energy System Purchase & Installation Agreement

### PARTIES

This SOLAR ENERGY SYSTEM PURCHASE & INSTALLATION AGREEMENT (this "Agreement") must be signed and delivered by both Buyer and Contractor before any work may be performed.

Date: August 31, 2020 | 6:18 PM EDT

**Buyer (Owner or Customer):**

Tyrone Armstrong

Primary Phone #: (419) 578-8495
Secondary Phone #: (419) 578-8495
Email address: tyrone613@bex.net

**Contractor (Seller)**
Power Home Solar LLC
919 North Main Street
Mooresville, NC 28115
1-800-765-2715
Email: customerservice@powerhome.com
www.PowerHome.com
FEIN ▬▬▬ TaxID ▬▬
NC License: NCGC 60946/EL 26074-U
SC License: SCGC G119763/EL M113628
MI License: Residential Builder #2102214053
VA License: VAGC 2705165346
OH License: 48524
PA HIC Registration No.: PA143619
TN Contractor License: 74358 (Unlimited; CE)

**Project Site:** 2729 116th Street, Toledo, OH 43611

(the "Property")

### ENCLOSURES

1. Scope of Work
2. Price and Payment Schedule
3. Terms and Conditions
4. Signatures
5. Exhibit A: Commercial General Liability Insurance (CGL) and Other Insurance Notification
6. Exhibit B: Worker's Compensation Insurance Notification
7. Exhibit C: Mechanics' Lien Warning
8. Exhibit D: Notice of Cancellation
9. Exhibit E: Arbitration Agreement

**DISCLAIMER:** AS PART OF THE INFORMATION PROVIDED TO BUYER AT (OR BEFORE) THE TIME OF SALE, CONTRACTOR MAY PROVIDE *PROJECTIONS* OF ENERGY PRODUCTION FROM BUYER'S SOLAR ENERGY SYSTEM AND *ESTIMATES* OF BUYER'S PROJECTED ENERGY CONSUMPTION AND COST SAVINGS (COLLECTIVELY, THE "PROJECTIONS"). THE ENERGY PRODUCTION PROJECTIONS THAT ARE INCLUDED IN THE PROJECTIONS ARE BASED, IN PART, ON FACTORS THAT ARE INHERENTLY VARIABLE, LIKE WEATHER CONDITIONS. SIMILARLY, THE ESTIMATES OF BUYER'S PROJECTED ENERGY CONSUMPTION AND COST SAVINGS THAT ARE INCLUDED IN THE PROJECTIONS ARE ALSO BASED ON FACTORS WHICH ARE INHERENTLY VARIABLE AND BEYOND THE CONTROL OF CONTRACTOR, LIKE BUYER'S USAGE AND THE APPLICABLE MARKET COST OF ENERGY. EVEN SMALL VARIATIONS IN BUYER'S USAGE AND MINOR CHANGES IN ENERGY UNIT COSTS FROM BUYER'S APPLICABLE ENERGY PROVIDER WILL IMPACT BUYER'S ENERGY COST

DS
TA

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

SAVINGS. AS A RESULT, THOUGH CONTRACTOR MAKES AN EFFORT TO REASONABLY PROJECT BOTH ENERGY PRODUCTION AND AN *ESTIMATE* OF ENERGY COST SAVINGS IN REGARD TO BUYER'S NEW SYSTEM, THE AMOUNTS PROVIDED FOR ENERGY PRODUCTION, USAGE AND SAVINGS ARE ILLUSTRATIVE AND HYPOTHETICAL ONLY AND ARE *NOT*, AND SHALL *NOT* BE IN ANY WAY INTERPRETED TO BE, GUARANTEES, REPRESENTATIONS OR WARRANTIES OF ANY KIND, SHAPE OR FASHION. THE ESTIMATES, PROJECTIONS AND ASSUMPTIONS CONTAINED IN THE PROJECTIONS WERE COMPILED BASED ON INFORMATION SUPPLIED BY YOU AND OTHER THIRD PARTY SOURCES, AND HAVE NOT BEEN INDEPENDENTLY VERIFIED BY CONTRACTOR. NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, ORAL OR WRITTEN, IS MADE AS TO THE ACCURACY OR COMPLETENESS OF THE INFORMATION, ESTIMATES, PROJECTIONS OR ASSUMPTIONS CONTAINED THEREIN, AND NOTHING CONTAINED HEREIN OR THEREIN IS, OR SHALL BE RELIED UPON AS, A PROMISE, REPRESENTATION, WARRANTY OR GUARANTEE, WHETHER IN THE PAST OR THE FUTURE WITH RESPECT TO SUCH PROJECTIONS (WHETHER RELATING TO ENERGY PRODUCTION, USAGE OR SAVINGS). CONTRACTOR EXPRESSLY DISCLAIMS ANY SUCH PROMISE, REPRESENTATION, WARRANTY OR GUARANTEE (WHETHER ORAL, WRITTEN OR OTHERWISE). ULTIMATELY, THE ENERGY PRODUCTION, CONSUMPTION AND SAVINGS WITH RESPECT TO ANY GIVEN SYSTEM MAY VARY MATERIALLY FROM THOSE SET FORTH IN THE PROJECTIONS BASED, IN PART, WITHOUT LIMITATION, ON VARIOUS FACTORS THAT ARE INHERENTLY VARIABLE, LIKE WEATHER CONDITIONS, MAN-MADE OBSTRUCTIONS, NATURAL OBSTRUCTIONS (LIKE TREES AND OTHER SHADING ISSUES), AND OTHER FORCES OUTSIDE OF CONTRACTOR'S CONTROL. BUYER IS FURTHER ADVISED THAT TREES AND/OR OTHER OBJECTS CAUSING ANY SHADING ISSUES THAT ARE ADVERSE TO THE PROPER CONTRACTOR RECOMMENDED OPERATION OF BUYER'S SYSTEM MAY NEED TO BE REMOVED BY BUYER AT BUYER'S SOLE COST AND EXPENSE. CONTRACTOR SHALL NOT BE RESPONSIBLE FOR SERVICES RENDERED BY SUBCONTRACTORS UNRELATED OR UNAFFILIATED WITH CONTRACTOR.

FOR PENNSYLVANIA RESIDENTS ONLY: The official registration number of Power Home Solar LLC can be obtained from the Pennsylvania Office of Attorney General's Bureau of Consumer Protection by calling toll-free within Pennsylvania 1-888-520-6680. Registration does not imply endorsement.

FOR VIRGINIA RESIDENTS ONLY: Consumer is hereby notified of the existence of the Virginia Contractor Transaction Recovery Fund. The Virginia Contractor Transaction Recovery Fund provides relief to eligible consumers who have incurred losses through the improper and dishonest conduct of a licensed contractor. More information on the Fund or filing a claim can be obtained by visiting http://www.dpor.virginia.gov/Boards/Contractors_Recovery_Fund/ or by contacting the Board for claim information at the following address: Recovery Fund Office | DPOR, 9960 Mayland Drive, Suite 400, Richmond, VA 23233, (804) 367-1559, email: RecoveryFund@dpor.virginia.gov.

FOR ILLINOIS RESIDENTS ONLY: Buyer acknowledges that Contractor has provided to Buyer a copy of the "Home Repair: Know Your Consumer Rights" pamphlet prior to the execution of this Agreement (a copy of the pamphlet can be found at http://illinoisattorneygeneral.gov/consumers/homerep0505c.pdf).

FOR WISCONSIN RESIDENTS ONLY: NOTICE CONCERNING CONSTRUCTIONS DEFECT. Wisconsin law contains important requirements you must follow before you may file a lawsuit for defective construction against the contractor who constructed your dwelling or completed your remodeling project or against a window or door supplier or manufacturer. Section 895.07 (2) and (3) of the Wisconsin statutes requires you to deliver to the contractor a written notice of

TA

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

any construction conditions you allege are defective before you file your lawsuit, and you must provide your contractor or window or door supplier the opportunity to make an offer to repair or remedy the alleged construction defects. You are not obligated to accept any offer made by the contractor or window or door supplier. All parties are bound by applicable warranty provisions. Buyer acknowledges that Contractor has provided to Buyer a copy of the "Wisconsin 'Right to Cure Law'" brochure (found at https://www.housingalliance.us/wp-content/uploads/RightToCure_SinglePage.pdf).

**FOR TENNESSEE RESIDENTS ONLY:** All home improvement contractors must be licensed by the Tennessee Home Improvement Commission. Any inquiries about a contractor should be transmitted to the Commissions office.

**FOR OHIO RESIDENTS ONLY:** EXCESS COSTS. IF AT ANY TIME A HOME CONSTRUCTION SERVICE REQUIRES EXTRA COSTS ABOVE THE COST SPECIFIED OR ESTIMATED IN THE CONTRACT THAT WERE REASONABLY UNFORESEEN, BUT NECESSARY, AND THE TOTAL OF ALL EXTRA COSTS TO DATE EXCEEDS FIVE THOUSAND DOLLARS OVER THE COURSE OF THE ENTIRE HOME CONSTRUCTION CONTRACT, YOU HAVE A RIGHT TO AN ESTIMATE OF THOSE EXCESS COSTS BEFORE THE HOME CONSTRUCTION SERVICE SUPPLIER BEGINS WORK RELATED TO THOSE COSTS. INITIAL YOUR CHOICE OF THE TYPE OF ESTIMATE YOU REQUIRE:

_____ written estimate _____ oral estimate

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

## SCOPE OF WORK

In accordance with the terms of this Agreement, Contractor agrees to perform the following project on Buyer's behalf (the "Project") and the Project shall consist of Contractor providing all materials (equipment, hardware, and supplies), labor (design, administration, work and supervision), and all building permits / inspections required to complete and put into service the Solar Energy System as specified below (collectively, the "System").

*Approximate* Start Date: _09/02/2020_  *Approximate* Completion Date: _11/02/2020_

**Modules**

| QTY. | Manufacturer | Model | Mounting Structure | Inverter Size |
|------|--------------|-------|--------------------|---------------|
| 47   | silfab       | 320w  | roof               | generac       |
|      |              |       |                    |               |
|      |              |       |                    |               |

**Battery**

| QTY. | Manufacturer    | Cost  |
|------|-----------------|-------|
| 1    | Generac battery | 20000 |

**Additional Battery Module(s)**

| QTY. | Manufacturer         |
|------|----------------------|
| 0    | Generac (2.85 kWh)   |

DS TA

Size of the System: _15.04_ kW

| Cust. 12 mth Est. | Yearly Solar |
|-------------------|--------------|
| 2,217             | 14,542       |

DS TA

**Proposed *Estimated* System Savings Breakdown:**

_80_____ % Solar & EEP Production *

DS TA

_20_____ % On Demand Power W/ Utility

DS TA

* The above are *estimates* of power production vs power consumption and are based on the previous 12 months utility usage provided by Buyer. The above *estimates* will vary according to, among other things, changes in consumption, weather conditions and/or climate changes. Contractor *does not* guarantee these percentages.

**Additional Work**

| na |
|----|
|    |
|    |
|    |
|    |

**NOTES:**

**ROOF NOTES:**  _shingal_
　　　- ROOF TYPE: _____　　　- AGE OF ROOF: _10____

DS TA

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

## PRICE AND PAYMENT SCHEDULE

In exchange for the materials and labor provided by Contractor in the faithful performance of this Agreement, Buyer agrees to pay Contractor:

    A.  The Total Contract Price as set forth below.

    B.  Any additional charges necessitated by any Change Order(s) (as defined in and discussed in Section 6 of the Terms and Conditions set forth below).

**TOTAL CONTRACT PRICE*** (*materials, labor and tax*)**: $** 86,936.00

Less Projected Incentives (*to be collected by Contractor*): $  0

**Net Contract Price: $** 86,936.00

    A.  The pricing in this Agreement assumes that the Project will be started within 90 days of the date of this Agreement. In the case of Project delays beyond 90 days from the date of this Agreement, at the request of Buyer (*i.e.* for Buyer to obtain financing, or for Buyer to coordinate the performance of the Project with a re-roof or other construction projects), Contractor reserves the right to adjust the Total Contract Price to reflect the actual cost of materials at the time of commencement of such delayed construction. Any such adjustments shall be in a Change Order executed and delivered by Contractor and Buyer.

    B.  The Total Contract Price does not reflect Federal or State tax credits.

## PAYMENT SCHEDULE

**Payment of Total Contract Price** (*check one*)**:**     **Buyer Financing\*** \_\_\_\_    **Cash Payment** _____

**\* Buyer Financed Payment of Total Contract Price:** The payment terms of Buyer financing the Total Contract Price of the System shall be determined by, and in accordance with, the specific lender associated with this Agreement that elects to finance Buyer's purchase and installation of the System.

**Cash Payment:** The following schedule will be used if Buyer is electing to pay in cash for the System:

    0

    <u>A.</u>  **Deposit** – \_\_\_\_% of the Total Contract Price shall be paid by Buyer to Contractor upon the execution and delivery of this Agreement; and

                                               0

    <u>B.</u>  **Remaining Balance of Total Contract Price** – the remaining \_\_\_\_% balance of the Total Contract Price shall be paid by Buyer to Contractor upon the Substantial Completion of Installation (as defined herein). For purposes hereof, "Substantial Completion of Installation" shall mean that all System equipment has been installed and all System electrical connections have been made in accordance with the terms of this Agreement and are ready for permit inspection by applicable governmental authorities.

| Payment Made: | Amount Due: | Due: | Description: |
|---|---|---|---|
| 100% Financed thru loan loanpal | | | |
| | | | |

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

# TERMS AND CONDITIONS

**1.  General Provisions**

Upon verbal or written notice from Buyer to proceed, Contractor shall commence work on the Project and shall  continue diligently in its performance to completion. Contractor will perform all work in a professional and  workmanlike manner and in compliance with applicable building codes and other applicable laws.

At Contractor's sole discretion, Contractor may employ or engage subcontractors including roofers or electricians to  perform specialized portions of the Project as required. To the extent required under applicable law, Contractor will provide Buyer with information, such as names, addresses and telephone numbers, of any subcontractors engaged or employed to perform any work on the Project.

To the extent required by applicable law, all work on the Project shall be performed by individuals duly licensed and authorized by applicable law to  perform said work on the Project.

Contractor shall comply with all local requirements for building permits, inspections and zoning, and shall be responsible for applying for and obtaining any building permits, licenses, interconnection applications or other regulatory  approvals required for the completion of the Project. Buyer warrants and represents to Contractor that Buyer is the sole legal owner of the Property, and that he/she/they have the authority to enter into this Agreement.

**2.  Scheduling; Buyer Cooperation**

Contractor will commence work on the Project ("Project Work") as soon as practical after the date on which this Agreement is executed. "Project Work" is defined as any work necessary to prepare for construction of the Project, including submitting any applicable documents to the utility or rebate authority for the Project, preparing documents necessary for a building permit for the Project, or ordering materials for the Project. Contractor will diligently pursue all aspects of preparation and construction of the Project until Substantial Completion of Installation is complete, and Buyer hereby agrees and acknowledges that the period of time for Substantial Completion of the Project shall vary with the complexity, scope, and size of the Project.

Contractor is not responsible for any delays that are outside of the control of the Contractor, including, without limitation, delays caused by government agencies in approving rebates, building jurisdictions in approving building permits, or by utility companies in approving interconnection applications.

**Buyer acknowledges and agrees that Buyer shall timely cooperate with Contractor in connection with the Project Work and the performance of Contractor's obligations under this Agreement (whether before, during or after the installation of the System), including, but not limited to, providing any documents or other information reasonably requested by Contractor in Buyer's possession, custody or control relating to the System and/or the Project and any claims, deficiencies or defects Buyer alleges with respect thereto (such as, by way of example only, and without limitation, up to 12 months of Buyer's utility bills in order for Contractor to adequately analyze post-installation consumption, savings and Buyer-alleged claims, deficiencies or defects in the System).**

**3.  Payment Terms**

All payments are due and payable immediately upon presentation of the invoice relevant to the associated Project milestone as detailed in the Payment Schedule. A failure by Buyer to make payment to Contractor for a period in excess of ten (10) days from the due date of the payment shall be deemed a material breach of this Agreement by Buyer. Buyer shall be given a ten (10) day period after written notice of any such payment default to cure any such payment default. Buyer authorizes Contractor to apply (and to the extent applicable, charge) any amount(s) due and owing under this Agreement to the applicable payment method designated and/or provided by Buyer (*i.e.*, credit card, check, debit card or other form of payment delivered by Buyer and accepted by Contractor).

If Buyer fails to cure the payment default **within ten (10) days** of written notice, Buyer will pay to Contractor interest on all amounts due in the amount of the *lesser* of (i) eighteen percent (18%) per annum, or (ii) the maximum rate allowed by applicable law, plus, to the extent not otherwise prohibited by applicable law, reasonable attorneys' fees and/or collection charges incurred by Contractor in connection with the collection of such non-payment by Buyer. If Buyer fails to make any payment within thirty (30) calendar days of notice of default, the full Total Contract Price will become immediately due and payable without further demand from Contractor, and no further work on the Project will be undertaken by Contractor unless and until any such unpaid amount is paid in full. Acceptance of a payment after a Buyer default shall not be deemed a waiver by Contractor of any action or right it may have by reason of such default. In the event of default, Contractor may also pursue remedies available under Sections 4 and 9 below. Title of the System does not transfer to Buyer until payment in full of the Total Contract Price for the System is paid to, and received by, Contractor.

Buyer shall be responsible for paying any applicable sales, use, excise, value added, withholding or similar taxes, duties or assessments imposed in connection with this Agreement for the products (including without limitation, all of the equipment and components of the System) and services provided hereunder by any federal, state, local or foreign government authority, exclusive of any taxes based upon Contractor's income or payroll.

**4.  Security Interest**

Buyer grants to Contractor a continuing security interest in the entire System and in all of the equipment and components of the System installed at the Project including, but not limited to, all equipment identified herein and any additional items installed. In the event Buyer

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2



defaults on the payment of any amounts associated with this installation or repayment of any amounts advanced by Contractor for the benefit of Buyer and such default is not cured in full within ten (10) days of written notice of default from Contractor, Contractor may, in addition to its remedies set forth in Section 3 above and to the extent permitted by applicable law, remove the entire System, including without limitation, any and all equipment and components covered by the security interest granted by Buyer to Contractor under this Agreement.  Contractor shall be permitted to file, and is hereby authorized to file without further notice, a Form UCC-1 financing statement in the real estate records of the jurisdiction in which the Project is located.  Upon payment in full of the Total Contract Price, the security interest provided for in this Section shall terminate and Contractor shall take all steps necessary to terminate any such Form UCC-1 financing statement filed by Contractor.

**5.    Rebate Approval**

Buyer assumes sole responsibility for all rebates, tax credits, power rate negotiations and all other matters outside the installation of the System. Buyer may authorize Contractor (either verbally or in writing) to proceed with installation prior to rebate approval, but Contractor does not guarantee Buyer's eligibility for, or the actual dollar amount of, any such rebate. In the event that (a) Buyer requests that Contractor commence work on the Project prior to receiving actual notice of rebate approval from the applicable Incentive Authority to which Buyer has applied for a rebate, and (b) Contractor actually commences work on the Project, and (c) the applicable Incentive Authority subsequently determines that Buyer may not be eligible for a rebate or that the rebate is less than the initial estimated rebate amount, then Buyer agrees to pay (at a minimum) all out-of-pocket costs for both labor and materials incurred by Contractor up to the date of such notice. Any rebates for the installation of the System are estimates only and may change without notice. Moreover, Buyer hereby acknowledges and agrees that there is no guarantee that Buyer will receive any specific rebate or credit figure because taxing entities occasionally adjust the rebate or credit amount. If an adjustment is greater than $50, Buyer will either be charged or refunded the appropriate amount. Additionally, rebate amounts may be periodically adjusted down as incentive programs reach preset milestones. Therefore, any amount Buyer may receive is based upon the rebate level at the time that Buyer's request is accepted, not at the time that this Agreement is signed.

**6.    Change Orders**

The material, quantities, and amounts listed in this Agreement are Contractor's good faith estimates of the Project cost based on all factors known to Contractor at the time of such estimate. Changes to the original Project scope of work may become necessary after work on the Project has been commenced (and each such change shall be referred to as a "Change Order" and, collectively, the "Change Orders"). For purposes of this Agreement, a Change Order may occur for one of three reasons:

    a.    Unavailability of quoted materials;
    b.    Contractor discovers something previously unknown that must be corrected to properly complete the Project; and/or
    c.    Buyer request changes to the Project after construction of the Project has already proceeded.

Contractor has the right to substitute similar, functionally equivalent materials should the originally quoted materials not be available.

Contractor may initiate a Change Order when circumstances exist or are discovered that require additional work to be done to complete the Project properly. Such circumstances may include, without limitation, the need to modify existing wiring, reinforce rafters or support joists, repair existing roofing, or any such task that may be required to successfully build the Project and assure that it conforms to local building codes. In certain circumstances, the permitting jurisdiction or other organizations (such as an HOA) may require additional engineering work beyond the scope of a typical installation be performed. Examples of this include, without limitation, requirements for a structural analysis of the building that will be holding the Systems' roof-mounted solar array; or soil analysis, environmental impact reports or archeological studies for ground mounted solar arrays. If Contractor determines that these costs will exceed $1,000 (or such lesser amount that may be required by applicable law), Contractor will stop permitting work to discuss the additional costs with Buyer. If Buyer agrees to the additional costs they will be incorporated into this Agreement via a signed Change Order. If Buyer does not agree, the Project will be terminated.

Buyer may initiate a Change Order when requesting changes to the Project following the date hereof (*but prior to completion of the Project*) that require additional work to be done. Such circumstance may include requests to move the System's solar arrays from one roof area to another area of the same roof at the Property, requests to install equipment different than as illustrated on the approved building plans, requests to remove or relocate existing fixtures such as antennas, or any additional work or task outside the original Project scope of work.

Notwithstanding the foregoing, or anything contained herein to the contrary, Contractor shall not be obligated or required to relocate, remove and/or re-install the System (or any part thereof) to another location or property, except as otherwise may be expressly agreed in a written contract signed by Contractor and Buyer.  Contractor does not make (and hereby disclaims any) representations or warranties (oral or written) as to the costs, suitability, ability, interconnection, approvals (including homeowners associations), and energy production, usage or savings relating to, or in connection with, any relocation, removal and/or re-installation of the Buyer's existing System from one location or property to another location or property.  Each location or property is different, and as such, results, requirements, approvals, costs, savings, etc. will vary (often substantially) depending on location or property.

Should Change Orders become necessary for the proper completion of the Project, regardless of whether they are initiated by Contractor or Buyer, any materials, quantities, and amounts listed in the Project scope of work are subject to revision, and the Total Contract Price may increase or decrease accordingly. The Change Order will describe the scope of the extra work or change, the cost to be added or subtracted

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2



from the Total Contract Price, and the effect the Change Order will have on the schedule of progress payments and estimated date of Substantial Completion of Installation.

Change Orders become part of this Agreement once the Charge Order is prepared in writing and signed and delivered by both Contractor and Buyer prior to the commencement of any work covered by the Change Order. Buyer may not require Contractor to perform work without written authorization. A Change Order is not enforceable against Buyer unless the Change Order complies with this provision. However, Contractor's failure to execute and deliver a Change Order shall not preclude Contractor's recovery based on legal or equitable remedies designed to prevent unjust enrichment.

Notwithstanding the requirement under this Agreement that all Change Orders be in writing, if there are any contemplated changes to the Project requested by Buyer or required by Contractor for the successful installation of the Project and which contemplated changes Contractor discusses with Buyer and to which contemplated changes Buyer gives Contractor its verbal assent, such verbal assent by Buyer to such contemplated changes will have the same legality and full force and effect as a written Change Order once Contractor has commenced performance of any construction in any of the Change Orders that were so discussed verbally between Contractor and Buyer. Contractor and Buyer shall negotiate any Change Order and associated additional costs in good faith. Buyer shall be bound by any changes or alterations requested by Buyer to this Agreement or to plans for the Project, whether given verbally or in writing. Contractor shall be entitled to reasonable overhead and profit on any Change Order requested or required. Any required Change Orders, including extra labor and/or additional materials, may be incorporated herein without invalidating this Agreement. Buyer will pay to Contractor any net increase to the Total Contract Price within ten (10) days of request or billing by Contractor for any such Change Order.

If Contractor and Buyer cannot agree on the compensation or time extensions for any such Change Order, Contractor may at its discretion nevertheless proceed with such extra work and materials as may be required to successfully complete the Project. In the event of such disagreement, Contractor and Buyer agree to submit the question or entitlement or amount of compensation and/or extensions of time, to arbitration pursuant to this Agreement and Exhibit E attached hereto.

**7.  Warranty**

Contractor warrants to Buyer that all of Contractor's work under this Agreement will be:

    a.    performed in accordance with the requirements of this Agreement and any required governmental inspections, tests, or approvals; and

    b.    be free from material faults and defects in workmanship ("Defects") for a period of five (5) years after the date of completion of the Project.

Contractor warrants that all materials used for the Project will be new, unless otherwise specified, and of good quality. All materials will be installed, connected, and applied in accordance with the instructions and specifications of the applicable manufacturer or supplier. Buyer should note that manufacturers of various materials separately warrant their own products, including solar photovoltaic modules, battery backups, inverters, and solar mounting racks, and Contractor is not responsible for or obligated under any such manufacturer warranties. For additional information, restrictions and exclusions regarding (1) the SolarEdge Manufacturer Inverter Warranty (including the optional 25 year extended warranty), please visit https://www.solaredge.com/sites/default/files/solaredge-warranty-april-2019.pdf and https://www.solaredge.com/sites/default/files/ONLINE_HomeownerExtendedWarranty.pdf; and (2) the Generac Manufacturer Limited Warranty, please visit https://www.generac.com/service-support/product-support-lookup/product-support-details?productid=aa180473-602e-4494-b195-d35dd49feee5&isBaseModel=false and https://soa.generac.com/manuals/X7602-08749/A0000416920. Contractor will assign any manufacturer warranties upon completion of the Project and payment in full by Buyer. No other warranties are provided by Contractor except as specifically set forth in this Agreement.

The warranty provided by Contractor to Buyer above does not cover (and expressly excludes) Defects related to or caused by any of the following (as determined in Contractor's reasonable discretion): (a) any modifications to or abuse of the Project or the System by Buyer or persons other than Contractor; (b) trees, new buildings, or other array obstructions which are installed, grow beyond the point of the original array install, or otherwise change after installation of the System; (c) improper use, installation, wiring, handling, removal, storage, maintenance, or cleaning of the System; (d) damage from abuse, alteration, or vandalism, or due to plants, insects, or animals; (e) damage from external stress, impact, foreign objects, or falling rocks or debris; (f) damage or corrosion caused by roofing materials, chemicals, or substrates, including those used for corrosion resistance, thermal expansion and contraction, and moisture barriers and sealing; (g) power or voltage surges or damage caused by the electrical grid for shore power connected products; (h) natural disasters, earthquakes, fires, typhoons, tornadoes, hurricanes, volcanic activity, volcanic clouds, dust storms, dust clouds, floods, tsunamis, lightning, or other acts of God, or other events that are beyond the reasonable control of Contractor; (i) acts of terrorism, criminal acts, riots, wars, civil unrest, nuclear radiation, or manmade disasters; and/or (j) damages attributable to normal weathering or defects or damages caused by vapors or chemical pollutants or air pollution, building settlement or structural failure of roof, walls, foundations or any part of the attached structure, or any other causes beyond Contractor's control. Except for Defects covered by the warranty set forth herein, all maintenance obligations for the System upon acceptance of the System by Buyer shall be the responsibility of Buyer.

Buyer agrees to give prompt notice of any and all Defects to Contractor in writing, and in no event shall Buyer provide such written notice to Contractor later than three (3) business days after Buyer observes or otherwise becomes aware of any such Defect. Within twenty (20) days from receipt of such notice of Defect by Contractor, Contractor shall have the right to inspect the System and the Project and review

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

any claims by Buyer for warranty work. Warranty work, if necessary, will generally be completed within sixty (60) days of written request by Buyer and subsequent agreement by Contractor that such work is required.

**EXCEPT AS PROVIDED IN THIS SECTION 7, CONTRACTOR MAKES NO OTHER REPRESENTATION OR WARRANTY OF ANY KIND, WHETHER EXPRESS OR IMPLIED, FROM A COURSE OF PERFORMANCE OR DEALING OR TRADE USAGE, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE LIMITED WARRANTIES SET FORTH HEREIN ARE MADE FOR THE BENEFIT OF BUYER ONLY AND NOT FOR THE BENEFIT OF ANY THIRD PARTY.**

8. **Limitation of Liability**
   If Contractor shall become liable to Buyer for any matter relating to or arising out of this Agreement or their relationship in connection with Contractor's performance under this Agreement, whether based upon a claim in contract, equity, negligence or otherwise, the amount of damages recoverable against Contractor for any and all events, acts or omissions shall not exceed in the aggregate the actual fees paid to Contactor under this Agreement. Except to the extent otherwise prohibited by applicable law, Contactor shall not be responsible or liable with respect to any subject matter of this Agreement (including with respect to the Project or the System) or the terms and conditions related thereto under any negligence, contract, strict liability or other theory for any special, indirect, incidental, exemplary, punitive or consequential damages, even if Contractor has been advised of the possibility of such damages. Contractor.shall not be responsible for any matter beyond its reasonable control or any force majeure event (as described in Section 11 hereof). Buyer's exclusive remedy under this Agreement shall be (at Contractor's discretion), (a) the correction of any material Defects in the Project, (b) the full refund of Buyer's fees paid hereunder, or (c) any other remedy required by applicable law.

9. **Termination**
   Either party may terminate this Agreement for breach of a material term of this Agreement (including non-payment of fees), upon giving the other party written notice identifying the alleged breach, provided the breaching party does not cure such breach within thirty (30) days of receipt of such notice. Termination of this Agreement shall not relieve Buyer of its accrued payment obligations as of the date of termination. In addition, should the Project be stopped by any public authority for a period of thirty (30) days or more, through no fault of Contractor, or should the Project be stopped through act of neglect of Buyer for a period of thirty (30) days or more, or should Buyer fail to pay Contractor upon ten (10) days after written notice of default, then Contractor may, upon ten (10) days written notice to Buyer, stop work or terminate this Agreement, and recover from Buyer reimbursement for all costs and expenses incurred by Contractor prior to the date of work stoppage.

10. **Assignment**
    This Agreement cannot be assigned by Buyer without the prior written consent of Contractor. Contractor may assign this Agreement, in whole or in part, with or without notice to Buyer (except to the extent required under applicable law) to a successor of Contractor or purchaser of all of Contractor's equity securities or all or substantially all of its assets.

11. **Force Majeure**
    Contractor shall not be liable for any delays in completion of the Project caused by: (i) governmental restrictions on manufacture, sale, distribution, and/or use of necessary materials; (ii) Contractor's inability to obtain necessary materials or perform the work contemplated herein because of strikes, lockouts, fires, floods, earthquakes, epidemics, pandemics or other acts of God, military operations and requirements, national emergencies, etc.; or (iii) any other acts or omissions beyond Contractor's reasonable control, provided, however, delays caused by the foregoing events do not constitute abandonment and are not included in calculating timeframes for payment or performance under this Agreement.

12. **Three Day Right to Cancel**
    Buyer has the right to cancel this Agreement within three (3) business days of the full execution of this Agreement. Buyer may cancel by emailing, mailing, faxing, or delivering a written Notice of Cancellation in substantially the form attached as Exhibit D hereto, or a reasonable facsimile thereof, to Contractor at Contractor's place of business by midnight of the third business day after the date the last signature necessary has been affixed to this Agreement, which notice shall include Buyer's name, Buyer's address, and the date Buyer received the signed copy of this Agreement.

    If Buyer cancels, Contractor shall return to Buyer any payment paid to Contractor by Buyer paid within 10 business days of receiving the Notice of Cancellation. For Buyer's part, Buyer must make available to Contractor at Buyer's residence, in substantially as good condition as Buyer received it, any goods delivered to Buyer under this Agreement, or, Buyer may, if Buyer's wishes, comply with Contractor's instruction on how to return the goods at Contractor's expense and risk.

    If Buyer does make the goods available to Contractor and Contractor does not pick them up within 20 days of the date of Buyer's Notice of Cancellation, Buyer may keep them without any further obligation. If Buyer fails to make the goods available to Contractor, or if Buyer agrees to return the goods to Contractor and fails to do so, then Buyer remains liable for performance of all obligations under this Agreement.

    If Buyer cancels this Agreement following the three (3) day right to cancel period, then, except as otherwise prohibited by applicable law, Buyer will be liable for all costs incurred by Contractor up to and including the date of cancellation, including any building permit fees

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

advanced by Contractor, any paperwork processing costs for applying for rebates or other approvals, and any costs for ordered but unused materials. Any initial payment paid by Buyer under this Agreement towards the Total Contract Price will be applied to any such out-of-pocket costs of Contractor, whether or not the Project has been started.

BUYER'S INITIALS: _____ T.A.

13. **Arbitration of Disputes**
BY SIGNING THIS AGREEMENT, CONTRACTOR AND BUYER AGREE TO RESOLVE ANY AND ALL DISPUTES THROUGH BINDING BILATERAL ARBITRATION, AND EACH PARTY WAIVES ANY RIGHT TO PARTICIPATE IN CLASS ACTIONS, ALL AS DETAILED IN, AND SUBJECT TO, THE "ARBITRATION AGREEMENT" ATTACHED HERETO AS EXHIBIT E, WHICH SHALL BE SIGNED BY THE PARTIES AS OF THE DATE HEREOF.

14. **Governing Laws**
The interpretation and construction of this Agreement, and all matters related to this Agreement, shall be governed by the laws of the State where the Project and Property are located (without giving effect to any conflict of law provisions thereof).

15. **Severability**
If any provision of this Agreement shall be invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect the validity or enforceability of the remainder of this Agreement in that jurisdiction or the validity or enforceability of any provision of this Agreement in any other jurisdiction.

16. **Entire Agreement; Counterparts**
This Agreement and any associated Change Orders constitute the entire agreement between the parties with respect to the subject matter herein. Any changes or alterations in this Agreement shall be valid and effective only if agreed upon in writing executed and delivered between the parties. The parties stipulate that neither of them has made any representations except as are specifically set forth in this Agreement and each of the parties acknowledge that they have relied on their own judgment in entering into this Agreement. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Counterparts may be delivered via facsimile, electronic mail (including .pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, Uniform Electronic Transactions Act or other applicable law) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2


**POWERHOME.**

## SIGNATURES

This SOLAR ENERGY SYSTEM PURCHASE & INSTALLATION AGREEMENT is made and entered into as of the _August 31_ day of, 2020 | 5:05 _____, 20___.

THIS AGREEMENT IS ENTERED INTO AS OF THE DAY AND YEAR WRITTEN ABOVE AND IS EXECUTED IN AT LEAST TWO ORIGINAL COPIES, ONE OF WHICH IS TO BE DELIVERED TO CONTRACTOR AND ONE OF WHICH IS TO BE DELIVERED TO BUYER.

BUYER MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION.  SEE THE ATTACHED NOTICE OF CANCELLTATION FORM FOR AN EXPLANATION OF THIS RIGHT.

NOTICE TO OWNER: DO NOT SIGN THIS CONTRACT IF BLANK. YOU ARE ENTITLED TO A COPY OF THE CONTRACT AT THE TIME YOU SIGN.

**Buyer(s)**

Signature: _Tyrone Armstrong_
—7D4B7A0A75F6450...
Printed Name: Tyrone Armstrong

Date: _August 31, 2020 | 5:05 PM PDT_

Signature: _____

Printed Name: _____

Date: _____

**Contractor (Power Home Solar LLC)***

Signature: _Ahmad Nafisa_
—9AFF5FE6F946F...
Printed Name: Ahmad Nafisa

Date: _August 31, 2020 | 6:18 PM EDT_

* Power Home Solar LLC maintains State licenses/registrations in the following states.(please see the first page for license/registration numbers): NC, SC, MI, VA, OH, PA, and TN.

**AGENCY AGREEMENT:**

We/I duly authorize POWER HOME SOLAR LLC (and its subsidiaries/divisions and their respective employees and agents) to act on our/my behalf as an agent to make submissions, reports, applications and verifications as required by and to regulating authorities in relation to the installation, commissioning, and interconnection of the equipment described in this Agreement.

Signature: _Tyrone Armstrong_
—7D4B7A0A75F6450...
Printed Name: Tyrone Armstrong

Date: _August 31, 2020 | 5:05 PM PDT_

Signature: _____

Printed Name: _____

Date: _____

v. 08.24.20

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

### Exhibit A: Commercial General Liability Insurance (CGLI) and Other Insurance Notification

Contractor maintains liability insurance covering personal injury in the amount of $1,000,000, and insurance covering property damage caused by Contractor's work in the amount of $1,000,000. Contractor also maintains other insurance and a copy of a Certificate of Liability Insurance is available upon request.

### Exhibit B: Workers Compensation Insurance

Contractor carries worker's compensation insurance for all employees.

### Exhibit C: Mechanics Lien Warning

Anyone who helps improve your property, but who is not paid, may, depending on the laws of the jurisdiction the property is located, record what is called a mechanic's lien on your property. A mechanics' lien is a claim, like a mortgage or home equity loan, made against your property and recorded in the county where the property is located.

Even if you pay your contractor in full, unpaid subcontractors, suppliers, and laborers who helped to improve you property may record mechanics' liens and sue you in court to foreclose the lien. If a court finds the lien is valid, you could be forced to pay twice or have a court officer sell your home to pay the lien. Liens can also affect your credit.

To protect yourself, have the contractor provide you with documentation showing that your equipment and labor on your job have been paid in full.

<u>For Michigan Residents only</u>: A residential builder or a residential maintenance and alteration contractor is required to be licensed under article 24 of the occupational code, 1980 PA 299, MCL 339.2401 to 339.2412. An electrician is required to be licensed under article 7 of the skilled trades regulation act, MCL 339.5701 to 339.5739. A plumbing contractor is required to be licensed under article 11 of the skilled trades regulation act, MCL 339.6101 to 339.6133. A mechanical contractor is required to be licensed under article 8 of the skilled trades regulation act, MCL 339.5801 to 339.5819. Contractor is licensed in the State of Michigan and Contractor's license number is Residential Builder #2102214053.

<u>For Missouri Residents only</u>: FAILURE OF THIS CONTRACTOR TO PAY THOSE PERSONS SUPPLYING MATERIAL OR SERVICES TO COMPLETE THIS CONTRACT CAN RESULT IN THE FILING OF A MECHANIC'S LIEN ON THE PROPERTY WHICH IS THE SUBJECT OF THIS CONTRACT PURSUANT TO CHAPTER 429, RSMO. TO AVOID THIS RESULT YOU MAY ASK THIS CONTRACTOR FOR "LIEN WAIVERS" FROM ALL PERSONS SUPPLYING MATERIAL OR SERVICES FOR THE WORK DESCRIBED IN THIS CONTRACT. FAILURE TO SECURE LIEN WAIVERS MAY RESULT IN YOUR PAYING FOR LABOR AND MATERIAL TWICE.

<u>For Wisconsin Residents only</u>: As required by the Wisconsin construction lien law, claimant hereby notifies owner that persons or companies performing, furnishing, or procuring labor , services, materials, plans, or specifications for the construction on owner's land may have lien rights on owner's land and buildings if not paid. Those entitled to lien rights, in addition to the undersigned claimant, are those who contract directly with the owner or those who give the owner notice within 60 days after they first perform, furnish, or procure labor, services, materials, plans or specifications for the construction. Accordingly, owner probably will receive notices from those who perform, furnish, or procure labor, services, materials, plans, or specifications for the construction, and should give a copy of each notice received to the mortgage lender, if any. Claimant agrees to cooperate with the owner and the owner's lender, if any, to see that all potential lien claimants are duly paid.

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

**Exhibit D: Notice of Cancellation**

**Date of Transaction:**

_____

Buyer and Contractor are parties to that certain Solar Energy System Purchase & Installation Agreement dated _August 31, 2020_ , 20____ (the "Agreement"). | 6:18 PM EDT

Buyer may cancel this transaction, without any penalty or obligation, within three business days from the above date (*i.e.*, the date which this Agreement is signed).

If Buyer cancels, any property traded in, any payments made by Buyer under the Agreement, and any negotiable instrument executed by Buyer will be returned within 10 business days following receipt by Contractor of Buyer's cancellation notice, and any security interest arising out of the transaction will be canceled.

If Buyer cancels, Buyer must make available to Contractor at Buyer's residence, in substantially as good condition as when received, any goods delivered to Buyer under this Agreement, or you may, if you wish, comply with the instructions of Contractor regarding the return shipment of the goods at Contractor's expense and risk.

If Buyer does make the goods available to Contractor and Contractor does not pick them up within 20 days of the date of your notice of cancellation, Buyer may retain or dispose of the goods without any further obligation.

If Buyer fail to make the goods available to Contractor, or if Buyer agrees to return the goods to Contractor and, thereafter fails to do so, then Buyer remains liable for performance of all obligations under the Agreement.

To cancel this Agreement, e-mail, mail or deliver a signed and dated copy of this Notice of Cancellation to:

**Power Home Solar LLC**
**919 N Main St.**
**Mooresville, NC 28115**
**customerservice@powerhome.com**

By not later than midnight of: (Date)    09/02/2020
_____

*I hereby cancel the Agreement to purchase the System from Power Home Solar LLC under and in accordance with the terms of the Agreement.*

Signature: _____

Printed Name: _____

Date: _____

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

**Notice of Cancellation (*Duplicate*)**

**Date of Transaction:**

_____

Buyer and Contractor are parties to that certain Solar Energy System Purchase & Installation Agreement dated _____, 20___ (the "Agreement").

Buyer may cancel this transaction, without any penalty or obligation, within three business days from the above date (*i.e.*, the date which this Agreement is signed).

If Buyer cancels, any property traded in, any payments made by Buyer under the Agreement, and any negotiable instrument executed by Buyer will be returned within 10 business days following receipt by Contractor of Buyer's cancellation notice, and any security interest arising out of the transaction will be canceled.

If Buyer cancels, Buyer must make available to Contractor at Buyer's residence, in substantially as good condition as when received, any goods delivered to Buyer under this Agreement, or you may, if you wish, comply with the instructions of Contractor regarding the return shipment of the goods at Contractor's expense and risk.

If Buyer does make the goods available to Contractor and Contractor does not pick them up within 20 days of the date of your notice of cancellation, Buyer may retain or dispose of the goods without any further obligation.

If Buyer fail to make the goods available to Contractor, or if Buyer agrees to return the goods to Contractor and, thereafter fails to do so, then Buyer remains liable for performance of all obligations under the Agreement.

To cancel this Agreement, e-mail, mail or deliver a signed and dated copy of this Notice of Cancellation to:

**Power Home Solar LLC**
**919 N Main St.**
**Mooresville, NC 28115**
**customerservice@powerhome.com**

**By not later than midnight of: (Date)** _____

*I hereby cancel the Agreement to purchase the System from Power Home Solar LLC under and in accordance with the terms of the Agreement.*

Signature: _____

Printed Name: _____

Date: _____

v. 08.24.20

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

**Exhibit E: Arbitration Agreement**

THE UNDERSIGNED PARTIES, AS CONTRACTOR AND BUYER UNDER THE ATTACHED SOLAR ENERGY SYSTEM PURCHASE & INSTALLATION AGREEMENT (THE "AGREEMENT"), ACKNOWLEDGE, COVENANT AND AGREE THAT ANY CLAIM, DISPUTE OR OTHER MATTER IN QUESTION ARISING OUT OF OR RELATED TO THE AGREEMENT, THE PROJECT, AND/OR THE SYSTEM (INCLUDING ANY ALLEGED DEFECT THEREOF) SHALL BE SUBJECT TO BINDING BILATERAL ARBITRATION IN ACCORDANCE WITH THE CONSTRUCTION INDUSTRY ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("AAA") IN EFFECT. EVERY ARBITRATION PURSUANT TO THIS PROVISION SHALL TAKE PLACE IN THE COUNTY WHERE THE PROJECT AND PROPERTY IS LOCATED AND BE FACILITATED BY A SINGLE ARBITRATOR MUTUALLY SELECTED BY THE PARTIES TO THE ARBITRATION; PROVIDED, HOWEVER, IF THE PARTIES ARE UNABLE OR UNWILLING TO MUTUALLY AGREE UPON AN ARBITRATOR WITHIN FIFTEEN (15) BUSINESS DAYS, THEN THE ARBITRATOR SHALL BE APPOINTED BY THE AAA. THE EXPENSES OF ARBITRATION SHALL BE BORNE EQUALLY BY THE PARTIES; PROVIDED, HOWEVER, EACH PARTY SHALL PAY FOR AND BEAR THE COST OF ITS OWN EXPERTS, EVIDENCE AND COUNSEL'S FEES. THE PARTIES AGREE THAT EACH SHALL ONLY BRING CLAIMS AGAINST THE OTHER IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE ACTION. UNLESS BOTH PARTIES AGREE IN WRITING, NO ARBITRATOR OR JUDGE MAY CONSOLIDATE MORE THAN ONE PERSON'S CLAIM OR OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. THE AWARD RENDERED BY THE ARBITRATOR SHALL BE FINAL AND BINDING ON THE PARTIES, AND JUDGMENT MAY BE ENTERED UPON IT IN ACCORDANCE WITH APPLICABLE LAW IN ANY COURT HAVING JURISDICTION. THE ARBITRATION, INCLUDING THE FACTS OF THE DISPUTE, RELATED DOCUMENTS AND DECISION, SHALL BE CONFIDENTIAL, EXCEPT AS OTHERWISE MAY BE NECESSARY IN ORDER TO ENFORCE ANY AWARD RENDERED BY THE ARBITRATOR. NOTWITHSTANDING THE FOREGOING, IF ANY CLAIM, DISPUTE OR MATTER IN QUESTION RELATES TO OR IS THE SUBJECT OF A MECHANIC'S LIEN, CONTRACTOR MAY PROCEED IN ACCORDANCE WITH APPLICABLE LAW TO COMPLY WITH LIEN NOTICE OR FILING REQUIREMENTS.

**Buyer(s)**

Signature: Tyrone Armstrong _____
    7D4B7A0A75F8450...

Printed Name: Tyrone Armstrong

Date: August 31, 2020 | 5:05 PM PDT

Signature: _____

Printed Name: _____

Date: _____

**Contractor (Power Home Solar LLC)**

Signature: Ahmad Nafisa _____
    6146CE632FB942F...

Printed Name: Ahmad Nafisa

Date: August 31, 2020 | 6:18 PM EDT

v. 08.24.20

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

# <u>Memo of Understanding – Home Owner Association</u>

I acknowledge that I have requested, signed a contract for, and directed Power Home Solar LLC (or a division thereof) to do work on my home that may be scrutinized by my Home Owner Association. I accept full responsibility for the placement of items that have been contracted to be installed by this company on the property in question.

In the event that the location of the work being done is cause for removal, or the stopping or delaying of the completion of the work, Power Home Solar LLC or any of its affiliates are not responsible for any cost, damages or repercussion of the work that was contracted to be completed. Power Home Solar will receive the full payment as stated in the in the contract signed as well as any change orders or additions added to the project cost regardless of any bearing the foregoing may have during or after the installation is complete. All terms, conditions and covenants of the original contract are understood and are to remain valid.

      YES - I have an HOA

  X  NO - I do not have an HOA

Date   August 31, 2020 | 5:05 PM PDT
_____

Customer Name (print)   Tyrone Armstrong
_____

Customer Signature   <u>DocuSigned by:</u>
**Tyrone Armstrong**
7D4B7A0A75F6450...

Customer Address: _
HOA Name: _
HOA Phone #: _
HOA Email: _
HOA Fax #: _
HOA Contact Person: _

v. 08.24.20

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

## <u>Understanding Solar Rebates Offered By My Utility Company</u>

I acknowledge that I am solely responsible for collecting any Solar rebates offered by my utility company. Power Home Solar LLC is not offering this rebate, so I will have to work with my utility company to apply and collect the rebate.

DocuSigned by:

*Alimad Nafisa*

—6146CE632FB8437...

Sales Rep Signature

August 31, 2020 | 6:18 PM EDT
_____
Date Signed:

DocuSigned by:

Tyrone Armstrong

—7D4B7A0A75F6450...

Customer Signature

August 31, 2020 | 5:05 PM PDT
_____
Date Signed:

v. 08.24.20

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

## <u>Memo of Understanding – Solar Tax Credits</u>

I acknowledge that I have requested, signed a contract for, and directed Power Home Solar LLC (or a division thereof) to install a solar energy system (the "System") on my home that may qualify for Federal and/or State tax credits.  I understand that although Power H o m e  Solar LLC may completely install and activate the System, they are not responsible for nor do they guarantee my qualification for any tax credit. I further acknowledge that my basis for tax credit eligibility should be something that is discussed with a tax professional and that Power Home Solar LLC cannot give advice on my personal tax liability nor my eligibility for tax refunds.  Power Home Solar LLC has discussed with me the availability of renewable energy related tax credits and the basis for which the solar project in question would qualify for tax credits.  Power Home Solar LLC will receive the full payment as stated in the in the Agreement signed as well as any change orders or additions added to the project cost of the System regardless of any  bearing the foregoing may have during or after the installation is complete.  All terms, conditions and covenants of the  original Agreement are understood and are to remain valid.

Date   August 31, 2020 | 5:05 PM PDT

Customer Name (print)   Tyrone Armstrong

Customer Signature    *Tyrone Armstrong*

DocuSigned by:
7D4B7A0A75F6450...

800-POWER-90          www.powerhome.com

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

### Energy Efficient Package Ticket

Date: _August 31, 2020 | 6:18 PM EDT_

Crew Completing: _PHS_

Customer Name: _Tyrone Armstrong_

Customer Address: _2729 116th Street_

City, State, Zip Code: _Toledo, OH 43611_

Customer Phone #: _(419) 578-8495_

County: _Lucas_

**EEP Includes the following if applicable:**

- ☑ 16 LED Bulbs / 2 LED Flood Lights
- ☑ Blown Insulation
- ☑ Hot Water Heater Thermal Blanket
- ☑ Attic Staircase Cover
- ☑ Air Sealant Tape
- ☑ Solar Attic Fan
- ☑ Shower Head
- ☑ Sink Aerator

na

**Work Completed / Additional Notes:** _____

_____

_____

Sales Representative Signature: _Ahmad Nafisa_      Date: August 31, 2020 | 6:18 PM EDT
DocuSigned by:
8146CE632FB6437...

Customer Signature: **Tyrone Armstrong**      Date: August 31, 2020 | 5:05 PM PDT
DocuSigned by:
7D4B7A0A75F6450...

v. 08.24.20

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2



## CUSTOMER REIMBURSEMENT FORM

This Customer Reimbursement Form is being delivered and executed by Buyer and Contractor in connection with that certain Solar Energy System Purchase & Installation Agreement (the "Agreement"). All capitalized terms used herein, not otherwise defined herein, shall have the meanings ascribed to such terms in the Agreement.

Contractor has agreed to reimburse Buyer for the item(s) set forth below up to the maximum amount(s) set forth adjacent to each such item.

| Item | Maximum Reimbursement Amount |
|---|---|
| na | |
| | |
| | |
| | |
| | |

Contractor shall only be responsible for reimbursing Buyer for the actual and documented costs for each item above. Contractor shall reimburse up to the maximum reimbursement amount set forth above upon presentation of proof of payment by Buyer (in form acceptable to Contractor, in its discretion). Any reimbursements due and payable hereunder shall be paid to Buyer within seven (7) days of the Substantial Completion of Installation. Contractor may, in its discretion, reduce any amounts due to Contractor under the Agreement in lieu of reimbursing Buyer hereunder.

Buyer understands and agrees that the item(s) set forth above are being performed at the direction of Buyer by third parties unrelated to Contractor and Contractor is not responsible for, and makes no warranties or representations (whether express or implied) with respect to, the quality, workmanship or other matters relating to or arising in connection with the item(s) set forth above.

Dated: August 31, 2020 | 6:18 PM EDT
_____ ___, 20____

**Buyer:**

Signature: Tyrone Armstrong
—7D4B7A0A75F6450...
Tyrone Armstrong

Printed Name: _____

Date: August 31, 2020 | 5:05 PM PDT

Signature: _____

Printed Name: _____

Date: _____

**Contractor:**

Signature: Ahmad Nafisa
—6146965A32EB6437...
Ahmad Nafisa

Printed Name: _____

Date: August 31, 2020 | 6:18 PM EDT

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

### Back-Up Power Battery System Acknowledgment

### Back-Up Power Battery System Information

The Generac Power Systems, Inc. ("Generac") back-up power battery system, provided through Power Home Solar, LLC ("PowerHome"), provides (among other features) a battery backup power option capable of delivering emergency back-up power for limited home circuits for a limited time during a power loss event. This Back-Up Power Battery System Acknowledgement is being delivered and executed by Customer in connection with that certain Solar Energy System Purchase & Installation Agreement (the "Agreement").  All capitalized terms used herein, not otherwise defined herein, shall have the meanings ascribed to such terms in the Agreement.

### Instructions for Proper Care and Use of Your Battery

Please follow the more detailed instructions included with the Generac back-up power battery system for proper use, storage and care of the entire Generac back-up power battery system (including, in particular, the battery) to ensure that it will function as needed during a power outage. If you do not store your battery correctly, it may shorten its useful life.  Environmental factors such as temperature can also shorten your battery's useful life.

### Customer Acknowledgement

BY SIGNING BELOW, Customer acknowledges receipt of the detailed instructions included with the Generac back-up power battery system, as well as information about the limitations of battery service in the event of a power failure, and has had an opportunity to discuss the back-up power battery system with PowerHome and Generac representatives to Customer's satisfaction.   Customer further understands that:

- the purpose for purchasing the Generac battery system is for emergency back-up power purposes only as to limited home circuits during a short-term power loss event (not for ongoing, long-term, whole home or commercial use);
- without a functional, charged backup power source for all electronic systems, un-powered systems may not function during a power outage (which may include your phone service and ability to dial 9-1-1);
- even with a back-up power battery system, usage time during a power outage may be limited by multiple factors, including the condition of the back-up power battery system and its battery at the time of the outage;
- the back-up power battery system is limited to 2-3 key circuits only;
- conserving energy during emergency situations where back-up battery is in use is critical to extending coverage time for the back-up power battery system; and
- Customer **_must_** have an accessible internet connection otherwise Customer's limited warranty from Generac (as well as Generac's obligations thereunder) will be adversely impacted and may result in voiding (or substantially impacting) the limited warranty.

Please select from among the following those Dedicated Loads to be powered during grid failure and/or other power loss event for so long as power remains available in the back-up power battery system: (2-3 Only).  Customer may discuss alternative configurations of the 2-3 Dedicated Loads upon installation

- ☒ Refrigerator
- ☒ Electric Cook-Top
- ○ Microwave

v. 08.24.20

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

- o Limited Lighting
- ☒ Limited Receptacles
- o ½ HP Sump-Pump
- o Livable Space (*i.e.*, living room / home-office)
- o Other ___na___

<u>FOR MICHIGAN DTE ENERGY CUSTOMERS ONLY:</u>  In addition to the other acknowledgements set forth herein, if Customer is a Michigan resident and DTE Energy customer, then Customer further understands that if Customer's electrical services is less than 200 amps the battery system will *not* supply power to Customer's residence during a grid failure and/or power loss event, however, the battery system will be set up for maximizing self-consumption. Alternatively, if Customer's electrical services do support 200 amps, then the battery system *should* (without any express or implied guarantee, and subject to the other limitations above) be able to store power from the System and *should* (without express or implied guarantee, and subject to the other limitations above) provide Customer with the ability to serve Dedicated Loads during a grid failure and/or a power loss event. In the event Customer is a Michigan resident and DTE Energy Customer and wishes to upgrade Customer's electrical services to 200 amps, at its own cost and utilizing Customer's own contractors, in order to maximize the benefits of the battery system, then Customer *must* (i) notify PowerHome within ten (10) days of execution of the Agreement and (ii) perform the upgrade to Customer's electrical services no later than thirty (30) days after execution of the Agreement. If the upgrade to Customer's electrical services is not completed for any reason during the aforementioned thirty (30) day period, then PowerHome reserves the right, in its discretion, to proceed with installation of the System based on Customer's existing electrical services. PowerHome does not make, and hereby expressly disclaims, any promise, warranty, representation or guarantee (whether express or implied, oral or written) with respect to Customer's ability to upgrade Customer's electrical services, the costs associated with upgrading Customer's electrical services, and/or the timeframe necessary to complete any such upgrades to Customer's electrical services. Customer acknowledges and agrees that if Customer chooses to upgrade Customer's electrical services as provided in this paragraph, Customer shall ensure that such upgrades are performed by licensed and insured contractors in accordance with applicable laws. PowerHome assumes no liabilities or responsibilities in connection with upgrades to Customer's electrical services or Customer's decision to proceed (or not to proceed) with such upgrades.

### No Warranty Except for Generac Warranty

PowerHome provides no warranty in connection with the Generac battery system (Generac's limited warranty and the terms of that warranty are included with the Generac instructions referred to above (if any)) and PowerHome's warranty as to installation is limited expressly to the limited warranty provided in the Agreement (subject to all limitations provided in the Agreement). Such warranty also does not cover the costs associated with components covered by separate manufacturer's warranties (including Generac's warranty). In the event that the manufacturer of any component is unable or unwilling to honor its product warranty to PowerHome or Customer, then the limited warranty provided by the Agreement will not cover any replacement costs of any such manufacturer's components.

### Disclaimer and Limitation on Liability

EXCEPT FOR THE EXPRESS LIMITED WARRANTY SET FORTH IN THE AGREEMENT, POWERHOME EXPRESSLY

v. 08.24.20

DocuSign Envelope ID: 654F860B-44C1-4AB4-92E4-5FD28398C4D2

 **POWERHOME.**

EXCLUDES ALL WARRANTIES WITH RESPECT TO THE BATTERY SYSTEM, BATTERY AND ITS COMPONENTS (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO THOSE CARRYING SEPARATE MANUFACTURER WARRANTIES), AND ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THE WARRANTY OF MERCHANTABILITY, THE WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AND ANY WARRANTIES THAT MAY HAVE ARISEN FROM COURSE OF DEALING OR USAGE OF TRADE, WHATSOEVER.

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, POWERHOME'S AGGREGATE MONETARY LIABILITY TO CUSTOMER (I.E., THE AMOUNT OF DAMAGES RECOVERABLE AGAINST POWERHOME BY CUSTOMER) FOR ANY REASON AND FOR ANY AND ALL MATTERS, EVENTS, ACTIONS, OMISSIONS AND CAUSES OF ACTION RELATING TO OR ARISING OUT OF THE AGREEMENT, WHETHER IN CONTRACT, AT LAW, IN EQUITY, TORT (INCLUDING, WITHOUT LIMITATION, NEGLIGENT ACTS OR OMISSIONS) OR OTHERWISE, **SHALL NOT EXCEED** THE AMOUNT ACTUALLY PAID TO POWERHOME FOR THE WORK PERFORMED ON THE PROJECT.

POWERHOME SHALL NOT BE RESPONSIBLE OR LIABLE IN ANY EVENT UNDER ANY NEGLIGENCE, CONTRACT, STRICT LIABILITY OR OTHER THEORY FOR ANY PUNITIVE, SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES.

POWERHOME SHALL NOT BE RESPONSIBLE FOR ANY MATTER BEYOND ITS REASONABLE CONTROL. CUSTOMER'S EXCLUSIVE REMEDIES UNDER THE AGREEMENT AND/OR IN CONNECTION WITH THE BATTERY SYSTEM SHALL BE (AT POWERHOME'S DISCRETION), (A) THE CORRECTION OF ANY MATERIAL DEFECTS IN THE PROJECT, (B) REFUND OF CUSTOMER'S FEES PAID, OR (C) ANY OTHER REMEDY REQUIRED BY APPLICABLE LAW. THE PARTIES ACKNOWLEDGE THAT THE CONTRACT PRICE DESCRIBED IN THE AGREEMENT IS SUFFICIENT CONSIDERATION FOR THE LIMITATION OF LIABILITY PROVIDED IN CONNECTION WITH THE BATTERY SYSTEM, WITHOUT WHICH POWERHOME WOULD NOT HAVE UNDERTAKEN THE PROJECT.

Nothing in this Back-Up Power Battery System Acknowledgment shall limit PowerHome's rights and remedies, or any of Customer's representations, warranties, covenants, agreements and acknowledgements, as further provided in the Agreement (including, without limitation, as to PowerHome's security interest in the battery system).

This BACK-UP POWER BATTERY SYSTEM ACKNOWLEDGMENT is made by Customer or Customer's duly authorized representative on Customer's behalf and is entered into as of the ___ day of _____, 20___.    August 31, 2020 | 6:18 PM E

**Customer(s) Acknowledgement and Agreement**

Signature ___ Tyrone Armstrong _____

DocuSigned by:
7D4B7A0A7EF6450...

Printed ____Tyrone Armstrong_____

Date ____August 31, 2020 | 5:05 PM PDT_____

Signature _____

Printed _____

Date _____

DocuSign Envelope ID: 7E54E860DAEC1-4AB4-92E4-5FD28398C4D2

X   NOT a Michigan DTE customer

 **POWERHOME.**

## NOTICE AND ACKNOWLEDGEMENT FOR MICHIGAN CUSTOMERS
### *(DTE Energy Customers Only)*

This Notice and Acknowledgement for Michigan Customers (DTE Energy Customers Only) (this "Notice") is being delivered and executed by Buyer in connection with that certain Solar Energy System Purchase & Installation Agreement (the "Agreement"). All capitalized terms used herein, not otherwise defined herein, shall have the meanings ascribed to such terms in the Agreement.

Due to changes adopted by the Michigan Public Service Commission relating to DTE Energy customers, residential customers of DTE Energy will receive an outflow credit of 7.477 cents/kWh for the first 17 kWh/day, and an excess outflow credit of 9.11 cents/kWh. These changes in net-metering rules lower solar energy cost offsetting. As such, if Buyer's System is not used in real time (*i.e.*, using the energy generated by the System to power Buyer's residence while it is being generated) and/or Buyer's System overproduces power, then Buyer will need to take into consideration, among other things, the new outflow credit and excess outflow credit in determining solar energy cost savings (including potential cost offsetting).

Contractor makes an effort to reasonably project energy production and energy savings (including potential offsetting), as well as the appropriate System for Buyer (including, number of solar panels), *however*, due to the changes to net-metering rules discussed herein, and other factors and variables outside of Contractor's control (including, but not limited to, future changes in regulations, customer's usage, customer's overproduction, weather conditions, etc.), Contractor does not make, and hereby expressly disclaims, any promise, warranty, representation or guarantee (whether express or implied, oral or written) with respect to energy production, usage or savings (including cost offsetting) relating to the System.

By signing below, Buyer acknowledges and agrees that Buyer has read and understands this Notice.

Dated: _____ ____, 20____

**Buyer:**

Signature: _____    Signature: _____

Printed Name: _____    Printed Name: _____

Date: _____    Date: _____

v. 08.24.20

# EXHIBIT D

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Settlement Agreement") is entered into by POWER HOME SOLAR, LLC ("PHS") and Tyrone Armstrong ("Customer") (PHS and Customer each a "Party" and together, the "Parties") as of the date this Settlement Agreement is last executed by any Party (the "Effective Date").

WHEREAS, Customer owns property located at 2729 116th Street, Toledo, OH 43611 (the "Property"); WHEREAS, on or about August 31, 2020 Customer entered into a contract with PHS (the "Contract") for purchase a solar system (the "System").

WHEREAS, a dispute has arisen between PHS and Customer regarding that Customer does not believe that the System can function as set forth in the Contract and that there were misrepresentations by PHS concerning the estimated savings with the purchase of additional equipment as well misrepresentation in the sale of the System generally. In addition, Customer claims installation damages to the ceiling in his basement and delay damages (the "Dispute").

NOW, THEREFORE, in consideration of the payment, releases, and agreements listed below, and in full and complete settlement of the matters and things recited herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledge, the Parties do hereby agree as follows:

1) **Settlement Payment and Completion of Work**. PHS, without admitting any fault or liability on its part, hereby agrees to issue to Customer a total settlement amount of Four Thousand Eight Hundred and Five Dollars and Ninety Cents ($4,805.90) (the "Settlement Payment") within ten (10) business days of the Effective Date. The Settlement Payment shall be paid by check, sent via certified mail, to Pigott, LTD unless Customer provides ACH payment instructions on the Effective Date. In addition, PHS will undertake to compete installation and repairs as soon as possible and in consecutive days, excluding holidays and weekends, until completed (the "Work"). The Work shall begin within Forty-Five (45) days of the Effective Date and is estimated to take up to three (3) days. The Work will comprise but is not limited to: Lifting Nineteen (19) Solar panels and repairing PV links and repair to drywall ceiling in the basement of the Property. PHS agrees to issue to Customer additional Settlement Payments for his loan payments incurred from the date of the Effective Date until the System reaches Permission to Operate (PTO) and final approved inspection by City Of Toledo Division of Building Services.

2) **Effect on Loans**. Customer agrees, understands, confirms, represents and warrants, reaffirms and acknowledges that he/she/it remains fully liable to any third party(ies) (including, but not limited to any bank or finance company) for any amounts due to such third party(ies) in connection with the System in the event the System was financed. Any such third party(ies) are not a party to this Settlement Agreement nor are they bound by this Settlement

Customers' Initials _TA_

Agreement, and this Settlement Agreement shall in no way be construed or understood by Customer or any other party as a modification of or amendment to any agreement(s) Customer may have entered into with such third party(ies) concerning the System.

3)  **Release by Customer**. Customer, on Customer's own behalf and on behalf of Customer's agents, heirs, personal representatives, successors and assigns, if any may exist at any time, hereby fully releases and forever discharges PHS, together with its predecessors, successors and assigns, if any may exist at any time, and together with its and each of their respective past and present members, stockholders, managers, principals, officers, directors, partners, employees, agents, representatives, accountants, attorneys, alter egos, affiliates, subsidiaries, and parent and controlled companies acting in any of such capacities (together, the "**PHS Released Parties**"), and each of them, from any and all claims, rights, rights to payment, debts, demands, obligations, actions, causes of action or suits, damages, special, direct or consequential damages, punitive damages, charges, losses, arbitrations, costs and expenses, and any and all claims for attorneys' fees, costs and interest, and/or liabilities of every kind, nature, character and description, whether known or unknown, suspected or unsuspected, which any of them now have or may have by reason of anything occurring, done or omitted to be done as of or prior to the Effective Date, including, without limitation, any such claim relating to the Dispute, System, Contract or Property (collectively, "**Claims**"), except that notwithstanding anything contained in this Section 3, Customer does not release the PHS Released Parties for any breach of this Settlement Agreement or any Claims which cannot by law or regulation be released. Customer acknowledges that he/she/it may hereafter discover facts in addition to or different from those which he/she/it now knows or believes to be true, but agree it is his/her/its intention to fully, finally and forever settle and release any and all Claims, known or unknown, suspected or unsuspected, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future. The Parties to this Settlement Agreement acknowledge and agree that the foregoing waiver was separately bargained for and is a material term of this Settlement Agreement.

4)  **Full Settlement**. Each Party acknowledges and agrees that all disputes between the Parties specified herein are intended to be and shall be settled and compromised in full by the execution of this Settlement Agreement and each Party waives any rights, statutory or otherwise, to any claims covered by the matters in controversy at the time of the execution of this Settlement Agreement, except to the extent that any such rights are preserved herein. The Parties acknowledge that: (i) no representations, inducements, promises or agreements, oral or written, have been made by any Party or by anyone acting on behalf of any Party, which are not embodied in this Settlement Agreement; and (ii) no agreement, statement or promise not contained in this Settlement Agreement shall be valid or binding on the Parties unless such change or modification is in writing and is signed by the Parties.

5)  **Full Performance**. Customer acknowledges and agrees that any and all sales and services provided by PHS in connection with the System, PHS's performance under the Contract, and PHS's resolution of the Dispute have been fully and satisfactorily performed by PHS, fully consistent with Customer's expectations and any representations and advertisements made by PHS and any of the PHS Released Parties.

Customers' Initials

6)   **Non-disparagement**. Customer covenants and agrees that Customer shall not issue any communications or make any statement, written or otherwise, inconsistent with Customer's statements in Section 5 above, or that disparages, defames, criticizes, places in a negative light or otherwise reflects adversely on or encourages any adverse action against or make or solicit any comments to others that may be considered derogatory or detrimental to the good business name or reputation of any of the PHS Released Parties, their products, services and business practices, or their current or former members, managers, owners, directors, officers, employees, and agents, at any time or in any manner in the future, nor shall they assist any other person, firm, or company in doing so. Customer agrees to remove any and all social media posts and consumer complaints, including but not limited to reviews posted by Customer on the internet, Facebook comments or reviews, comments sent through Twitter and filings with the Better Business Bureau (BBB) to the extent inconsistent with the provisions of Section 5 or 6 of this Settlement Agreement, and in all events upon PHS's request regardless of their content. All such items shall be removed within one (1) business day of the Effective Date or of the date of PHS's request, as applicable. Without limiting the foregoing, within one (1) business day following the Effective Date Customer will withdraw his complaint filed with the BBB. Nothing in this Section 6 shall prevent the Customer from providing truthful information and/or testimony in connection with any action or proceeding which relates to the PHS Released Parties, provided however that Customer represents, acknowledges and agrees that the Customer's statements in Section 5 above are truthful, are freely given, have not been coerced, and fully and honestly represents Customer's opinions and experience with PHS. Any breach of the foregoing representation shall be deemed a breach of this Settlement Agreement.

7)   **Attorney General Complaint**. If Customer has filed a consumer complaint with the state Attorney General, PHS will advise the Attorney General that the matter was resolved with Customer and copy Customer on the correspondence to the Attorney General.

8)   **Confidentiality**. Customer agrees to keep the terms of this Settlement Agreement, including, without limitation, the Settlement Payment, and all negotiations related thereto confidential, except to the extent for disclosures: (1) to the tax return preparers, accountants and attorneys of Customer; (2) as ordered and directed by a court order issued from a court of competent jurisdiction; (3) to enforce the terms of this Settlement Agreement by legal action in the event of a default or breach by PHS, and/or (4) to applicable governmental regulators.

9)   **No Pending Claims**. Customer agrees and represents that Customer has no pending legal actions or claims against the PHS Released Parties, including, without limitation, in any court, arbitration forum, governmental or administrative forum or agency, or other dispute resolution forum that are in any way related to any Claims released pursuant to this Settlement Agreement. Customer further represents and warrants that no Claims have been assigned, encumbered, or in any manner transferred in whole or in party, and that Customer will not attempt to assign, encumber, or in any manner transfer in whole or part any Claims.

10)   **No Third Party Beneficiaries**. Except for the PHS Released Parties and as may be specifically set forth in this Settlement Agreement, this Settlement Agreement does not provide and shall not be construed to provide any third party with any remedy, claim, liability, reimbursement, cause of action, or other right or privilege.

Customers' Initials _____

11) **Entire Agreement**. This Settlement Agreement integrates the entire agreement between the Parties and supersedes all prior oral or written agreements between the Parties relating to the subject matter hereof. The Parties acknowledge that: (i) no representations, inducements, promises or agreements, oral or written, have been made by any Party or by anyone acting on behalf of any Party, which are not embodied in this Settlement Agreement; and (ii) no agreement, statement or promise not contained in this Settlement Agreement shall be valid or binding on the Parties unless such change or modification is in writing and is signed by the Parties. This Settlement Agreement may only be modified by a writing signed by the Parties hereto.

12) **Survival**. All representations and warranties contained herein shall survive the execution and delivery of this Settlement Agreement, and the execution of any other document or instrument referred to herein.

13) **Construction**. The Parties each understand and agree that none of them shall be deemed to be the drafter hereof for the purpose of construction or interpretation of this Settlement Agreement.

14) **Further Acts**. In addition to the acts recited in this Settlement Agreement, the Parties agree to perform, or cause to be performed on the date of this Settlement Agreement, or thereafter, any and all such further acts as may be reasonably necessary to consummate the transactions contemplated hereby. Each of the Parties agrees that he/she/it will execute and deliver all such documents and instruments as may be necessary and appropriate to effectuate the terms of this Settlement Agreement.

15) **Action to Enforce the Terms of this Agreement**. If it is necessary to enforce this Settlement Agreement or in the event any action or proceeding is brought to enforce the terms of this Settlement Agreement by any of the Parties, the court having jurisdiction over such action or proceeding shall award the prevailing party his/her/its reasonable attorneys' fees and costs incurred in said action or proceeding.

16) **Severability**. If any part or paragraph of this Settlement Agreement is deemed void or unenforceable, the Parties agree that the remaining provisions shall continue in full force and effect; provided, however, that if the general release language is deemed unenforceable as a result of Customer's challenge thereof, Customer shall immediately return the Settlement Payment to PHS. If any provision of this Settlement Agreement shall be held to be excessively broad as to time, duration, geographic scope, activity or subject, it shall be construed by limiting and reducing it so as to be enforceable to the greatest extent permitted by law.

17) **Waiver of Breach**. The Parties' failure to exercise any right, power or privilege under this Settlement Agreement shall not constitute a waiver thereof.

18) **Governing Law**. This Settlement Agreement is to be governed and construed in accordance with the laws of the state of the Property is located in, without regard to the principles of conflicts of laws (the "**Governing Law**"). EACH PARTY HEREBY WAIVES,

Customers' Initials _____

TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING INSTITUTED (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) IN CONNECTION WITH THIS SETTLEMENT AGREEMENT. EACH PARTY HEREBY FURTHER WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO LITIGATE IN COURT OR ANY FORUM ANY CLAIM OR DISPUTE AS A CLASS, REPRESENTATIVE, OR COLLECTIVE ACTION, EITHER AS A MEMBER OF A CLASS OR AS A REPRESENTATIVE, OR TO ACT AS A PRIVATE ATTORNEY GENERAL.

19)   **Denial of Liability.** The Parties agree that this Settlement Agreement is a compromise settlement of disputed claims, and that the execution of this Settlement Agreement shall not be deemed or construed as an admission by any Party of liability or the validity or invalidity of any claim, demand, or cause of action, including without limitation, any Claims released pursuant to this Settlement Agreement, and such liability is denied by each of the Parties hereto.

20)   **Miscellaneous.** This Settlement Agreement shall be binding upon and inure to the benefit of the respective successors and assigns of each Party. The section and paragraph headings herein are for purposes of organization and convenience only and shall not be used to determine, add, alter or substantively interpret any provision herein. This Settlement Agreement may be executed in several counterparts and delivered by facsimile or other electronic means, each of which shall be deemed an original but all of which appear together shall constitute one and the same instrument. Original signatures that have been reproduced by photocopy, scan, electronic format (such as a pdf or jpeg) or facsimile or other means shall be treated in all respects and deemed binding as original signatures for the purpose of the execution of this Settlement Agreement. The Parties further agree that a true and correct photocopy of this Settlement Agreement, as executed by all Parties, may be used in lieu of the original for all purposes.

21)   **Voluntary Action; Legal Counsel.** The Parties had the right to seek and ample time to consult with legal counsel before signing this Settlement Agreement and acknowledge that they have had an opportunity to consult with an attorney or their choosing, at their expense, before signing this Settlement Agreement, or were so represented by legal counsel, and they have read and fully understand this Settlement Agreement and that each has executed this binding agreement freely and without compulsion and that each party shall bear their own costs and attorneys' fees, if any, associated with this Settlement Agreement.

Customers' Initials _____

**IN WITNESS WHEREOF**, the Parties have hereunto signed their names on the day and year written below.

**CUSTOMER:**

**TYRONE ARMSTRONG**

_(signature)_
(Signature)

Tyrone Armstrong          10/8/21
(Printed)                          (Date)

**POWER HOME SOLAR, LLC**

_(signature)_
(Signature)

Its: Authorized Signatory

Jess Gandy          10/12/21
(Printed)                          (Date)

Customers' Initials  _TA_

## LUCAS COUNTY COMMON PLEAS COURT
CORNER ADAMS & ERIE STREETS
TOLEDO, OHIO 43604
## SUMMONS
## CIVIL ACTION
FILING TYPE:                    OTHER CIVIL

POWER HOME SOLAR LLC                    G-4801-CI-0202203522-000
C/O CORPORATION SERVICE COMPANY OHIO    JUDGE:  DEAN MANDROS
STATUTORY AGENT
3366 RIVERSIDE DRIVE SUITE 103 UPPER
ARLINGTON, OH 43221

     You have the right to seek legal counsel.  If you cannot afford a lawyer, you may contact the Legal Services of Northwest Ohio.  If you do not qualify for services by the Legal Services of Northwest Ohio and do not know an attorney you may contact the Toledo Bar Association's Lawyer Referral Service (419) 242-2000.

     You have been named as a defendant in a Complaint filed in this Court by the plaintiff named below.  A copy of the Complaint is attached to this Summons.

     You are hereby summoned and required to serve upon the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record, a copy of an answer to the complaint, within twenty-eight (28) days after you receive this Summons, exclusive of the of the day of service   or    to an amended complaint within the remaining response time to the complaint or 14 days, whichever period may be longer.  Your answer must be filed with the Clerk of Court of Common Pleas within three (3) days after the service of a copy of the Answer on the plaintiff's attorney.

     If you fail to serve and file your Answer, judgment by default will be rendered against you for the relief demanded in the Complaint.

PLAINTIFF (S)                          ATTORNEY FOR PLAINTIFF(S)
TYRONE ARMSTRONG                       THOMAS D PIGOTT
2729 116TH STREET                      PO BOX 8813
TOLEDO, OH 43611                       TOLEDO, OH 43623

                                         BERNIE QUILTER
                                         CLERK OF COURTS

Date:  August 26, 2022

                                                                               , Clerk



## IF YOU DO <u>NOT</u> HIRE AN ATTORNEY
### PLEASE READ & RESPOND
(mark <u>one</u> & respond)

☐  I request to be notified by <u>email</u>

My email address _____

**OR**

☐  I request to be notified by <u>regular mail</u>
~*(Clerk will forward to Court for approval)*

My mailing address  _____
_____
_____

**Send email to:** Lwatt@co.lucas.oh.us
**Subject:**    G-4801-CI-0202203522-000
           POWER HOME SOLAR LLC
**Message:**   Your email address

**Return this Form with your address to:**
Clerk of Court
Lucas County Common Pleas Court
700 Adams
Toledo, OH  43604

### If you do NOT hire an attorney & fail to respond
### you will NOT receive notification of events related to this case

Case Information is available Online at:
www.co.lucas.oh.us/Clerk
click on the "Dockets Online" link

*Local Rule 5.05 H. SERVICE BY CLERK'S OFFICE Once journalized, the Clerk of courts Office will transmit the entries to the email address submitted by the parties. Counsel for a party or Pro Se litigant representing themselves who do not have an email address may, by motion, request ordinary mail service of entries by the Clerk of Courts Office.*

## LUCAS COUNTY COMMON PLEAS COURT
CORNER ADAMS & ERIE STREETS
TOLEDO, OHIO  43604

## SUMMONS
## CIVIL ACTION

FILING TYPE:                                    OTHER CIVIL

POWER HOME SOLAR LLC                    G-4801-CI-0202203522-000
919 NORTH MAIN STREET                    JUDGE:  DEAN MANDROS
MOORESVILLE, NC 28115

    You have the right to seek legal counsel.  If you cannot afford a lawyer, you may contact the Legal Services of Northwest Ohio.  If you do not qualify for services by the Legal Services of Northwest Ohio and do not know an attorney you may contact the Toledo Bar Association's Lawyer Referral Service (419) 242-2000.

---

    You have been named as a defendant in a Complaint filed in this Court by the plaintiff named below.  A copy of the Complaint  is attached to this Summons.

    You are hereby summoned and required to serve upon the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record, a copy of an answer to the complaint, within twenty-eight (28) days after you receive this Summons, exclusive of the of the day of service   or    to an amended complaint within the remaining response time to the complaint or 14 days, whichever period may be longer.  Your answer must be filed with the Clerk of Court of Common Pleas within three (3) days after the service of a copy of the Answer on the plaintiff's attorney.

    If you fail to serve and file your Answer, judgment by default will be rendered against you for the relief demanded in the Complaint.

---

PLAINTIFF (S)                                          ATTORNEY FOR PLAINTIFF(S)

TYRONE ARMSTRONG                          THOMAS D PIGOTT
2729 116TH STREET                              PO BOX 8813
TOLEDO, OH 43611                               TOLEDO, OH 43623


                                                            BERNIE QUILTER
                                                            CLERK OF COURTS

Date:  August 26, 2022

                                                            _J. Bernie Quilter_____ , Clerk



# IF YOU DO <u>NOT</u> HIRE AN ATTORNEY
## PLEASE READ & RESPOND
### (mark <u>one</u> & respond)

☐    I request to be notified by <u>email</u>

My email address _____

**OR**

☐    I request to be notified by <u>regular mail</u>
*(Clerk will forward to Court for approval)*

My mailing address   _____
_____
_____

**Send email to:** Lwatt@co.lucas.oh.us
Subject:     G-4801-CI-0202203522-000
           POWER HOME SOLAR LLC
Message:    Your email address

**Return this Form with your address to:**
Clerk of Court
Lucas County Common Pleas Court
700 Adams
Toledo, OH  43604

## If you do NOT hire an attorney & fail to respond
## you will NOT receive notification of events related to this case

Case Information is available Online at:
www.co.lucas.oh.us/Clerk
click on the "Dockets Online" link

*Local Rule 5.05 H. SERVICE BY CLERK'S OFFICE Once journalized, the Clerk of courts Office will transmit the entries to the email address submitted by the parties. Counsel for a party or Pro Se litigant representing themselves who do not have an email address may, by motion, request ordinary mail service of entries by the Clerk of Courts Office.*

# LUCAS COUNTY COMMON PLEAS COURT
### CORNER ADAMS & ERIE STREETS
### TOLEDO, OHIO 43604
## SUMMONS
## CIVIL ACTION

**FILING TYPE:**                         **OTHER CIVIL**

JOHN DOE DEFENDANTS ONE THROUGH TEN          G-4801-CI-0202203522-000
ADDRESS CURRENTLY UNKNOWN                     JUDGE:  DEAN MANDROS

     You have the right to seek legal counsel.  If you cannot afford a lawyer, you may contact the Legal Services of Northwest Ohio.  If you do not qualify for services by the Legal Services of Northwest Ohio and do not know an attorney you may contact the Toledo Bar Association's Lawyer Referral Service (419) 242-2000.

---

     You have been named as a defendant in a Complaint filed in this Court by the plaintiff named below.  A copy of the Complaint  is attached to this Summons.

     You are hereby summoned and required to serve upon the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record, a copy of an answer to the complaint, within twenty-eight (28) days after you receive this Summons, exclusive of the of the day of service  or  to an amended complaint within the remaining response time to the complaint or 14 days, whichever period may be longer.  Your answer must be filed with the Clerk of Court of Common Pleas within three (3) days after the service of a copy of the Answer on the plaintiff's attorney.

     If you fail to serve and file your Answer, judgment by default will be rendered against you for the relief demanded in the Complaint.

---

PLAINTIFF (S)                          ATTORNEY FOR PLAINTIFF(S)
TYRONE ARMSTRONG                       THOMAS D PIGOTT
2729 116TH STREET                      PO BOX 8813
TOLEDO, OH 43611                       TOLEDO, OH 43623

                                          BERNIE QUILTER
                                          CLERK OF COURTS

Date:  August 26, 2022

                                    *J Bernie Quilter* _____ , Clerk



# IF YOU DO <u>NOT</u> HIRE AN ATTORNEY
## PLEASE READ & RESPOND
(mark <u>one</u> & respond)

☐  I request to be notified by <u>email</u>

My email address _____

**OR**

☐  I request to be notified by <u>regular mail</u>
*(Clerk will forward to Court for approval)*

My mailing address _____
_____
_____

**Send email to:** Lwatt@co.lucas.oh.us
Subject:        G-4801-CI-0202203522-000
                JOHN DOE DEFENDANTS
ONE THROUGH TEN
Message:        Your email address

**Return this Form with your address to:**
Clerk of Court
Lucas County Common Pleas Court
700 Adams
Toledo, OH  43604

## If you do NOT hire an attorney & fail to respond
## you will NOT receive notification of events related to this case

Case Information is available Online at:
www.co.lucas.oh.us/Clerk
click on the "Dockets Online" link

*Local Rule 5.05 H. SERVICE BY CLERK'S OFFICE Once journalized, the Clerk of courts Office will transmit the entries to the email address submitted by the parties. Counsel for a party or Pro Se litigant representing themselves who do not have an email address may, by motion, request ordinary mail service of entries by the Clerk of Courts Office.*

## LUCAS COUNTY COMMON PLEAS COURT
CORNER ADAMS & ERIE STREETS
TOLEDO, OHIO 43604
## SUMMONS
## CIVIL ACTION
FILING TYPE:                                    OTHER CIVIL

GOODLEAP LLC                                    G-4801-CI-0202203522-000
FKA LOANPAL                                     JUDGE:  DEAN MANDROS
C/O CT CORPORATION SYSTEM STATUTORY
4400 EASTON COMMONS WAY STE 125
COLUMBUS, OH 43219

        You have the right to seek legal counsel.  If you cannot afford a lawyer, you may contact the Legal Services of Northwest Ohio.  If you do not qualify for services by the Legal Services of Northwest Ohio and do not know an attorney you may contact the Toledo Bar Association's Lawyer Referral Service (419) 242-2000.

        You have been named as a defendant in a Complaint filed in this Court by the plaintiff named below.  A copy of the Complaint is attached to this Summons.

        You are hereby summoned and required to serve upon the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record, a copy of an answer to the complaint, within twenty-eight (28) days after you receive this Summons, exclusive of the of the day of service  or  to an amended complaint within the remaining response time to the complaint or 14 days, whichever period may be longer.  Your answer must be filed with the Clerk of Court of Common Pleas within three (3) days after the service of a copy of the Answer on the plaintiff's attorney.

        If you fail to serve and file your Answer, judgment by default will be rendered against you for the relief demanded in the Complaint.

PLAINTIFF (S)                                   ATTORNEY FOR PLAINTIFF(S)
TYRONE ARMSTRONG                                THOMAS D PIGOTT
2729 116TH STREET                               PO BOX 8813
TOLEDO, OH 43611                                TOLEDO, OH 43623

                                                BERNIE QUILTER
                                                CLERK OF COURTS

Date:  August 26, 2022

                                                _J. Bernie Quilter_____ , Clerk



# IF YOU DO <u>NOT</u> HIRE AN ATTORNEY
## PLEASE READ & RESPOND
(mark <u>one</u> & respond)

☐   I request to be notified by <u>email</u>

My email address _____

**Send email to:** Lwatt@co.lucas.oh.us
Subject:     G-4801-CI-0202203522-000
             GOODLEAP LLC
Message:    Your email address

**OR**

☐   I request to be notified by <u>regular mail</u>
*(Clerk will forward to Court for approval)*

My mailing address   _____
                           _____
                           _____

**Return this Form with your address to:**
Clerk of Court
Lucas County Common Pleas Court
700 Adams
Toledo, OH  43604

## If you do NOT hire an attorney & fail to respond
## you will NOT receive notification of events related to this case

Case Information is available Online at:
www.co.lucas.oh.us/Clerk
click on the "Dockets Online" link

*Local Rule 5.05 H. SERVICE BY CLERK'S OFFICE Once journalized, the Clerk of courts Office will transmit the entries to the email address submitted by the parties. Counsel for a party or Pro Se litigant representing themselves who do not have an email address may, by motion, request ordinary mail service of entries by the Clerk of Courts Office.*

G-4801-CI-0202203522-000    GOODLEAP LLC  Generated:  August 26, 2022

# LUCAS COUNTY COMMON PLEAS COURT
CORNER ADAMS & ERIE STREETS
TOLEDO, OHIO 43604
## SUMMONS
## CIVIL ACTION
**FILING TYPE:**              **OTHER CIVIL**

AHMAD NAFISA                           G-4801-CI-0202203522-000
ADDRESS CURRENTLY UNKNOWN              JUDGE:  DEAN MANDROS

You have the right to seek legal counsel.  If you cannot afford a lawyer, you may contact the Legal Services of Northwest Ohio.  If you do not qualify for services by the Legal Services of Northwest Ohio and do not know an attorney you may contact the Toledo Bar Association's Lawyer Referral Service (419) 242-2000.

You have been named as a defendant in a Complaint filed in this Court by the plaintiff named below.  A copy of the Complaint is attached to this Summons.

You are hereby summoned and required to serve upon the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record, a copy of an answer to the complaint, within twenty-eight (28) days after you receive this Summons, exclusive of the of the day of service  or  to an amended complaint within the remaining response time to the complaint or 14 days, whichever period may be longer.  Your answer must be filed with the Clerk of Court of Common Pleas within three (3) days after the service of a copy of the Answer on the plaintiff's attorney.

If you fail to serve and file your Answer, judgment by default will be rendered against you for the relief demanded in the Complaint.

PLAINTIFF (S)                          ATTORNEY FOR PLAINTIFF(S)

TYRONE ARMSTRONG                       THOMAS D PIGOTT
2729 116TH STREET                      PO BOX 8813
TOLEDO, OH 43611                       TOLEDO, OH 43623

                                       BERNIE QUILTER
                                       CLERK OF COURTS
Date:  August 26, 2022

                                       _J. Bernie Quilter_____ , Clerk



# IF YOU DO <u>NOT</u> HIRE AN ATTORNEY
## PLEASE READ & RESPOND
### (mark <u>one</u> & respond)

☐ I request to be notified by <u>email</u>

My email address _____

**OR**

☐ I request to be notified by <u>regular mail</u>
*(Clerk will forward to Court for approval)*

My mailing address _____
_____
_____

**Send email to:** Lwatt@co.lucas.oh.us
Subject:       G-4801-CI-0202203522-000
           AHMAD NAFISA
Message:    Your email address

**Return this Form with your address to:**
Clerk of Court
Lucas County Common Pleas Court
700 Adams
Toledo, OH  43604

---

## If you do NOT hire an attorney & fail to respond
## you will NOT receive notification of events related to this case

Case Information is available Online at:
www.co.lucas.oh.us/Clerk
click on the "Dockets Online" link

*Local Rule 5.05 H. SERVICE BY CLERK'S OFFICE Once journalized, the Clerk of courts Office will transmit the entries to the email address submitted by the parties. Counsel for a party or Pro Se litigant representing themselves who do not have an email address may, by motion, request ordinary mail service of entries by the Clerk of Courts Office.*

G-4801-CI-0202203522-000     AHMAD NAFISA  Generated:  August 26, 2022